IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HELEN A. RUNGE,<br>  Plaintiff<br><br>v.<br><br>WALTER J. KELLY, et al.<br>  Defendants | :<br>:<br>: No. 05-10849-RGS<br>: (Judge Stearns)<br>:<br>:<br>: CIVIL ACTION<br>: JURY TRIAL DEMANDED |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER ANSWER TO
DEFENDANT KERRY L. BLOOMINGDALE, M.D.'S
PARTIAL MOTION TO DISMISS**

AND NOW, COMES, Plaintiff, Helen A. Runge, in response to Defendant Kerry L. Bloomingdale, M.D.'s Motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and requests this Honorable Court deny Defendant Kerry L. Bloomingdale, M.D.'s Motion to Dismiss. In support of this request, Plaintiff states as follows:

I.   COUNTERSTATEMENT OF FACTUAL BACKGROUND

For the sake of judicial brevity, reference is made to the Counterstatements contained in Plaintiff's Memorandum submitted in opposition to the Motion to Dismiss of Defendants Kelly and Mediplex which are incorporated by reference.

II.   STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed. R.Civ.P. 12(b)(6), the "Court must accept the complaint's allegations as true, indulging all reasonable inferences in favor of the plaintiff." Hogan

v. Eastern Enterprises/Boston Gas, 165 F.Supp.2d 55, 57 (D. Mass. 2001) (internal quotations omitted) (citing Kiely v. Raytheon Co., 105 F.3d 734, 735 (1st Cir. 1997)). The Supreme Court has declared that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim that would entitle [her] to relief." Hughes v. McMenamon, 204 F.Supp.2d 178, 180 (D. Mass. 2002) (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

III. ARGUMENT

    A.    Runge Has Adequately Pleaded A Cause Of Action Under 42 U.S.C. § 1983.

        1.    Defendant Bloomingdale is a State Actor under 42 U.S.C. § 1983.

In order to state a valid cause of action under 42 U.S.C. § 1983 or the Fourteenth Amendment a plaintiff must allege the deprivation of a right, which may be fairly attributable to the State. Ponce v. Basketball Feder. of Com. of Puerto Rico, 760 F.2d 375, 377 (1st Cir. 1985) (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982)). The First Circuit has employed three tests to determine if a private party may be considered a state actor. They are: the state compulsion test; the nexus/joint action test; and the public function test. Estades-Negroni v. CPC Hospital, 412 F.3d 1 (1st Cir. 2005). The first test is satisfied when "the state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State." Id. at 5 (quoting Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73

L.Ed.2d 534 (1982)). "The nexus/joint action test provides that a private party can be held to be a state actor where an examination of the totality of the circumstances reveals that the state has "so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity]." Id. (quoting Bass v. Parkwood Hosp., 180 F.3d 234, 242 (5th Cir. 1999)). "And, in accordance with the public function test, a private party is viewed as a state actor if the plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been traditionally the exclusive prerogative of the State." Id. (quoting Blum, 457 U.S. at 1005, 102 S.Ct. at 2798).

As is fully set forth in Runge's Opposition to Defendant Kelly's Motion to Dismiss, Defendant Kelly is a State actor for purposes of § 1983. Where a defendant jointly participates with a State actor, they subject themselves to liability under 1983. Downs v. Sawtelle, 574 F.2d 1, 10 (1st Cir. 1978); Casa Marie, Inc. v. Superior Court of Puerto Rico, 988 F.2d 252, 259 (1st Cir. 1993); Wagenman v. Adams, 829 F.2d 196, 209 (1st Cir. 1987) (private citizens liable under § 1983 when collogue with state actor-persons acting under color of state law"); Culebras Enterprises Corp. v. Rivera Rios, 813 F.2d 506, 519 (1st Cir. 1987) (one who conspires with state actors to violate another's civil rights under color of state law may be liable under section 1983); Alexis v. McDonald's Restaurants of Massachusetts, Inc., 67 F.3d 341 (1st Cir. 1995). Plaintiff's Complaint alleges joint action between Defendant Bloomingdale and Defendant Kelly, a State actor for § 1983 purposes. This joint action between a private person and a State actor is sufficient to create liability in Defendant Bloomingdale.

In Downs, the Court held that "[j]ust as agents of state hospitals may be sued under s 1983, agents and employees of private hospitals determined to be state actors are similarly liable." 574 F.2d at 10. After so holding, the Court found the private defendant to have acted under color of state law and subjected herself to liability because "her actions were taken in concert with" the state actors. Id. The corollary to the Downs holding is that a private hospital or doctor acting as an agent of a state actor is liable under Section 1983. Runge's Complaint sets forth sufficient facts to show that Defendant Bloomington acted as Defendant Kelly's agent throughout the factual period giving rise to this action. As such, Plaintiff has set forth sufficient facts to enable her to at least one theory of relief and Defendant Bloomingdale's Motion must be denied. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Defendant Bloomingdale cites Estades, Rockwell v. Cape Cod Hospital, et al., 26 F.3d 254 (1st Cir. 1994), and Trimble v. Androscroggin Valley Hospital, Inc., et al., 847 F. Supp.2d 226 (D.N.H. 1994), for the proposition that physicians are not state actors for purposes of § 1983 under any of the three above-stated tests when involuntarily committing a patient to a psychiatric facility.

The instant case involves at least one important difference from the reasoning in this line of cases. Runge's allegations do not involve only the day-to-day decisions of the defendant in those cases, but rather decisions that are traditionally and exclusively the prerogative of the state and that are in and of themselves violations of her civil rights. See Part III.B., infra. Runge has additionally alleged joint participation with an officer of the Court who is a state actor under § 1983. Runge alleges joint action

between Defendant Kelly (a state actor) and Defendant Bloomingdale in a concerted effort to medicate Runge against her will, keep her confined at the facility against her will and the employment of the state court system and police force as a means to that end. It was Defendant Bloomingdale's medical opinion that was used by Defendant Kelly to have Runge adjudicated incompetent and have Defendant Kelly appointed her guardian. Importantly, Defendant Bloomingdale never discussed this matter with Runge's family nor did Defendant Bloomingdale ever inquire under whose authority he was making his medical evaluation; had he, the opinion would never have been authorized. However, like <u>Downs</u>, Defendant Sunbridge is not only extensively regulated by the state and receives both federal and state funding, but Runge has pleaded the additional elements not present in the <u>Blum</u>, <u>Rockwell</u> line of cases. Therefore, contrary to Defendant Bloomingdale's assertions, Runge has pled the necessary elements to state her claim.

    2.    **Plaintiff is at least entitled to the benefit of full discovery in order to find out if the facts involve any state action.**

Runge has alleged violations by Defendant Bloomingdale of her Civil Rights. It is only "by sifting facts and circumstances can the nonobvious involvement of the state be attributed its true significance." <u>Hudson v. S.D. Warren</u>, 665 F.Supp. 937 (D. Me. 1987) citing <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). A Determination of the "state action issue at this early stage it is not appropriate where there is a chance, however slight, that state action is present." <u>Cain v. Archdiocese of Kansas</u>, 508 F.Supp. 1021, 1026 (D. Kan. 1981); <u>see also</u>, <u>Browns v.

Mitchell, 409 F.2d 593 (10th Cir. 1969); Braden v. University of Pittsburgh, 552 F.2d 948 (1977). At this stage it is premature for this Court to determine the state action issue and Runge should be granted full discovery. Cain, 508 F.Supp. at 1026.

Runge alleges a detailed scheme between Defendant Bloomingdale, Defendant Kelly, an officer of the Court, and Defendant Sunbridge, a private nursing facility, to deprive her of her civil rights. The allegations in the complaint involve not only these three parties, but also the involvement of the Massachusetts Probate Court and the Massachusetts police force. Runge will meet the "nexus" test if she can show that the state has exercised coercive power or has provided encouragement, either overt or covert, that the choice must be deemed that of the state. Blum, 457 U.S. at 1005. Alternatively, Runge can show state action if she can show that Defendant Bloomingdale "collogued with state actor-persons acting under color of law to deprive plaintiff of [her] civil rights." Wagenmann, 829 F.2d at 209. Without discovery it is impossible to determine whether Defendant Bloomingdale was either overtly or covertly encouraged by the state to engage in the actions alleged in the Complaint. It is also impossible to determine the extent of the joint action between Defendant Bloomingdale, Defendant Kelly, the Probate Court and police at this stage in the litigation. Consequently, Defendant Bloomingdale's Motion is premature and Runge should be granted the opportunity to conduct full discovery to determine the issue of state action.

B.  Runge Has Adequately Pleaded A
    Cause Of Action Under 42 U.S.C. § 1985(3).

A claim under section 1985(3) requires a plaintiff to show some racial or otherwise class-based invidiously discriminatory animus, and that the conspiracy was aimed at interfering with rights protected against both private and official encroachment. Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 34 (1st Cir. 1996) (citing Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed. 338 (1971) and United Bhd. Of Carpenters & Joiners of America v. Scott, 463 U.S. 825, 833, 103 S.Ct. 3352, 3358-59, 77 L.Ed.2d 1049 (1983)). The complaint must allege facts showing that the defendants conspired against a plaintiff because of her membership in a class and that the criteria defining the class were invidious. Id.

Within the ambit of § 1985(3) there are two clauses to note - the deprivation clause and the hindrance clause. Under the deprivation clause a "plaintiff must show that some class based animus is present and the rights affected are protected against both private and official encroachment." Libertad v. Welch, 53 F.3d 428, 450-51 (1st Cir. 1995). The hindrance clause only requires a deprivation of a right protected by official encroachment. The hindrance clause requires a discriminatory animus of a protected class, and the conspiracy must be as such to limit a state officer's ability to provide his citizens with equal protection under the law. Id. at 451. The hindrance clause, unlike the deprivation clause, implicates the ability of the state to ensure and safe guard rights protected against any infringement. "When private individuals conspire for the purpose of arresting or impeding the state's power to protect or secure equal protection

of the laws to a group of citizens, those conspirators are supplanting the state's conduct with their own." Id. In Libertad, the hindrance clause was held to be applicable when the discriminatory act was mob-like protesting at an abortion clinic.

In his brief, Defendant Bloomingdale suggests that Plaintiff has failed to meet the pleading requirements because she has not established a cognizable class and does not point to any evidence establishing a conspiracy aimed at depriving the class of its constitutional rights. The argument, of course, blatantly overlooks the fact that women are a class protected within § 1985(3). Id. at 448 ("at the very least, the classes protected by § 1985(3) encompass those classes that warrant heightened scrutiny under Equal Protection Clause analysis"). In the case at hand, Runge has alleged that the discriminatory animus was based on her age and gender. (Complaint, ¶ 54). The suppression by the Defendants of Runge's rights are inextricably tied to her status as an elderly woman. She has been imprisoned, both within the walls of the nursing facility and as a result of the unwanted administration of psychotropic medication. The ability to control her own finances and to designate her choice of a guardian were stolen from her. She has been denied the most basic constitutional rights.

Defendant Bloomingdale implies that the infringement of Runge's rights is merely collateral damage in the pursuit of the conspirators' ultimate goal of monetary gain, and as such, Runge has failed to state a claim under section 1985(3). The impairment of her rights is a necessary and inherent objective of the conspiratorial enterprise. She is a victim precisely because of age and gender, a member of the class

most vulnerable to this sort of exploitation. But for her age and gender, she would not have been victimized by the Defendants and deprived of her rights.

Plaintiff alleges a scheme to force psychotropic medication on her that was unnecessary and impaired her mental capacity. Plaintiff has not yet been provided her own medical records to determine all the parties involved in this decision.[1] The First Circuit holds that "forcible medication will not occur absent specified substantive predicates: a declaration of incompetency and substituted judgment calling for medication, or strictly defined emergencies justifying invocation of delimited police powers or *parens patriae* powers." Rogers v. Okin, 738 F.2d 1, 7 (1st Cir. 1984) (finding the allegation of forced medication without court order to be sufficient to defeat motion to dismiss under 1983). The United States Supreme Court has long recognized the principle that the Constitution recognizes a protected liberty interest in avoiding the unwanted administration of antipsychotic drugs. Mills, 457 U.S. at 299. Defendant Bloomingdale's involvement in forced medication or attempted forced medication of Runge standing alone constitutes an intentional deprivation of rights guaranteed to Runge under the Due Process Clauses of the Fifth and Fourteenth Amendment.

The Rogers case was based in part on a decision by the Massachusetts Supreme Judicial Court holding that "where no emergency exists, antipsychotic medication may be forcibly administered to a non-institutionalized individual only in accordance with a court order." In re guardianship of Roe, 383 Mass.415, 453, 421 N.E.2d 40, 61 (1981).

---

[1] Plaintiff has requested her medical record from Defendant Sunbridge but Defendant Sunbridge has refused to voluntarily provide it, to date.

This is because "Massachusetts law requires 'greater protection of relevant liberty interests than the minimum adequate to survive scrutiny under the Due Process Clause.'" Rogers v. Okin, 738 F.2d at 7, citing Mills v. Rogers, 457 U.S. 291, 303 (1982). As with the party in Roe, Runge was a non-institutionalized individual administered psychotropic medications against her will in violation of her established constitutional rights. Plaintiff's Complaint alleges that a conscious objective of the enterprise was the very deprivation of this protected liberty interest. Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 275 (1993).

In furtherance of the conspiracy, Defendant Kelly petitioned for guardianship in an *ex parte* proceeding. Defendants deprived Runge of her right to appear before the tribunal so that she could state her case and have the tribunal evaluate her. In this manner, Defendants Bloomingdale, Kelly, and Sunbridge deprived her of all personal liberty, equal protection under the laws and her freedom of speech. (This accomplished after Runge had departed Sunbridge and the State). As the principal actor in the conspiracy, Defendant Kelly then attempted to conceal his action by alleging to the North Carolina police that Runge had been kidnapped by her daughter and son-in-law. Defendant Bloomingdale's medical opinion was the centerpiece necessary to foist these actions upon Runge.

In conclusion, Defendant Kelly, acting in concert with Defendant Bloomingdale, endeavored to deprive Runge, an elderly woman, of rights protected from official encroachment satisfying the deprivation clause under Section 1985(3). Defendants Bloomingdale and Sunbridge, with the assistance of Defendant Kelly, forced

psychotropic medications on Runge, refused her access to means of communicated her plight and abused the system. These acts rendered the state's ability to provide its citizens the guarantees of the equal protection and due process clauses meaningless, satisfying the hindrance clause under Section 1985(3).

IV. CONCLUSION

Based on the foregoing, Defendant Bloomingdale's 12(b)(6) motion should be denied. Plaintiff has successfully alleged a cause of action under both Sections 1983 and 1985(3). In the alternative, if the Court finds that Runge has not alleged facts sufficient to establish liability under Sections 1983 and 1985(3), then Runge requests leave of court to amend her Complaint.

Respectfully submitted,

LATSHA DAVIS YOHE & MCKENNA, P.C.

Dated: November 29, 2005   By   /s/ Glenn R. Davis
Glenn R. Davis
1700 Bent Creek Boulevard, Suite 140
Mechanicsburg, PA 17050
(717) 620-2424
gdavis@ldylaw.com
*Pro Hac Vice*

Blake J. Godbout, BBO #196380
BLAKE J. GODBOUT & ASSOCIATES
33 Broad Street, 11th Floor
Boston, MA 02109
(617) 523-6677

Attorneys for Plaintiff, Helen A. Runge

103353   11