UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-CV-10849-RGS

HELEN RUNGE

v.

WALTER J. KELLY, KERRY L. BLOOMINGDALE, M.D.
AND SUNBRIDGE NURSING AND REHABILITATION CENTER

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTIONS TO DISMISS COUNTS I AND II

January 23, 2006

STEARNS, D.J.

On April 27, 2005, Helen Runge, a ninety year old woman now living in North Carolina, filed this Complaint against a Massachusetts lawyer, Walter J. Kelly, a Massachusetts assisted living facility, the SunBridge Nursing and Rehabilitation Center (SunBridge),[1] and a Massachusetts doctor, Dr. Kerry L. Bloomingdale. Runge alleges that the defendants confined her against her will at SunBridge, while Kelly siphoned her assets for the benefit of himself and the other defendants. Runge alleges that the defendants conspired to deprive her of rights guaranteed by 42 U.S.C. §§ 1983 and 1985. Runge also alleges state law claims of breach of contract, breach of fiduciary duty, and negligence. On July 18, 2005, Kelly moved to dismiss the federal claims. SunBridge and Dr. Bloomingdale then joined Kelly's motion to dismiss. A hearing was held on the joint motions on January 20, 2006.

---

[1]According to SunBridge, its proper legal name is Mediplex of Massachusetts.

The facts in the light most favorable to Runge are as follows.  Prior to 2001, Runge lived on her own in a third floor apartment in Hyde Park.  In 1998, her attorney, Peter Kerr, retired from practice.  Kelly contacted Runge claiming to be Kerr's partner.  He stated that he had assumed responsibility for Kerr's former clients.  (Kelly and Kerr were not in fact partners, but only shared office space).  Runge agreed to Kelly's representation.  Because Runge found it difficult to negotiate the stairs to her apartment, she decided to move to Marion Manor, a nursing home in South Boston.  In 2001, Kelly presented Runge with documents giving him a power of attorney over her finances and decisions involving her medical care.  Runge signed the documents.

Runge decided to transfer from Marion Manor to the Bayview Assisted Living Facility (Bayview) where she could have a private room.  While a resident at Bayview, her prescription drug card was "either stolen or misused" by employees.  Runge felt that Bayview did not seriously investigate her complaint.  After returning from a day trip, she found that her room had been ransacked by someone apparently looking for drugs or valuables.  When Bayview took no action, Runge summoned police to report the incident. Bayview then called Kelly who ordered that Runge be taken to a local hospital for a psychiatric evaluation.  Kelly then transferred her to SunBridge.

Runge alleges that Kelly moved her to SunBridge, despite its substandard conditions, because of longstanding financial ties with SunBridge.  Despite Runge's repeated requests, Kelly refused to permit her to move to another facility.  Runge was held incommunicado at SunBridge and denied access to a telephone or the mails.  Over Runge's objection, Kelly approved a regimen of psychotropic drugs that diminished

2

Runge's mental and physical capacities. Runge was finally able to inform her daughter, Dorothy Stanley, that she was being held a virtual prisoner. Stanley made an unannounced visit to SunBridge on April 29, 2003, with her husband, Gilbert Stanley. Runge states that when the Stanleys found her, she had been denied access to her dentist, eye doctor, ear doctor, and podiatrist, and did not have adequate clothing or personal hygiene products. Dorothy Stanley told Kelly that her mother wanted to leave SunBridge. Kelly was unresponsive. The Stanleys then arranged for Runge to execute documents revoking Kelly's appointments and granting them instead her power of attorney.

While the Stanleys were meeting with SunBridge administrators to arrange Runge's discharge, Kelly asked Dr. Bloomingdale, who had never before treated Runge, to conduct a competency examination. Runge alleges that Dr. Bloomingdale asked her only a few cursory questions before declaring her incompetent. SunBridge refused to discharge Runge or acknowledge the Stanleys' power of attorney. When the Stanleys returned to SunBridge the following day, they were told that Runge no longer had permission to leave the facility or the nursing floor. SunBridge refused to allow the Stanleys to visit or speak with Runge without an employee escort. While bidding farewell to Runge, the Stanleys wrested her through the front door of the facility. SunBridge employees surrounded the Stanleys' car and only after a stand-off permitted them to leave with Runge.

The Stanleys brought Runge to North Carolina where she now lives. On arrival in North Carolina, Runge underwent a medical and psychiatric examination. The examining doctor found her competent, well-oriented, and not in need of psychiatric drugs. On the day that Runge left SunBridge, Kelly placed a hold on her two bank accounts. He then told

3

North Carolina authorities that Runge was being held captive by her relatives.  On May 2, 2003, Kelly filed an ex parte petition in the Massachusetts Probate Court seeking to be appointed as Runge's guardian.  Dr. Bloomingdale and SunBridge supported the petition. After the petition was allowed, Kelly made payments to himself, Dr. Bloomingdale, and SunBridge from Runge's bank accounts.

The defendants argue that Runge's federal claims must be dismissed because she is unable to show state action, a necessary element of a claim under 42 U.S.C. § 1983, or discriminatory animus, a necessary element of a claim under the hindrance clause of 42 U.S.C. § 1985(3).  To state a valid cause of action under 42 U.S.C. § 1983, a plaintiff must show that she was deprived of a secured right by a person acting on behalf of (or in concert with) state officials.  Alexis v. McDonald's Restaurants of Massachusetts, Inc., 67 F.3d 341, 351 (1st Cir. 1995); Ponce v. Basketball Feder. of Puerto Rico, 760 F.2d 375, 377(1st Cir.1985).  Cf. Dennis v. Sparks, 449 U.S. 24, 27-28 (1980).  The First Circuit has identified three tests for determining when a private party may be deemed the functional equivalent of a state actor: the state compulsion test; the nexus/joint action test; and the public function test.  Estades-Negroni v. CPC Hospital, 412 F.3d 1, 4-5 (1st Cir. 2005). The first test is satisfied when "the state 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State.'"  Id. at 5, quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982).  "The nexus/joint action test provides that a private party can be held to be a state actor where an examination of the totality of the circumstances reveals that the state has 'so far insinuated itself into a position of interdependence with the [private

4

party] that it was a joint participant in [the challenged activity].'" Id., quoting Bass v. Parkwood Hosp., 180 F.3d 234, 242 (5th Cir. 1999). "In accordance with the public function test, a private party is viewed as a state actor if the plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been 'traditionally the exclusive prerogative of the State.'" Id., quoting Blum, 457 U.S. at 1005.        Runge contends that Kelly should be deemed a state actor because he used his status as a member of the Massachusetts bar to manipulate the court into appointing him as Runge's guardian.[2]  Private lawyers do not become state actors merely by virtue of being licensed by the State.  That is the reasoning that underlies Polk County v. Dodson, 454 U.S. 312, 325 (1981), and the court is aware of no equivalent authority suggesting otherwise.  Runge argues that Kelly, by abusing the state court system, effectively appropriated a state function and should thus be treated as a de facto state actor.  A private party's abuse of a valid state procedure does not, however, implicate state action.  Cf. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1266 (3d Cir. 1994).  That is particularly the case where, as here, there is no allegation that any court official knew that Kelly was not a suitable guardian or conspired with Kelly to obtain the

---

[2]Runge concedes that SunBridge and Dr. Bloomingdale can only be considered state actors to the extent that they acted in concert with Kelly.  A private physician, hospital, or nursing facility does not become an arm of the state merely by virtue of providing medical services.  Blum, 457 U.S. at 1011-1012.  It is also worth noting that to the extent Runge's theory of state action is dependent on the ex parte appointment of Kelly as her guardian, by the time the appointment was made, any constitutional harm to Runge had ended because she had been taken from SunBridge to North Carolina by her daughter.

appointment.[3]     A claim under § 1985(3) can be brought against a private citizen without a showing of state action if the plaintiff can show class-based, invidiously discriminatory animus, and an encroachment on a protected right.  Libertad v. Welch, 53 F.3d 428, 448 (1st Cir. 1995).  Runge argues that discriminatory animus can be inferred because she is an elderly woman.  Age by itself does not define a distinctive group or protected class.  See Silagy v. Peters, 905 F.2d 986, 1010-1011 (7th Cir. 1990).  While gender defines a protected class, the Complaint does not allege that Kelly and the other defendants were motivated by the fact that Runge is a woman.  The Complaint instead alleges that the defendants were motivated by the prospect of financial gain.  That Runge is a woman was incidental to their acts.  It was her vulnerability, not her gender, that made her an attractive victim.

ORDER

For the foregoing reason, Kelly's motion to dismiss Counts I and II of the Complaint is ALLOWED.   The motions to dismiss Counts I and II brought by SunBridge and Bloomingdale are also ALLOWED.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE

---

[3]To the extent that Runge is alleging that she was denied due process by the ex parte nature of the court proceeding she has an adequate remedy at state law and therefore has no recourse to § 1983.  See Reid v. New Hampshire, 56 F.3d 332, 336 n.8, 341 (1st Cir. 1995).