## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

EASTERN DIVISION

No. 05-10849RGS

| |
|---|
| HELEN RUNGE,<br>                              Plaintiff<br><br>                    v.<br><br>WALTER J. KELLY,<br>KERRY L. BLOOMINGDALE, M.D., and<br>SUNBRIDGE NURSING AND<br>REHABILITATION CENTER,<br>                              Defendants |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT WALTER J. KELLY'S MOTION TO COMPEL
## THE PLAINTIFF TO PROVIDE SIGNED ANSWERS TO INTERROGATORIES

NOW COMES the Defendant, Walter J. Kelly, and moves this honorable Court to compel the plaintiff, Helen Runge, to provide signed Answers to Interrogatories. In support of this motion, the Defendant incorporates this memorandum of law and states as follows:

## BACKGROUND

**A.     Plaintiff's Complaint**

Plaintiff, Helen A. Runge, filed this lawsuit on April 27, 2005 against Walter J. Kelly ("Kelly"), Kerry L. Bloomingdale, M.D. ("Bloomingdale") and Sunbridge Nursing and Rehabilitation Center ("Sunbridge"). Plaintiff is an ninety-one (91) year-old woman who was a resident of Sunbridge Nursing and Rehabilitation Center ("Sunbridge") up until April 29, 2003. In 2001, Plaintiff contacted Defendant Kelly to provide her with legal assistance as a result of her decision to and in preparation of entering into Marion

Manor.  Plaintiff alleges that at about this time, Defendant Kelly drafted paperwork that would make himself her power of attorney and her medical power of attorney, either unknown to Runge or without her fully understanding his actions.

The Plaintiff moved from Marion Manor to Bayview Assisted Living in November of 2002, and then to Defendant Sunbridge.  While in these facilities, Plaintiff claims that things were being stolen from her.  She also alleges that Defendant Kelly knew of these facts, but failed to act on behalf of the Plaintiff.  In January of 2003, while at Bayview, Plaintiff accused staff of rummaging through her belongings allegedly with the intent to steal, and contacted the police.  She was taken to Carney Hospital for psychiatric evaluation. Upon discharge she was moved to Defendant Sunbridge.

Plaintiff contends that Defendant Sunbridge compelled her to take anti-psychotic medications that were not necessary.  She also contends that Defendants Kelly and Sunbridge conspired with Dr. Bloomingdale and instructed Dr. Bloomingdale to render an opinion that the Plaintiff was not mentally competent.  Dr. Bloomingdale concluded that the Plaintiff suffers from Alzheimer's dementia with paranoid delusions. However, Plaintiff contends that she was competent when she revoked Defendant Kelly's power of attorney and appointed her daughter and son-in-law as her new power of attorney and healthcare proxy.  Therefore, the Plaintiff's mental competency is the heart of the controversy.

**B.**     **Plaintiff's Answers to Interrogatories**

On August 18, 2006, Defendant sent Plaintiff's counsel a letter pursuant to Local Rule 37.1 requesting a discovery conference regarding Plaintiff's overdue Answers to Interrogatories.  [See 8/18/06 Letter attached as Exhibit A].  As a result of the discovery

conference, Plaintiff provided unsigned Answers to Interrogatories. [See Answers to Interrogatories, attached as Exhibit B]. After another conference with Plaintiff's counsel regarding the unsigned interrogatories, Plaintiff's counsel provided a "verification" of discovery responses by Gilbert Stanley, Plaintiff's purported Power of Attorney. [See "Verification" attached as Exhibit C]. Again, Defendant's counsel requested that Plaintiff herself sign her purported Answers to Interrogatories, or that Plaintiff's counsel at least advise Defendant's counsel that Plaintiff is unable. No response has been received to date, and Defendant still does not have Answers to Interrogatories signed by the Plaintiff herself.

## ARGUMENT

Plaintiff's unsigned Answers to Interrogatories constitute a failure to answer. Fed. R. Civ. P. 33(b)(2) provides that "[t]he answers are to be signed by the person making them, and the objections signed by the attorney making them." The fact that Plaintiff's purported Power of Attorney provided a "verification" of the answers to interrogatories begs the question that is the very heart of this controversy: Is the Plaintiff mentally competent? If the Plaintiff is mentally competent as she claims, than no reason exists why she cannot comply with Rule 33(b)(2). Otherwise, if she is unable to sign her own answers to interrogatories, she is likewise unable to bring suit and testify at trial. Defendant Kelly simply has a right to know, and is entitled to plaintiff's signed answers to interrogatories as required by Rule 33(b)(2).

## **CONCLUSION**

WHEREFORE, Defendant respectfully requests that this Honorable Court compel

the Plaintiff to provide signed answers to interrogatories.

Respectfully submitted,

The Defendant, Walter J. Kelly,

By his attorneys,

_____
*s/ Michele Carlucci*
George C. Rockas, BBO #544009
Michele Carlucci, BBO #655211
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER  LLP
155 Federal Street
Boston, MA 02110
(617) 422-5400

## LOCAL RULE 7.1 CERTIFICATION

I, Michele Carlucci, counsel for the Defendant, Walter J. Kelly, certify that I have spoken with both Attorney Andrea Dean and Glenn Davis, counsel for the Plaintiff, requesting answers to interrogatories signed by the Plaintiff, but have received none to date.

Dated: October 5, 2006                                  *s/  Michele Carlucci*
                                                         Michele Carlucci

66520.1

## <u>CERTIFICATE OF SERVICE</u>

I, Michele Carlucci, certify that on October 5, 2006 I have served a copy of the following by electronic filing and regular mail:

    1.    Defendant Walter J. Kelly's Memorandum in Support of Motion to Compel The Plaintiff to Provide Signed Answers to Interrogatories.

to all counsel of record:

James S. Hamrock, Esq.
Hamrock & Tocci
101 Main Street, 18th Floor
Cambridge, MA 02142

Blake J. Godbout, Esq.
Blake J. Godbout & Associates
33 Broad Street, 11th Floor
Boston, MA 02109

Glen R. Davis, Esq.
Latsha Davis Yohe & McKenna, P.C.
1700 Bent Creek Boulevard, Suite 140
Mechanicsburg, PA 17050

Robert J. Roughsedge, Esq.
Michael Williams, Esq.
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210-2414

                                    */s/ Michele Carlucci*
                                      Michele Carlucci

# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

155 Federal Street, Boston, Massachusetts 02110-1727
Tel: (617) 422-5300  Fax: (617) 423-6917

*Albany • Baltimore • Boston • Chicago • Dallas • Garden City • Houston • Las Vegas • London • Los Angeles • McLean
Miami • Newark • New York • Philadelphia • San Diego • San Francisco • Stamford • Washington, DC • White Plains
Affiliates: Berlin • Cologne • Frankfurt • Munich • Paris*

www.wemed.com

**FILE COPY**

Michele Carlucci
Writer's Ext.: 5416
Michele.carlucci@wilsonelser.com

August 18, 2006

VIA FACSIMILE AND FIRST CLASS MAIL

Glen R. Davis, Esq.
Latsha Davis Yohe & McKenna, P.C.
1700 Bent Creek Boulevard, Suite 140
Mechanicsburg, PA 17050

> **Re:** **Helen Runge v. Walter J. Kelly, et al.**
> **Our File No.: 00894.00237**

Dear Attorney Davis:

Pursuant to Local Rule 37.1, we request a conference regarding your overdue automatic disclosures and discovery responses. Please contact us within seven (7) days to arrange a discovery conference. If we do not hear from you within seven (7) days of this letter, or by Friday, August 25, 2006, we will file the appropriate motions to compel. As you are well aware, we have written to you on several occasions regarding your overdue answers to interrogatories, responses to requests for production of documents and your initial disclosures pursuant to Rule 26(a)(1). We also wrote to you to several times to inform you that we will deem Plaintiff's discovery requests propounded upon Defendant Kelly as served on the day we receive Plaintiff's Automatic Disclosure, given that under Local Rule 26.2(A) you may not initiate discovery before providing your disclosure. We have received no response from you on this issue, and therefore will assume that you do not object to our position.

Thank you for your attention to this matter.

Very truly yours,

*Michele Carlucci*

Michele Carlucci

MC/sap

63581.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HELEN A. RUNGE, | : | |
| Plaintiff | : | |
| | : | No. 05-10849-RGS |
| v. | : | (Judge Stearns) |
| | : | |
| WALTER J. KELLY, et al., | : | CIVIL ACTION |
| Defendants | : | JURY TRIAL DEMANDED |

## PLAINTIFF HELEN RUNGE'S RESPONSE TO DEFENDANT
## WALTER J. KELLY'S FIRST SET OF INTERROGATORIES

Plaintiff Helen Runge hereby response to Defendant Walter J. Kelly's First Set of
Interrogatories as follows:

## GENERAL OBJECTIONS

1.      Runge objects to the Interrogatories to the extent that they impose a
greater obligation than that required by Rules 26 and 33 of the Federal Rules of Civil
Procedure.  Runge will respond and assert objections consistent with its obligations
under such rules and expressly declines to undertake any broader obligations.

2.      Runge objects to the Interrogatories to the extent they exceed the scope of
Rule 33 of the Federal Rules of Civil Procedure and seek information that must be
sought instead through other Federal Rules of Civil Procedure.

3.      Runge objects to the Interrogatories to the extent that they call for the
disclosure of:

    (a)      information developed, acquired or prepared in anticipation of
litigation or which otherwise constitutes attorney work product;

    (b)      mental impressions, conclusions, opinions or legal theories of legal
counsel;

108901

      (c)     privileged attorney-client communications; or,

      (d)     information otherwise protected as privileged under state or federal statutory, constitutional or common law.

4.     Runge objects to the Interrogatories to the extent that they call for the disclosure of information already in the possession of Kelly.

5.     Runge objects to the Interrogatories to the extent that they are vague, overly broad, ambiguous, repetitive, and/or fail to identify the information sought with reasonable particularity.

6.     Runge objects to the Interrogatories to the extent that they seek information that is not relevant to the subject matter of this lawsuit, not reasonably calculated to lead to the discovery of admissible evidence or otherwise not subject to discovery.

7.     By responding to these Interrogatories, Runge does not concede the admissibility of any statement made herein.

8.     Runge reserves the right to supplement or amend her responses to the Interrogatories if further information becomes available.

## SPECIFIC RESPONSES AND OBJECTIONS

The General Objections set forth above apply to all individual numbered Requests, and Runge hereby incorporates each of those General Objections by reference into her responses to each of the individual Requests. Any additional objections stated in the following responses are expressly made in addition to, and not in lieu of, the General Objections and for the purpose of setting forth, where appropriate, Runge's specific position as to Kelly's Requests.

## ANSWERS

1.    Please identify yourself fully, giving your full name, social security number and address.

**Response:**

> **Helen Anne Runge**
> **5 Stirrup Downs**
> **Columbus, NC  28722;**
> **Social Security No. 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.**

2.    Please state the name, business address, occupation and specialty of each person you expect may be called by you as an expert witness at the trial of this action, setting forth:

   a)    the subject matter on which each person may be expected to testify;

   b)    the substance of all facts upon which each person may be expected to testify;

   c)    the contents of all facts about which each person may be expected to testify; and

   d)    a summary of the grounds for each such opinion and the substance of all facts on which such opinions are based.

**Response:    It is premature for Runge to name any expert witnesses.  Runge reserves the right to supplement this Response as discovery is deemed ongoing.**

3.    Please describe fully and in complete and itemized detail all injuries or damages that you claim you suffered as a result of Defendant's alleged conduct.

**Response:    Runge claims she has suffered emotional trauma and distress, including but not limited to depression, anxiety, and humiliation.  Runge also claims she has suffered from not receiving proper medical care while residing at Sunbridge Nursing and Rehabilitation Center (Defendant "Sunbridge"), including but not limited to not receiving care necessary by a dentist, podiatrist, ophthalmologist,**

audiologist, and dermatologist, and being inappropriately and/or overly medicated. Runge claims any and all costs, including but not limited to expert witness fees, reasonable attorneys' fees, and those costs and attorneys' fees incurred in defending or otherwise contesting the ex parte petition that Kelly filed seeking to have himself appointed as guardian of Runge; fees or bills paid improperly by Kelly on Runge's behalf; travel expenses to and from North Carolina; medical costs Runge incurred in North Carolina; and compensatory and exemplary punitive damages.

    4.    Please list each medical care provider, including in your answer the dates of treatment, the type of treatment and the address of the provider, with whom you have treated from 1995 to the present.

**Response:**    Subject to the above General Objections and without waiving these objections, Runge answers this Interrogatory for the time period relevant to Runge's Complaint.

Medical records from the providers listed below contain the information requested in Interrogatory No. 4. See the attached documents in the possession of Runge, which speak for themselves (Attachment A).

    a)    Marian Manor
    130 Dorchester Street
    South Boston, MA  02127;

    Dates of treatment: July 2001 to November 2002;

    b)    Bayview Assisted Living
    1380 Columbia Road
    Boston, MA 02127

    Dates of treatment: November 2002 to November 2003;

    c)    Carney Hospital
    Ronald F. Gomes, M.D.
    Gary L. Taylor, M.D.
    Lilia Feinberg, M.D.
    Sean P. Marker, M.D.
    Benjamin J. Kerman, M.D.
    2100 Dorchester Avenue

Boston, MA  02124-5666

Dates of treatment: January 11, 2003 to January 22, 2003;

d)      Sunbridge Nursing and Rehabilitation Center
        49 Thomas Patten Drive
        Randolph, MA 02368

        Dates of treatment: January 2003 through April 30, 2003;

e)      Kerry L. Bloomingdale, M.D.
        (Defendant "Bloomingdale")
        592 Quinobequin Road
        Waban, MA 02468

        Dates of alleged treatment: April 29, 2003;

f)      B. Rhett Myers, M.D.
        15 South Main Street, Suite 502
        Greenville, SC  29601

        Dates of treatment: May 30, 2003;

g)      Robert M. Palmer, M.D.
        Tryon Medical Group, P.A.
        25 Shields Drive
        Tryon, NC  28782

        Dates of treatment: May 7, 2003; July 25, 2003; November 5, 2003;
        November 7, 2003;

h)      Han W. Dong, M.D.
        155 Old Town Way
        Hanover, MA  02339

        Dates of treatment: February 25, 2003;

i)      Blue Ridge Laser Eye Associates
        192 Hospital Lane
        Columbus, NC  28722

        Dates of treatment: June 4, 2003; October 3, 2003;
        November 12, 2003; November 19, 2003;

j)     Jerry L. Gross, D.P.M.
       Foot and Ankle Center of the Carolinas, P.A.
       279 Shiloh Road
       Forest City, NC  20843

       Dates of treatment: November 12, 2003; December 18, 2003;

k)     David A. Wagner, D.M.D.
       PO Box 275
       Columbus, NC  28722

       Dates of treatment: September 3, 2003;

l)     White Oak Manor (Benson Hall Assisted Living Facility)
       70 Oak Street
       Tryon, NC 28782

       Dates of treatment: April 2, 2004 to December 31, 2004;

m)     White Oak Manor (Nursing Facility)
       70 Oak Street
       Tryon, NC 28782

       Dates of treatment: January 4, 2005 to June 3, 2005;

n)     Black Mountain Center (Greenwood Inn Respite Center)
       932 Old U.S. Highway 70
       Black Mountain, NC 28711

       Dates of treatment: Approximately three days in July 2005;
       Approximately one week in July 2006;

o)     LaurelWoods Assisted Living
       1062 & 1064 W. Mills St.
       Columbus, NC 28722

       Dates of treatment: July 28, 2003 to August 17, 2003;

p)     Dr. George Kim
       2536 Lynn Road, Suite B
       Tryon, NC 28782

       Dates of treatment: Intermittent, beginning the middle of 2005;

q)    Dr. Peter Neidenbach
      Laurellyn Medical Group
      37 Wilderness Road
      Tryon, NC 28782

      Dates of treatment: June 13, 2003;

r)    Richards Hearing Aid Center
      POB 98
      1521 E. Rutherford Road
      Landrum, SC 29356

      Dates of treatment: May 6, 2003;

s)    St. Luke's Hospital
      Dr. Robert Ratcliff
      Dr. Edwin Padget
      Dr. George Kim
      101 Hospital Drive
      Columbus, NC 28722

      Dates of treatment:  October 7, 2003 to October 27, 2003;
      December 31, 2004 to January 4, 2005; and December 1, 2005 to
      December 7, 2005;

t)    St. Luke's Skilled Nursing Facility
      Dr. George Kim
      101 Hospital Drive
      Columbus, NC 28722

      Dates of treatment:  December 7, 2005 to January 3, 2006.


5.    Please list each hospital, nursing home and assisted living facility in which
you stayed or were admitted at any time.  Include in your answer the dates of your stay,
residence or admittance and departure, the reasons for your stay and the reasons why
you left.

Response:

a)    Marian Manor
      130 Dorchester Street
      South Boston, MA  02127;

Dates of stay: July 2001 to November 2002; Runge was a resident, and chose to move to Bayview Assisted Living.

b)    Bayview Assisted Living
      1380 Columbia Road
      Boston, MA 02127;

      Dates of stay: November 2002 to January 2003; Runge was a resident prior to the admission to Carney Hospital.

c)    Carney Hospital
      2100 Dorchester Avenue
      Boston, MA 02124-5666;

      Dates of admission: January 11, 2003 to January 22, 2003; Runge was admitted to Carney Hospital after Kelly requested Runge be admitted for psychiatric evaluation. Runge was discharged after being found to be not psychotic.

d)    Sunbridge Nursing and Rehabilitation Center
      49 Thomas Patten Drive
      Randolph, MA 02368;

      Dates of stay: January 2003 through April 2003; Runge was discharged from Carney Hospital to Sunbridge against her wishes. Runge then chose to move to North Carolina.

e)    White Oak Manor
      70 Oak Street
      Tryon, NC 28782;

      Dates of stay: January 4, 2005 to June 3, 2005; Runge's stay was a medical necessity;

f)    White Oak Manor (Benson Hall Assisted Living Facility)
      70 Oak Street
      Tryon, NC 28782;

      Dates of stay: April 2, 2004 to December 31, 2004; Runge's stay was a medical necessity;

g)    Black Mountain Center (Greenwood Inn Respite Center)
      932 Old U.S. Highway 70
      Black Mountain, NC 28711;

Dates of stay:  Approximately three days in July 2005; approximately one week in July 2006; Runge's temporary stays were for convenience;

h)   LaurelWoods Assisted Living
1062 W. Mills St.
Columbus, NC 28722;

Dates of stay: July 28, 2003 to August 17, 2003; Runge's stay was for convenience;

i)   St. Luke's Hospital
101 Hospital Drive
Columbus, NC 28722

Dates of treatment:  October 7, 2003 to October 27, 2003; December 31, 2004 to January 4, 2005; and December 1, 2005 to December 7, 2005; Runge's stays were medical necessities;

j)   St. Luke's Skilled Nursing Facility
101 Hospital Drive
Columbus, NC 28722

Dates of treatment:  December 7, 2005 to January 3, 2006; Runge's stay was a medical necessity.

6.    Please state fully and in complete detail all that you allege Defendant did or failed to do that caused you harm or damages.

Response:    Kelly misrepresented his relationship with Runge's former attorney to Runge.  Kelly made himself Runge's power of attorney and medical power of attorney unknown to Runge or without her fully understanding his actions. Kelly made himself Runge's primary point of contact for health problems when Runge moved into Marion Manor, usurping Runge's daughter's position of authority with little or no contact with Runge's family.  Kelly using color of law misrepresented himself to Runge as being able to act on her behalf.  Kelly failed to act on Runge's behalf as exemplified when Runge's prescription card was stolen while she was a resident at Bayview Assisted Living.  Kelly directed that Runge be

taken to Carney Hospital for a psychiatric evaluation even though he had no substantiation for the need of such evaluation. Kelly, as a fiduciary, misrepresented facts to Runge in order that she be held at Carney Hospital. Runge overheard Kelly saying she was "mental" to a staff member before she left Bayview. Contrary to Kelly's representation that he would undertake fiduciary powers on Runge's behalf, Kelly did not faithfully fulfill his fiduciary obligations on Runge's behalf. Kelly did charge Runge for his professional services for purportedly the time he was acting on her behalf. Kelly directed that Runge be taken to and admitted in Sunbridge. Kelly had a professional relationship with Sunbridge as other elderly clients had been or were residents there. Kelly falsely advised Runge that she could not return to Bayview. Kelly did not present her with any option other than Sunbridge, and did not discuss this decision with Runge or her daughter. Kelly failed to properly advise Runge regarding the implications of her signing the admission paperwork for Sunbridge. Kelly facilitated Runge's admission to Sunbridge knowing she had no desire to be at the facility. Kelly refused to facilitate Runge's move to more appropriate care and living accommodations despite Runge's numerous requests to do so. Kelly took no action when Runge advised him that she was being forced to take medications that were unnecessary and impaired her mental capacity. Kelly conspired to keep Runge in a state of diminished capacity due to the numerous medications that impaired her cognitive abilities. Kelly insisted to Runge that she take the medication indicating that if she refused to take it, it would be forced upon her. Kelly indicated to Runge's daughter that he was considering having a guardian appointed to force Runge, against her will, to take the medication. Upon information and belief, Kelly advised Sunbridge staff not to provide Runge's medical records to Runge's family, despite Runge's direction to do so. Kelly requested Bloomingdale to examine Runge, despite the fact he had no authority to act on Runge's behalf. Management of Sunbridge acted at the direction or in concert with Kelly in refusing to allow Runge to be discharged. Kelly had not returned Runge's family's phone call nor made any effort to discuss Runge's situation with them. Runge's family was told by staff at Sunbridge that Kelly had directed that Runge not be allowed to leave the

nursing floor. Kelly orchestrated a scheme to hold Runge at Sunbridge against her will. Kelly contacted Runge's two financial institutions, instructing them to freeze her accounts, even though Kelly knew he had no authority to act on Runge's behalf and that freezing her access to her financial accounts could have a potential and significant effect on her health. Upon information and belief, Kelly took these actions in concert with Sunbridge in order to obtain funds from Runge's accounts. Kelly filed an ex parte petition seeking to have himself appointed as Runge's guardian. Kelly enlisted the aid of Bloomingdale and Sunbridge in presenting this petition, misrepresenting facts to the court and having himself appointed as Runge's guardian. Kelly notified North Carolina police that Runge was being held against her will. Kelly undertook a scheme to distribute funds from Runge's estate to make payment for services allegedly rendered by himself, Bloomingdale, and Sunbridge.

7.    Please identify any physical evidence relating to any of the allegations contained in your Complaint known to you to exist or to have existed, and state the current whereabouts and custodian of such evidence.

**Response:**    Runge objects to Interrogatory No. 7 on the grounds that it is vague and overly broad in scope and Runge is unable to ascertain what "physical evidence relating to any of the allegations in your Complaint" is being sought for identification. Subject to and without waiving the above objections, Runge refers Kelly to Attachments A and B and those documents Runge has produced in response to Kelly's Request for Production of Documents to Runge.

8.    Please state the full name and last known address, giving the street, number, city and state of every witness known to you or to your attorneys, who has any knowledge regarding the facts and circumstances surrounding the incident, including, but not limited to, eyewitnesses to such events and other persons having any knowledge thereof.

Response:

a)   Helen A. Runge
     5 Stirrup Downs
     Columbus, NC  28722

b)   Gilbert B. Stanley
     5 Stirrup Downs
     Columbus, NC  28722

c)   Dorothy Stanley
     5 Stirrup Downs
     Columbus, NC  28722

d)   Nurse Kayla and other representatives of
     Sunbridge Nursing and Rehabilitation Center
     49 Thomas Patten Drive
     Randolph, MA 02368

e)   Robert M. Palmer, M.D.
     Tryon Medical Group, P.A.
     25 Shields Drive
     Tryon, NC  28782

f)   B. Rhett Myers, M.D.
     15 South Main Street, Suite 502
     Greenville, SC  29601

g)   Jerry L. Gross, D.P.M.
     Foot and Ankle Center of the Carolinas, P.A.
     279 Shiloh Road
     Forest City, NC  20843

h)   David A. Wagner, D.M.D.
     PO Box 275
     Columbus, NC  28722

i)   Kerry L. Bloomingdale, M.D.
     592 Quinobequin Road
     Waban, MA  02468

j)   Walter J. Kelly
     1996 Centre Street
     West Roxbury, MA  02132

    k)     **Dr. Robert Ratcliff**
              **Dr. Edwin Padget**
              **Dr. George Kim (also 2536 Lynn Road, Suite B, Tryon, NC 28782)**
              **St. Luke's Hospital**
              **101 Hospital Drive**
              **Columbus, NC 28722**

9.      If you contend that a violation of any law, statute, regulation, standard, code, industry standard, industry practice or consensus standard is an element of any alleged breach of warranty or negligence by Defendant, cite all such laws, statutes, regulations, standards and codes and the applicable sections or provisions thereof, and specify the manner in which each was violated by Defendant.

**Response:**    **Runge contends that Kelly has violated the common law of negligence, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract, breach of fiduciary duty, and abuse of process, and has violated the Massachusetts Consumer Protection Act, M.G.L. c. 93A.**

10.     Identify any recorded or written statements in your possession taken from any witness to any of the events or injuries described in the Complaint or from any other witness with knowledge of discoverable information relevant to the matters alleged in the Complaint.

**Response:**    **Subject to the above General Objections and without waiving them, see the attached documents, which speak for themselves (Attachment B). Further, there is a videotape of the statement taken from Runge on January 16, 2004, which is available for purchase from Brevard Video Productions, Randy Shelton, Owner located at 49 White Road, Brevard, North Carolina 28712-8264, (828) 862-5657.**

11.     Please list describe your employment from 1995 to 2003. Include in your answer for each employer:

    a)     the name and address of each employer;

    b)     the nature of your employment;

c)      a description of the work you performed;

d)      your wage and/or salary;

e)      the start and end date of your employment; and

f)      the reason(s) for leaving your employment.

**Response:      None.**

12.      Please describe in detail the circumstances under which you came to retain Defendant.  Include in your answer how you met Defendant, the date on which you first retained Defendant and the scope of the work he was to perform on your behalf.

**Response:      For years, when necessary, Runge utilized Attorney Peter Kerr, who retired from the practice of law in 1998.  Kerr shared office space with Kelly who represented himself to Runge be the law partner of Kerr when, in fact, the only relationship was that they shared office space.  In 2001, Runge contacted Kelly, understanding that he had taken over Attorney Kerr's clients, to provide her with legal assistance as a result of her decision to and in preparation of entering an assisted living facility, Marian Manor.**

Respectfully submitted,

LATSHA DAVIS YOHE & MCKENNA, P.C.

Dated:  Ay. 23 2006                      By_____
                                         Glenn R. Davis, Esq.
                                         Attorney ID 31040
                                         1700 Bent Creek Boulevard, Suite 140
                                         Mechanicsburg, PA 17050
                                         (717) 620-2424
                                         gdavis@ldylaw.com
                                         *Pro Hac Vice*
                                         Attorneys for Plaintiff, Helen A. Runge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HELEN A. RUNGE, | : | |
| Plaintiff | : | |
| | : | No. 05-10849-RGS |
| v. | : | (Judge Stearns) |
| | : | |
| WALTER J. KELLY, et al., | : | CIVIL ACTION |
| Defendants | : | JURY TRIAL DEMANDED |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date a true and correct copy of the foregoing Plaintiff Helen Runge's Response to Defendant Walter Kelly's First Set of Interrogatories was served by first-class United States mail, postage prepaid, upon the following:

James S. Hamrock, Jr., Esq.
Attorney of record for Kerry L. Bloomingdale, M.D.,
Hamrock & Tocci
101 Main Street, 18th Floor
Cambridge, MA 02142

George C. Rockas, Esq.
Michele Carlucci, Esq.
Attorney of record for Walter J. Kelly
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
155 Federal Street
Boston, MA 02110-1727

Michael Williams, Esq.
Attorney of record for Sunbridge Nursing and Rehabilitation Center
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210-1736

Blake J. Godbout, Esq.
David A. Conti, Esq.
Blake J. Godbout & Associates
33 Broad Street, 11th Floor
Boston, MA  02109

Dated: Ay 23, 2006

Glenn R. Davis



# LATSHA DAVIS YOHE & MCKENNA, P.C.

**ATTORNEYS AT LAW**

PLEASE REPLY TO:    Mechanicsburg
WRITER'S E- MAIL:    adean@ldylaw.com

September 14, 2006

Michele Carlucci, Esq.
Wilson, Elser, Moskowitz,
Edelman & Dicker LLP
155 Federal Street
Boston, MA 02110-1727

     Re:    Helen A. Runge v. Walter J. Kelly, et al.
            No. 05-10849-RGS
            Our File No. 812-03

Dear Ms. Carlucci,

     You recently requested verifications for the discovery responses Plaintiff has submitted. Please find enclosed verifications signed by Gilbert Stanley, Helen Runge's Power of Attorney, verifying the responses prior to their submission.

     Please be aware that Plaintiff served Requests for Production of Documents on Defendants on May 19, 2006. Although you previously refused to answer the request until you received Plaintiff's Initial Disclosures, Plaintiff served her Initial Disclosures on August 24, 2006. As you received the Request for Production of Documents in May 2006, we expect that Defendant Kelly's response to Plaintiff's Request for Production of Documents will be forthcoming.

                    Sincerely,

                    Andrea E. Dean

Enclosure

cc:    Michael Williams, Esq. (w/o enc.)
      James S. Hamrock, Jr., Esq. (w/o enc.)
      Blake J. Godbout, Esq. (w/o enc.)
      Gilbert Stanley (w/o enc.)
      Helen A. Runge (w/o enc.)
      Glenn R. Davis, Esq. (w/o enc.)

RECEIVED SEP 1 8 2006 By

## VERIFICATION

I, Gilbert Stanley, Power of Attorney for Plaintiff Helen Runge, do hereby verify that I have read the Response to Defendant Kerry L. Bloomingdale's Request for Production of Documents. The statements therein are true and correct to the best of my knowledge, information and belief.

Dated: _Aug. 16, 2006_         _____
                               Gilbert Stanley
                               Power of Attorney for Plaintiff,
                               Helen Runge

110275

## VERIFICATION

I, Gilbert Stanley, Power of Attorney for Plaintiff Helen Runge, do hereby verify that I have read the Response to Defendant Kerry L. Bloomingdale's First Set of Interrogatories. The statements therein are true and correct to the best of my knowledge, information and belief.

Dated: _Aug 16, 2006_

Gilbert Stanley
Power of Attorney for Plaintiff,
Helen Runge

110275