## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HELEN A. RUNGE, | : | |
| Plaintiff | : | |
| | : | No. 05-10849-RGS |
| v. | : | (Judge Stearns) |
| | : | |
| WALTER J. KELLY, et al., | : | CIVIL ACTION |
| Defendants | : | JURY TRIAL DEMANDED |

### PLAINTIFF HELEN RUNGE'S OPPOSITION TO DEFENDANT KELLY'S CROSS-MOTION TO COMPEL PLAINTIFF TO RESPOND TO REQUESTS FOR PRODUCTION OF DOCUMENTS AND MEMORANDUM OF REASONS WHY MOTION SHOULD NOT BE GRANTED

Helen A. Runge ("Plaintiff"),[1] by and through her counsel, opposes Defendant

Walter J. Kelly's Cross-Motion to Compel Plaintiff to Respond to Requests for

Production of Documents, and respectfully submits this Memorandum of Reasons Why

the Motion Should Not Be Granted.

### I.    FACTUAL BACKGROUND

Plaintiff filed her original Complaint on April 27, 2005, pleading counts sounding

both in federal and state law.  Counts I and II of the original Complaint were federal

law claims, which were dismissed by this Court's Order dated January 23, 2006.

Jurisdiction remains with this Court due to diversity, although the federal question

jurisdiction counts were dismissed.  By Court Order entered July 28, 2006, Plaintiff was

permitted to file an Amended Complaint, which Plaintiff filed on August 7, 2006.  By

---

[1] Plaintiff died in January 2007.  Her daughter is in the process of being appointed her estate representative.

Court Order entered January 5, 2007, Plaintiff was permitted to file her Second

Amended Complaint, which Plaintiff filed on January 8, 2007.

According to this Court's Scheduling Order, the fact discovery period ended on

December 22, 2006. On January 11, 2007 without prior notice to Plaintiff, Defendant

Kelly sent eight (8) subpoenas for service out of the Western District of North Carolina.

*See* Exhibit A to Plaintiff's Motion for Protective Order, Document No. 74. Plaintiff filed

a Motion for Protective Order regarding these eight (8) subpoenas on January 26, 2007.

The Motion for Protective Order was granted by Order entered February 9, 2007. The

Order stated that "Plaintiff will, however, produce the requested medical records."

This Order seems inconsistent, as Plaintiff has already produced all medical records in

response to Defendant Kelly's Request for Production of Documents pursuant to

Federal Rule of Civil Procedure ("FRCP") 34. Further, Defendant Kelly filed a Cross-

Motion to Compel the same medical records he requested via subpoena, and this Cross-

Motion is outstanding. Accordingly, Plaintiff opposes Defendant Kelly's Cross-Motion

and files this memorandum setting forth the reasons in support of a denial of the Cross-

Motion.

## II.    ARGUMENT

Defendant Kelly ultimately was responsible for obtaining any medical records or

releases for medical records that he deemed necessary within the fact discovery period,

as were all of the parties. In fact, at depositions held in December 2006, counsel for all

parties discussed and agreed to conduct three (3) depositions outside of the fact

discovery time period as the only outstanding discovery. During that discussion,

Michele Carlucci, counsel for Defendant Kelly, was present yet never raised the issue that she intended to subpoena additional medical records. Counsel for Defendant Kelly never requested releases for the providers that were served the eight (8) subpoenas until the discovery conference in this matter, which was well outside of the fact discovery period. Counsel for Defendant Kelly also never requested whether Plaintiff agreed to the issuance of the subpoenas outside of the fact discovery period. Defendant Kelly argues that the subpoenas originally were sent for service within the fact discovery period, but service did not occur. This does not negate the fact that Defendant Kelly was responsible for obtaining timely discovery and that he did not follow-up on the subpoenas to ensure that he completed his discovery in a timely manner.

Interestingly, Defendant Kelly did not raise the issue of Plaintiff's response to his Request for Production of Documents numbers 14 and 15 until he failed to obtain certain medical records within the Court-ordered fact discovery period. Now that Defendant Kelly has failed to obtain the documentation he claims he needs, he asserts that Plaintiff did not respond fully to his Request for Production of Documents.

Plaintiff has produced all documents responsive to Defendant Kelly's Request for Production of Documents in Plaintiff's original and supplemental responses in accordance with FRCP 34, including request numbers 14 and 15. *See* Exhibits E & F to Defendant Kelly's Memorandum, Document No. 78. The documents produced by Plaintiff in response to request numbers 14 and 15 are all of the medical records that were obtained previously by Plaintiff during the course of treatment.

Defendant Kelly requested a production of documents encompassing all of Plaintiff's medical records with every provider she has treated with since 1995 to the present. *See* Exhibit D to Defendant Kelly's Memorandum, Document No. 78, specifically Request No. 15. Defendant Kelly now asserts that these records are within Plaintiff's control and, therefore, must first be obtained by Plaintiff and then produced in discovery. To support this assertion, Defendant Kelly relies on cases that are not on point in the instant matter. The cases do not contemplate the relationship between a physician and patient, which is the specific relationship at issue here that will dictate who or what controls Plaintiff's medical records.

One case that Defendant Kelly cites contemplates a relationship where control is established based on a contractual relationship, not on a doctor-patient relationship. *Rosie D. v. Romney*, 256 F.Supp.2d 115 (D. Mass. 2003). The court in *Rosie D.* stated that control over documents for the purposes of producing such documents in discovery "may be established by the existence of a principal-agent relationship or a legal right pursuant to a contractual provision." *Rosie D.*, 256 F.Supp.2d at 119. The *Rosie D.* court found that a certain relationship existed to require the production of documents because of specific contractual language applicable to the party. *Id.* A second case cited by Defendant Kelly contemplates a relationship where control is based on the relationship between a corporation and the defendant officers/directors/shareholders, not a doctor-patient relationship. *Haseotes v. Abacab*, 120 F.R.D. 12 (D. Mass. 1988). The *Alexander* and *Calzaturficio* cases cited by Defendant Kelly are equally unpersuasive, as the first focuses on a defendant ordered to produce documents within her control

where neither party disputed whether control existed, and the second narrowly focuses on a deponent's responsibility to review reasonably available documents prior to a deposition, which was generally analogized to a party's obligation under FRCP 34 to produce documents under that party's control.  *Alexander v. FBI*, 194 F.R.D. 299 (D. D.C. 2000); *Calzaturficio v. Fabiano Shoe Co., Inc.*, 201 F.R.D. 33 (D. Mass. 2001).  Finally, Defendant Kelly cites *Woodward v. Tynan*, 776 F. 2d 250 (10th Cir. 1985), which addresses the defendants' obligation to attempt to obtain their own corporate business documents, which they have control over, from an uninvolved court which had placed the documents under seal.  While these cases all address specific factual situations regarding control of documents, none of them address whether control exists for the patient in a doctor-patient relationship where the doctor has the records.

In fact, the relationship between a doctor and a patient is not sufficient to establish the patient's control over medical records for purposes of production of documents.  *Clark v. Vega Wholesale Inc.*, 181 F.R.D. 470, 472 (D. Nev. 1998); *Neal v. Boulder*, 142 F.R.D. 325 (D. Col. 1992).  In *Clark*, the court discussed that, although a party that has a legal right to obtain certain documents is deemed to control the documents, "the relationship between the party and the person or entity having actual possession of the documents is central in each case."  *Clark*, 181 F.R.D. at 472.  This special relationship requires that a party be in exclusive control of the documents before the court orders production of them.  *Id.*  At the same time that a special relationship exists, the other parties must be "unable to obtain the documents in the regular course of authorized discovery."  *Id.*  The court stated that the defendant could make proper

use of the Federal Rules of Civil Procedure and obtain the requested documents as easily as the plaintiff. *Id.* Accordingly, the court in *Clark* held that the patient-doctor relationship is not sufficient to establish the patient's control of her medical records and, therefore, she need not provide a signed release for her medical records as requested by the defendant. *Id.*

Here, a relationship on which to premise control over medical records simply does not exist. Defendant Kelly had every opportunity to properly obtain such documentation directly from the providers within the fact discovery period set by the Court. It was Defendant Kelly's responsibility to determine which documents he had received and which documents were outstanding, so that Defendant Kelly could obtain outstanding documentation within the fact discovery period.

Defendant Kelly discusses his alleged grievances throughout his memorandum in support of the Cross-Motion while never explaining how his allegations are relevant to the Cross-Motion at issue. For example, Defendant Kelly makes a great deal of the fact that Plaintiff signed her answer to Defendant Kelly's Interrogatories after her power of attorney properly had signed it on her behalf. It was at Defendant Kelly's insistence that Plaintiff redundantly sign her answer, after her power of attorney appointed in part for such matters already had done so. *See* Defendant Kelly's Memorandum, Document No. 78.

Defendant Kelly also rehashes his motion to compel Plaintiff to submit to a psychiatric evaluation. This previously-filed motion was denied by this Court and is not relevant to Defendant Kelly's instant Cross-Motion. Despite Defendant Kelly's

assertion that "Plaintiff's mental competence is the heart of the controversy," Plaintiff did not bring suit against Defendants to affirm her competency. The actual controversy at issue is Defendants' blatant mistreatment of Plaintiff, not whether Plaintiff was competent years after the incidents in question occurred. Plaintiff never had been adjudicated incompetent; Defendant Bloomingdale's deposition testimony established that his opinion of Plaintiff's condition was proffered for the purpose of a possible guardianship for medical purposes (i.e. so that Defendant Sunbridge would be able to force Plaintiff to take medication she refused to take). *See* deposition testimony attached as Exhibit A. Plaintiff was under no obligation to make "an affirmative statement whether or not the Plaintiff was competent" at the time she signed her Answer to Interrogatories, as Defendant Kelly asserted in his memorandum.

Defendant Kelly had the responsibility and opportunity to obtain the medical records he feels he needed within the fact discovery period. He failed to do so and now motions to compel Plaintiff to produce either the records or sign releases for the records. Plaintiff is not part of a special relationship so that she is obligated to obtain her medical records from her providers in order to produce them in discovery. Accordingly, Plaintiff requests that this Honorable Court deny and dismiss Defendant Kelly's Cross-Motion to Compel Plaintiff to Respond to Requests for Production of Documents.

III.    **CONCLUSION**

For the foregoing reasons, Defendant Walter J. Kelly's Cross-Motion to Compel

Plaintiff to Respond to Requests for Production of Documents should be denied and

dismissed.

Respectfully submitted,

LATSHA DAVIS YOHE & MCKENNA, P.C.

Dated: February 13, 2007        By____/s/ Glenn R. Davis_____
                                Glenn R. Davis, Esq.
                                Attorney ID 31040
                                1700 Bent Creek Boulevard, Suite 140
                                Mechanicsburg, PA 17050
                                (717) 620-2424
                                gdavis@ldylaw.com
                                *Pro Hac Vice*

                                Blake J. Godbout, BBO #196380
                                BLAKE J. GODBOUT & ASSOCIATES
                                33 Broad Street, 11th Floor
                                Boston, MA  02109
                                (617) 523-6677
                                blake@bjgalaw.com

                                Attorneys for Plaintiff, Helen A. Runge

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing document was served upon the

attorney of record for each party by electronic transmission.

James S. Hamrock, Jr.
Hamrock & Tocci
101 Main Street, 18th Floor
Cambridge, MA 02142
jhamrock@htclaw.com

Michele Carlucci
George S. Rockas
Wilson Elser Moskowitz Edelman & Dicker LLP
155 Federal Street
Boston, MA 02110
michele.carlucci@wilsonelser.com
george.rockas@wilsonelser.com

Michael Williams
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 145
Boston, MA 02210-1736
mwilliams@lawson-weitzen.com

Dated: February 13, 2007                    /s/ Glenn R. Davis
                                            Glenn R. Davis

**ORIGINAL**

1

1                                    Volume:   I

2                                  Pages: 1-109

3            UNITED STATES DISTRICT COURT

4                 EASTERN DIVISION

5      - - - - - - - - - - - - - - - - - - x

6      HELEN RUNGE,                 Civil Action

7            Plaintiff,        No. 05-10849-RGS

8      WALTER J. KELLY,
       KERRY L. BLOOMINGDALE, M.D., and
9      SUNBRIDGE NURSING AND
       REHABILITATION CENTER,

10          Defendants.

11     - - - - - - - - - - - - - - - - - x

12

13

14      DEPOSITION OF KERRY L. BLOOMINGDALE, M.D.

15       Thursday, December 14, 2006, 9:16 a.m.

16           Blake J. Godbout & Associates

17           33 Broad Street - 11th Floor

18          Boston, Massachusetts 02109

19

20     ----- **Reporter:  Toni F. Beckwith, RMR** -----

21

22     Toni F. Beckwith, Registered Merit Reporter
                     50 Winsor Avenue
23          Watertown, Massachusetts 02472
                   Tel: 617.924.2731
24                 Fax: 617.924.9899

2

1    APPEARANCES:

2

      LATSHA DAVIS YOHE & MCKENNA, P.C.
3     By Glenn R. Davis, Esquire
      1700 Bent Creek Boulevard, Suite 140
4     Mechanicsburg, Pennsylvania 17050
      Counsel for the Plaintiff
5

6

      WILSON, ELSER, MOSKOWITZ,
7     EDELMAN & DICKER, LLP
      By Michele Carlucci, Esquire
8     155 Federal Street
      Boston, Massachusetts 02110
9     Counsel for Walter J. Kelly

10

11    HAMROCK & TOCCI
      By James S. Hamrock, Jr., Esquire
12    101 Main Street, 18th Floor
      Cambridge, Massachusetts 02142
13    Counsel for Kerry L. Bloomingdale, M.D.

14

15    LAWSON & WEITZEN, LLP
      By Michael Williams, Esquire
16    88 Black Falcon Avenue
      Boston, Massachusetts 02210
17    Counsel for Mediplex d/b/a Sunbridge
      Nursing and Rehabilitation Center
18

19    ALSO PRESENT:

20      Gilbert Stanley

21      Madeline S. Goff, Claims Adjuster

22

23

24

3

1                          I N D E X

2    Deposition of:              Direct Cross Redirect

3    KERRY L. BLOOMINGDALE, M.D.

4        By Mr. Davis                    4

5        By Mr. Williams            106

6        By Mr. Hamrock

7

8

9

10

11

12

13                      E X H I B I T S

14   No.                                    Page

15

16   1              Handwritten Notes          34

17

18

19

20

21

22

23

24

99

1    overall treatment.  She seemed to be paranoid of

2    non-American people, of whom there were quite a

3    few at the facility.  She seemed to have this

4    recurrent problem of forgetting where she had

5    put things and then becoming agitated and/or

6    afraid that they had been taken from her.  So I

7    think I thought that those kinds of issues could

8    get into personal difficulties.

9         Q.  When you said that she lacked the

10   ability to make sound decisions with regard to

11   certain personal affairs, am I correct in

12   understanding your testimony that you did not

13   intend that statement to mean personal affairs

14   with regard to her financial affairs?

15        A.  I don't remember when I wrote this.

16        Q.  What was your understanding with

17   regard to why this medical certificate was being

18   completed by you?

19        A.  I think mainly that it grew out of my

20   suggestion that a guardianship be obtained for

21   medication purposes.

22        Q.  Just go through the time frame with

23   me, then, if you will.  You're asked to consult

24   on Helen Runge on 4/29; you make the