UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL DOCKET NO: 05-CV-10849 (RGS)

*******************************************
DOROTHY STANLEY, AS EXECUTRIX OF            *
THE ESTATE OF HELEN RUNGE                   *
                                            *
        PLAINTIFF                           *
vs.                                         *
                                            *
WALTER J. KELLY,                            *
KERRY L. BLOOMINGDALE, M.D.,                *
AND SUNBRIDG NURSING AND                    *
REHABILITATION CENTER                       *
                                            *
        DEFENDANTS                          *
*******************************************

### DEFENDANT KERRY BLOOMINGDALE, M.D.'s
### STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1 IN
### SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

1. Plaintiff's Second Amended Complaint contains 16 Counts. Second Amended Complaint, p. 17-30.

2. That Complaint contains one Count, Count I, against Defendant Kerry Bloomingdale, M.D. That Count is entitled Negligence. Id, pp. 17-18.

3. Count I alleges, at paragraph 51: "The conduct of defendant Bloomingdale constitute [sic] negligence as it deviates from the standards of care owed by him to Runge." Id, p. 17.

4. The remaining fifteen Counts include eight against Defendant Walter Kelly, an attorney, and seven against Defendant Sunbridge. The Counts against both of these defendants allege, inter alia, negligence, false imprisonment, breach of contract, and intentional infliction of emotional distress. Id, pp. 18-30.

5. The date that the plaintiff alleges that Dr. Bloomingdale was negligent was April 29, 2003. Plaintiff Helen Runge's Answers To Interrogatories of Defendant Kerry Bloomingdale, M.D., No. 2(a).

6. The plaintiff has indicated that the manner in which the negligence of Dr. Bloomingdale allegedly caused injury to her is as follows:

> Kelly enlisted the aid of Bloomingdale and Sunbridge in presenting his ex parte guardianship petition, misrepresenting facts to the court and having himself appointed guardian of Runge. Upon information and belief, soon after Kelly's ex parte appointment as the guardian of Runge, he undertook a scheme to distribute funds from her estate to make payment for services allegedly rendered by himself, Bloomingdale and Sunbridge. Id, 2(d)

7. The plaintiff Helen Runge was an inpatient in the Psychiatric Unit of the Carney Hospital from January 12-22, 2003. Carney Hospital Psychiatric Discharge Summary, dated 1/22/03.

8. The Carney Discharge Summary includes: "Axis I: Rule out paranoid delusional disorder. Rule out Alzheimer's dementia." Id.

9. The discharge medications from the Carney included an anti-psychotic, Zyprexa, 2.5 mg to be taken each evening. Id.

10. During the Carney admission, on January 20, 2003, the psychiatrist documented:

> Patient remains disorganized. Irritable. Somatic. No insight. Remains preoccupied with her desire to attend some previously scheduled medical appointments this week. Found black spots in her bed which she insists are bugs that are biting her. Unable to reality test around these issues. Carney Progress Notes, dated 1/20/03.

11. Ms. Runge was transferred from the Carney to Sunbridge, where she was a patient from January 22 to April 30, 2003. Second Amended Complaint.

12. Dr. Bloomingdale is a board-certified psychiatrist who works at the Beth Israel Deaconess Medical Center. Deposition of Dr. Bloomingdale, pp. 9-10.

13. As an independent contractor, Dr. Bloomingdale also sees patients at several nursing homes on behalf of New England Geriatrics, a company that contracts with nursing homes to provide mental health services. Id, pp. 12-14.

14. The fees for Dr. Bloomingdale's services to the nursing home patients usually are billed directly to the patients' insurers, occasionally to New England Geriatrics, but never to the nursing home. Id, pp. 15-16.

15. In his capacity as an independent contractor for New England Geriatrics, Dr. Bloomingdale saw Ms. Runge at Sunbridge on three dates, March 4, April 1, and April 29, 2003. Id, pp. 33-34, 51, 65-66.

16. Dr. Bloomingdale's diagnosis of Ms. Runge on March 4, 2003 included: "Axis I, Alzheimer's dementia with delusions." Id, p. 35.

17. Dr. Bloomingdale recommended that Ms. Runge be continued on the Zyprexa, which had been prescribed by her primary care physician at Sunbridge. Id, p. 46-48.

18. Zyprexa is for paranoia and agitation. Id, p. 47.

19. At the April 1, 2003 visit, Dr. Bloomingdale noted that Ms. Runge "has been at times more paranoid and sadder." Id, p. 54.

20. On April 1, 2003, Dr. Bloomingdale recommended, in regard to a complete blood count and urinalysis that had been ordered a day earlier by a Nurse Practitioner from New England Geriatrics, that "if labs drawn turn out to be normal", that the Nurse Practitioner's suggestion of adding a trial of Zoloft be followed. Id, pp. 61-63. New England Geriatrics Diagnostic/Treatment Evaluation form, dated 4/1/03.

21. Zoloft is a medication for depression. Deposition of Dr. Bloomingdale, p. 62.

22. After Dr. Bloomingdale saw Ms. Runge on April 29, he signed, under the pains and penalties of perjury, a Massachusetts Probate Court Medical Certificate form. Id, pp. 99-101. Medical Certificate, dated 4/29/03.

23. There is a check mark in the box, on the Medical Certificate form, beside the pre-printed language: "is a mentally ill person to the degree that he/she is incapable of caring for his/her personal and/or financial affairs." Medical Certificate.

24. In the section of the form asking for the bases of his opinion, Dr. Bloomingdale's handwritten note includes the following:

> …she lacks the ability to make sound decisions about certain personal affairs, including whether to take her psychoactive medications… Id.

25. Dr. Bloomingdale never had any interaction with Ms. Runge after April 29, 2003. Deposition of Dr. Bloomingdale, p. 102.

26. The total amount Dr. Bloomingdale received from Ms. Runge's Medicare and Medex coverage for his three visits with Ms. Runge was $396.44. Medicare and Medex Statements, dated 3/4/03, 4/1/03 and 4/29/03.

27. On April 30, 2003, Ms. Runge left Sunbridge, with her daughter and son-in-law, and proceeded to their home in North Carolina. Second Amended Complaint, pp. 13-14.

28. On May 2, 2003, Attorney Kelly filed a Petition in Norfolk Probate Court, asking that he be appointed guardian of Runge; the Petition included the Medical Certificate signed by Dr. Bloomingdale. Id, pp. 16-17.

29. The Norfolk Probate Court appointed Attorney Kelly as guardian of Ms. Runge. Id, p. 17.

30. The plaintiff alleges that Attorney Kelly misused his appointment to gain control over her financial estate, out of which he paid unwarranted fees to himself. Id, p. 17.

31. On May 7, 2003, Ms. Runge saw a physician in North Carolina; that physician reported that Ms. Runge was mentally intact and not in need of any anti-psychotic medication. Letter of Dr. Robert Palmer, dated July 25, 2003.

32. Ms. Runge was an inpatient in the psychiatric unit at St. Luke's Hospital, Columbus, N.C., from October 7-28, 2003. St. Luke's Hospital Discharge Summary.

33. Her daughter brought her to St. Luke's because she could not manage her at home. Id.

34. Her daughter reported that Ms. Runge "had become progressively more suspicious and paranoid, thinking people were stealing from her." Id.

35. Ms. Runge had become angry with her daughter, and was constantly yelling at her. Id.

36. The psychiatrist who assessed Ms. Runge October 9, 2003, commented on the anti-psychotic medications she had been administered in Massachusetts:

> …she was treated with Paxil and Zyprexa 2.5 mg with apparently some relief. She has not been on these medications recently, and that may be part of the problem. Psychiatric Assessment, dated 10/9/03, p.2

37. That psychiatrist decided: "… we will start the Zyprexa 2.5 mg back as that certainly seemed justifiable and effective." Id, p. 4

38. Ms. Runge was discharged from St. Luke's with a prescription for anti-psychotic medication. St. Luke's Hospital Discharge Summary.

39. Ms. Runge was continually on an anti-psychotic medication for the remaining three plus years of her life. Deposition of Dorothy Stanley, November 15, 2006 (Day 2), p. 25.

40. The Report of the plaintiff's psychiatry expert, Dr. Richard Dupee, includes the following:

> On 4/29/03, a temporary medical certificate for guardianship is signed by Dr. Bloomingdale. Dr. Bloomingdale documents that Ms. Runge "suffers from Alzheimer's dementia with paranoid delusions." As stated there is no evidence that Ms. Runge had Alzheimer's disease. This is an incorrect diagnosis…..
>
> I see no evidence that an adequate examination was carried out to determine her decision making capacity. Based upon her normal cognitive status, I would argue that there was no justification for guardianship on 4/29/03. Report of Richard Dupee, M.D., dated 5/16/07, p. 7.

4

41.     The Report of the expert psychiatrist, Dr. Elizabeth Gaufberg, on behalf of Dr. Bloomingdale includes the following:

>   Dr. Bloomingdale's pursuit of guardianship was entirely appropriate and in the best interest of Ms. Runge's health and safety…
>
>   The psychiatric care Ms. Runge received at Sunbridge for her symptoms of agitation and paranoia was part of a long history of such care. She had admissions to Jewish Memorial Hospital and Carney Hospital inpatient psychiatric units prior to her Sunbridge stay (both admissions involved the legal decision to admit the patient against her will in the interest of her own health and safety), and to St. Luke's Hospital in North Carolina subsequent to her Sunbridge stay… Diagnostic impressions were similar in all facilities and medication recommendations in all facilities were consistent with one another. <u>Report of Elizabeth Gaufberg, M.D.</u>, dated 8/3/07, p. 4.

                    Respectfully submitted,
                    Defendant, Kerry Bloomingdale, M.D.
                    By his attorney,

                    /s/ *James S. Hamrock, Jr.*
                    James S. Hamrock, Jr.
                    BBO # 219400
                    Hamrock & Tocci
                    101 Main Street
                    Cambridge, MA 02142
                    (617) 496-5370

**Certificate of Service**

    I, **James S. Hamrock, Jr.**, Attorney representing Defendant, ***Kerry Bloomingdale, M.D.***, hereby certify that I have this *18th* ***day of January, 2008*** filed the within *Statement Of Material Facts Pursuant To Local Rule 56.1 In Support Of Her Motion For Summary Judgment* through the ECF system, and certify that the within pleading will be served electronically upon the attorneys of record, as identified on the Notice of Electronic Filing (NEF).

                                                       /s/ *James S. Hamrock, Jr.*
                                                       James S. Hamrock, Jr.
                                                       BBO # 219400
                                                       Hamrock & Tocci
                                                       101 Main Street
                                                       Cambridge, MA  02142
                                                       (617) 496-5370