UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOROTHY STANLEY, AS EXECUTRIX OF  :
THE ESTATE OF HELEN A. RUNGE,      :
      Plaintiff                  :
                                :
                                :       No. 05-10849-RGS
      v.                    :       (Judge Stearns)
                                  :
WALTER J. KELLY, et al.,             :       CIVIL ACTION
      Defendants            :       JURY TRIAL DEMANDED

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT KELLY'S MOTION IN LIMINE
TO PRECLUDE TESTIMONY REGARDING KELLY'S ATTEMPTED
COMMUNICATIONS WITH ATTORNEY KERR

AND NOW, COMES, Plaintiff Dorothy Stanley ("Plaintiff"), as Executrix of the

Estate of Helen A. Runge ("Runge"), and respectfully submits this Memorandum in

Opposition to the Motion *in Limine* of Defendant Kelly ("Defendant Kelly") to Preclude

Testimony Regarding Kelly's Attempted Communications with Attorney Kerr

("Motion").

I.      BACKGROUND

Plaintiff maintains this action against the collective Defendants seeking to

recover for physical, emotional and financial injuries.  Defendant Kelly has filed the

instant Motion seeking to preclude testimony (presumably, Defendant Kelly's

testimony) regarding his contact with Attorney Peter Kerr.  Plaintiff respectfully

submits that this Honorable Court should deny Defendant Kelly's Motion as such

testimony is both relevant and holds probative value, which outweighs any alleged prejudice to Defendant Kelly.

## II.    ARGUMENT

Defendant Kelly has requested that this Honorable Court preclude testimony related to his contact with Attorney Peter Kerr subsequent to Plaintiff having filed her initial Complaint. Defendant Kelly seeks preclusion of this testimony as "not relevant to or probative of any of the claims in this matter" and on the basis that it "would only serve to prejudice Defendant Kelly and mislead the jury." On the contrary, Defendant Kelly's testimony regarding his contact with Attorney Kerr is highly relevant to Plaintiff's claims against Kelly and would assist the jury in understanding Defendant Kelly's relationship with Plaintiff in relation to Attorney Kerr. The testimony at issue is probative to Plaintiff's claims and contradictory to Defendant Kelly's alleged defenses. Thus, the probative value substantially outweighs any alleged prejudice to Defendant Kelly.

Plaintiff has averred that Runge utilized the services of Attorney Kerr, who retired from the practice of law in 1998. *See* Second Amended Complaint, No. 11. Kerr shared office space with Defendant Kelly, who represented himself to Runge to be the law partner of Attorney Kerr when the only relationship was that they shared office space. *See* Second Amended Complaint, No. 12. In 2001, Runge contacted Defendant Kelly, understanding that he had taken over Attorney Kerr's clients, to provide her with legal assistance. *See* Second Amended Complaint, No. 13.

Defendant Kelly testified, during deposition, that he contacted Attorney Kerr in 2006, well after Runge filed her initial Complaint against Defendant Kelly. *See* Exhibit B to Defendant Kelly's instant Memorandum in Support of Motion. Defendant Kelly testified he sought privileged information from Attorney Kerr's file that Attorney Kerr had as part of his attorney-client relationship with Runge because he, Defendant Kelly, was being sued. *Id.* Defendant Kelly acknowledged that this was not his file or work product and that he did not represent Plaintiff at the time of the request. Defendant Kelly was at a loss to justify his continuation of unethical behavior directed toward Plaintiff. Defendant Kelly also testified in his deposition many times about his duties under the Massachusetts Rules of Professional Conduct regarding his actions as an attorney in relation to Runge. Defendant Kelly has asserted that he was required to have himself appointed Plaintiff's guardian ex parte even after he was terminated by her as her counsel because of his ethical obligations. *See* pertinent portion of Defendant Kelly's deposition transcript attached as Exhibit A.

Defendant Kelly himself has made his ethics, or lack thereof, a part or all of his purported defense. He cannot now argue that evidence as to his credibility regarding the ethical nature of his actions is not relevant. Further, Attorney Kerr's relationship with both Defendant Kelly and Runge is at issue in Plaintiff's claims against Defendant Kelly's and Defendant Kelly's purported defenses to such claims. Thus, testimony regarding Defendant Kelly's contact with Attorney Kerr is relevant to this matter and should be allowed.

### III.    CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Honorable

Court deny Defendant Kelly's Motion.

Respectfully submitted,

LATSHA DAVIS YOHE & MCKENNA, P.C.

Dated:  February 11, 2008            By___/s/ Glenn R. Davis_____
                                     Glenn R. Davis, *Pro Hac Vice*
                                     1700 Bent Creek Boulevard, Suite 140
                                     Mechanicsburg, PA 17050
                                     (717) 620-2424
                                     gdavis@ldylaw.com

                                     Blake J. Godbout, BBO #196380
                                     BLAKE J. GODBOUT & ASSOCIATES
                                     33 Broad Street, 11th Floor
                                     Boston, MA 02109
                                     (617) 523-6677
                                     blake@bjgalaw.com

                                     Attorneys for Plaintiff, Dorothy Stanley,
                                     Executrix of The Estate of Helen A. Runge

121179                                       4

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served upon the

attorney of record for each party by electronic transmission.

> James S. Hamrock, Jr.
> Hamrock & Tocci
> 101 Main Street, 18th Floor
> Cambridge, MA 02142
> jhamrock@htclaw.com
>
> Michele Carlucci
> George S. Rockas
> Wilson Elser Moskowitz Edelman & Dicker LLP
> 155 Federal Street
> Boston, MA 02110
> michele.carlucci@wilsonelser.com
> george.rockas@wilsonelser.com
>
> Michael Williams
> Lawson & Weitzen, LLP
> 88 Black Falcon Avenue, Suite 145
> Boston, MA 02210-1736
> mwilliams@lawson-weitzen.com

Dated:  February 11, 2008                    /s/ Glenn R. Davis
                                             Glenn R. Davis

121179

# ORIGINAL

1

1                                    Volume:   I

2                                    Pages: 1-304

3            UNITED STATES DISTRICT COURT

4                 EASTERN DIVISION

5     - - - - - - - - - - - - - - - - - x

6     HELEN RUNGE,                    Civil Action

7            Plaintiff,          No. 05-10849-RGS

8     WALTER J. KELLY,
      KERRY L. BLOOMINGDALE, M.D, and
9     SUNBRIDGE NURSING AND
      REHABILITATION CENTER,

10
             Defendants.

11    - - - - - - - - - - - - - - - - - x

12

13

14          DEPOSITION OF WALTER J. KELLY

15     Friday, December 1, 2006, 9:26 a.m.

16        Blake J. Godbout & Associates

17        33 Broad Street - 11th Floor

18        Boston, Massachusetts 02109

19

20     ----- **Reporter:  Toni F. Beckwith, RMR** -----

21

22    Toni F. Beckwith, Registered Merit Reporter
                   50 Winsor Avenue
23        Watertown, Massachusetts 02472
                 Tel: 617.924.2731
24               Fax: 617.924.9899

274

1      A.   The police already knew about it.   So

2   if it was a question of notifying the police,

3   the police already knew about it because they

4   were there at the Sunbridge Nursing Home.

5               MR. ROCKAS:   I'm going to try to make

6   my call.

7               (Pause)

8               (Exhibit 19 marked

9               for identification)

10      Q.   Mr. Kelly, a document has been placed

11   in front of you marked Kelly 19 dated May 12,

12   2003, a letter authored by a Robert M. Palmer,

13   M.D.   Have you seen that letter prior to today?

14      A.   Yes.

15      Q.   Do you recall when you first saw that

16   letter?

17      A.   Around the end of July of '03.

18      Q.   What did you understand from that

19   letter?

20      A.   I understood that Helen was in --

21   Helen was with her daughter in Columbus.   I

22   understood that I was never going to get an

23   independent evaluation of Helen.   I understood

24   that my ethical duties under the professional

275

1    conduct rules could not be fulfilled any

2    further, and I had taken all reasonable steps to

3    do what I needed to for Helen.  And I knew I

4    wasn't going to be successful to get an

5    independent evaluation of her.

6         Q.  And why were you required to get an

7    independent evaluation of her, Mr. Kelly?

8         A.  Based upon the abduction, I couldn't

9    trust the Stanleys were looking out for her best

10   interest.

11        Q.  And you made that determination when,

12   that you couldn't get an independent evaluation?

13        A.  In my discussions with Tom Schiavoni.

14        Q.  And when were those discussions taking

15   place?

16        A.  At the end of July.

17        Q.  And that's of 2003?

18        A.  That's correct.

19        Q.  And did you understand that this

20   letter from Dr. Palmer wasn't an independent

21   evaluation?

22        A.  I don't know who Dr. Palmer is.  I

23   know nothing about Tryon Medical Group.  I don't

24   know that it's an independent -- it's not a

276

1    friend of Dorothy Stanley's through the hospital

2    that she works at in order to assist her in

3    having me stop going forward any further.

4         Q.   Did you ever contact Dr. Palmer to

5    explore any questions or concerns you had with

6    regard to his May 12, 2003 letter?

7         A.   No.

8         Q.   You indicated that you couldn't

9    fulfill your ethical duty.  What ethical duty

10   are you referring to?

11        A.   It was rules of professional conduct,

12   1.14.

13        Q.   And interpret that to this

14   information.

15        A.   If you have an elderly client that you

16   are in fear that they're being abused mentally,

17   physically or financially, you have a duty to

18   continue to represent them.

19        Q.   And just so I'm clear, Attorney Kelly,

20   in your opinion, your ethical obligation under

21   1.14, did that arise from the court appointing

22   you as a guardian?

23        A.   No.

24        Q.   It arose as a result of the

277

1    attorney-client relationship that you had with

2    Helen Runge?

3            A.   That's correct.

4            Q.   And that's the same relationship that

5    she, in essence, terminated you from on April

6    29?

7          . A.   At a time when there was a medical

8    certificate saying that she wasn't competent to

9    make decisions for herself.

10           Q.   Okay.  When I was asking you about the

11   police reports that were attached to Kelly 18, I

12   think I asked you if you had filed that police

13   report, and you indicated no.

14           A.   Filed what police report?

15           Q.   There appears to be some type of a

16   narrative on the back of --

17           A.   I believe that came from the nursing

18   home, but I'm not sure.

19           Q.   It says, Notified State Police,

20   notified staff, attempted.  So apparently the

21   State Police were notified?

22           A.   Yes.

23           Q.   And am I correct in understanding your

24   testimony that you didn't notify the police?

1

# ORIGINAL

Volume: II

Pages: 1-104

UNITED STATES DISTRICT COURT

EASTERN DIVISION

- - - - - - - - - - - - - - - - - - - - x

HELEN RUNGE,                  Civil Action

        Plaintiff,        No. 05-10849-RGS

WALTER J. KELLY,
KERRY L. BLOOMINGDALE, M.D., and
SUNBRIDGE NURSING AND
REHABILITATION CENTER,

        Defendants.

- - - - - - - - - - - - - - - - - - x

CONTINUED DEPOSITION OF WALTER J. KELLY

Thursday, December 14, 2006, 1:13 p.m.

Blake J. Godbout & Associates

33 Broad Street - 11th Floor

Boston, Massachusetts 02109


----- **Reporter:  Toni F. Beckwith, RMR** -----


Toni F. Beckwith, Registered Merit Reporter
50 Winsor Avenue
Watertown, Massachusetts 02472
Tel: 617.924.2731
Fax: 617.924.9899

62

1       Q.  Did you contact anyone with regard to

2   their attempt to become the representatives of

3   Helen Runge?

4           MR. ROCKAS:  Objection.

5       A.  I contacted her bank accounts, banks.

6       Q.  Banks?

7       A.  Yes.

8       Q.  When did you contact them?

9       A.  The 30th.  I think the 30th or the

10  1st.  I'm not sure.

11      Q.  Why did you contact the banks?

12      A.  Well, again, Rules of Professional

13  Conduct 1.4 says if you feel that you have a

14  client who's being taken advantage of mentally,

15  physically, psychologically, an elderly client

16  like Helen, or financially, you have a duty to

17  continue to represent them, to protect them.

18      Q.  So you contacted the banks on either

19  the 30th or the 1st?

20      A.  I don't remember the exact date.

21      Q.  Did you go out and see Helen on the

22  29th, 30th or 1st?

23          MR. ROCKAS:  Objection.

24      A.  I did not go to see Helen on the 29th,

70

1    Bank you indicated?

2         A.   That's correct.

3         Q.   Was that in a client fund of yours?

4         A.   That's correct.

5         Q.   What did you do with the 25,000 bucks?

6         A.   Well, I believe I paid Tom

7    Schiavoni -- well, if you look on my accounting

8    filed with the court, you can see where I spent

9    it.

10        Q.   You paid Tom Schiavoni for what?

11        A.   For representing me regarding the

12   guardianship.

13        Q.   To get yourself appointed?

14        A.   That's correct.

15        Q.   You paid Tom Schiavoni out of Helen

16   Runge's funds?

17        A.   That's correct.

18        Q.   You didn't pay him out of your own

19   funds?

20        A.   No.

21        Q.   Did Helen Runge consent to

22   Mr. Schiavoni representing you on her behalf?

23        A.   Again, I'm saying that it's under

24   Professional Conduct Rules 1.14.

71

1              MR. ROCKAS:  Just answer the question.

2        A.  No.

3        Q.  Did Tom Schiavoni send an engagement

4   letter to Helen Runge?

5        A.  No.

6        Q.  Was Helen Runge ever made aware that

7   Tom Schiavoni was providing legal services for

8   which she was about to be billed?

9        A.  No, not that I know of.

10       Q.  The fees for which Tom Schiavoni was

11  paid was for the preparation of a petition for

12  your appointment?

13       A.  And going over all the facts and the

14  information on Helen with me, going over

15  affidavits and the various.

16       Q.  Was Tom Schiavoni ever engaged to

17  represent Helen specifically during this

18  proceeding?

19       A.  No.

20       Q.  Other than Tom Schiavoni's fees being

21  paid, where did the remainder of the 25,000

22  bucks go on May 20, 2003?

23       A.  Well, that's the deposit.  You have a

24  copy of the accounting, and it tells you where