UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EASTERN DIVISION

No. 05-10849RGS

DOROTHY STANLEY, EXECUTRIX OF THE
ESTATE OF HELEN A. RUNGE,
                      Plaintiff

v.

WALTER J. KELLY,
KERRY L. BLOOMINGDALE, M.D., and
SUNBRIDGE NURSING AND
REHABILITATION CENTER,
                      Defendants

## **DEFENDANT WALTER KELLY'S TRIAL MEMORANDUM**

      NOW COMES the Defendant, Walter J. Kelly, and submits this Trial Memorandum. Defendant foresees disputes arising at trial concerning the following issues of law:

1.    <u>M.G.L. c. 93A – Double and Treble Damages Do Not Survive the Death of the Plaintiff</u>

      Defendant asserts that the M.G.L. c. 93A claim should be decided by the Judge, not the jury. Furthermore, Defendant reserves the right to submit proposed findings of fact. Moreover, Defendant asserts that Plaintiff is not entitled to recover double or treble damages under M.G.L. c. 93A, because they do not survive the death of the Plaintiff. "[S]ince multiple damages are intended to vindicate a plaintiff's rights, such a claim for punitive damages does not survive the decedent's death." <u>Lyon v. Triram Corp.</u>, 18 Mass. L. Rep. 419 (Mass. Super. Ct. 2004)(holding that "plaintiffs' claim under G.L.c. 93A, § 11, against the defendants survives the decedent's death insofar as [it] seeks compensatory damages for loss of money or property, real or personal, as well as for attorneys fees. Insofar as [it] seeks double or treble damages or damages not

109231.1

related to loss of money or property, that claim does not survive the decedent's death and must be dismissed.")

2.  Law Related to a Health Care Proxy

If Defendant Kelly was acting pursuant to a valid health care proxy for Helen Runge and made health care decisions in good faith on her behalf, then Defendant Kelly cannot be liable for such acts or decisions. M.G.L. c. 201D § 8. Under the law, a health care agent acting pursuant to a health care proxy may consent on behalf of an incompetent patient to the administration of antipsychotic medication without the need for the court to appoint a guardian. See M.G. L. c. 201D §§ 5 and 6. See also Opinion Letter of the Office of the Attorney General, July 24, 1997, attached as Exhibit A.

If a patient refuses or objects to the administration of anti-psychotic medication, court-ordered substituted judgment is required. This is achieved by the appointment of a guardian after a hearing. See M.G. L. c. 201D §§ 5 and 6  See also Opinion Letter of the Office of the Attorney General, July 24, 1997, Exhibit A; Rogers v. Commissioner of the Department of Mental Health, 390 Mass. 489, 458 N.E.2d 308 (1983). Therefore, in order to find that Helen Runge was improperly administered antipsychotic medications under the law, it must be found that she was administered the drugs despite her refusal and prior to the appointment of Kelly as her Guardian. Therefore, Defendant anticipates seeking a motion for a judgment as a matter of law on these issues. In the alternative, Defendant seeks jury instructions on these issues.

3.  Plaintiff's Expert Witness, Attorney Arnold Rosenfeld

Defendant will challenge Attorney Rosenfeld's competency and seek to preclude his testimony on that basis. Attorney Rosenfeld is not qualified to opine on the standard of care of the average qualified elder law attorney. He is Of Counsel at the law firm of Kirkpatrick &

109231.1

Lockhart Preston Gates Ellis LLP, where his practice includes civil and criminal litigation, representing lawyers and law firms on professional responsibility matters, including acting as an expert witness in legal malpractice cases. Prior to joining Kirkpatrick & Lockhart, he was Chief Bar Counsel of the Board of Bar Oversees. He has teaching experience in Professional Responsibility.  Attorney Rosenfeld has no experience with elder law, and has likely never dealt with a guardianship petition or health care proxy issues, and therefore is not qualified to testify on the applicable standard of care.

5.     Motions *in Limine*

    A.     Defendant has filed the following Motions *in Limine* which have been denied without prejudice as premature and are to be dealt with at trial:

    1.     Motion *in Limine* to Preclude the Testimony of Arnold Rosenfeld, Esq. and to Dismiss For Lack of Expert Testimony;

    2.     Motion in *Limine* to Preclude Testimony Regarding Kelly's Attempted Contact with Attorney Kerr;

    3.      Motion *in Limine* to Preclude Evidence of the Settlement of the Probate Matter;.

    B.     The following motions are pending:

    1.     Motion *in Limine* to Exclude the Out of Court Statements of Helen Runge.

    2.     Motion *in Limine* of All Defendants to Preclude Dorothy and Gilbert Stanley From Testifying Regarding Events Prior to April 29, 2003;

    3.     Motion *in Limine* to Exclude Statements in the Nature of Expert Opinion From Individuals Not Properly Disclosed as Expert Witnesses

109231.1

Respectfully submitted,

The Defendant, Walter J. Kelly,

By his attorneys,


     *s/ Michele Carlucci*
George C. Rockas, BBO #544009
Michele Carlucci, BBO #655211
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER  LLP
260 Franklin Street
Boston, MA 02110
(617) 422-5300


## CERTIFICATE OF SERVICE

I, Michele Carlucci, certify that on June 16, 2008 I have served a copy of the foregoing by electronic filing.

     */s/ Michele Carlucci*
     Michele Carlucci

109231.1



*The Commonwealth of Massachusetts*
*Office of the Attorney General*
*One Ashburton Place*
*Boston, MA 02108-1698*

L. HARSHBARGER
ATTORNEY GENERAL
(617) 727-2200

July 24, 1997

Alex L. Moschella, Esq.
Metro Elder and Disability Law Associates
6 Liberty Avenue, Powder House Square
Somerville, MA 02144

Dear Attorney Moschella:

This letter is in response to the question raised at the National Academy of Elder Law Attorneys Massachusetts Chapter program in April regarding whether, under <u>Rogers v. Commissioner of the Department of Mental Health</u>, the caretaker of an incompetent patient is required to obtain a court order prior to administering prescribed antipsychotic medication, even if: (1) the incompetent patient had previously appointed an authorized health care agent pursuant to G. L. c. 201D [The Health Care Proxy Act]; (2) the agent has consented to the medication on the patient's behalf; and (3) the patient has not objected to or refused the medication. It is our understanding that there has been some confusion among the elder law practitioners as to how to interpret the Attorney General's long term care facility regulations, 940 CMR 4.08 (18) and (19), when this issue arises. While this letter does not serve as a formal published opinion of the Attorney General, which may only be issued pursuant to specific statutory authority not applicable here, in the interest of addressing a matter of significant concern to elders and long term health care providers, we offer the following informal clarification.

In <u>Rogers</u>, the Supreme Judicial Court held that before antipsychotic drugs could be administered to an incompetent patient, counsel and a guardian must be appointed for the patient and the court must then determine what the incompetent patient's desires would have been, had he or she been competent to consent on his or her own behalf. If the court determines the patient would have consented to the medication, the court is required to establish a treatment plan and a treatment-monitoring mechanism as well. The underlying purpose of a <u>Rogers</u> hearing is to protect incompetent patients

Alex Muschella
Page Two
July 24, 1997

from forcible treatment in circumstances where the patient would refuse the treatment were he or she competent to do so.

As you know, the Legislature enacted the Health Care Proxy Act seven years after the Rogers decision as a way of providing individuals with the means for maintaining control over medical decision-making in the event that they should become incapacitated. In cases involving a validly executed health care proxy, the person selects a substitute decision maker who is thereby legally authorized to represent the principal's own health care decision-making rights. The statute lays out specific requirements that must be fulfilled before a health care agent can exercise his or her authority on behalf of the patient. Specifically, the law requires that the health care agent must consult with all of the principal's health care providers and must fully consider all acceptable medical alternatives regarding the principal's diagnosis, treatment and side effects. M.G.L. c. 201D, § 5. The law also requires that the agent consider the principal's wishes, if known – including the principal's religious and moral beliefs – or, if the principal's wishes are unknown, in accordance with the agent's assessment of the principal's best interests. Id. Under the law, every person has the right to exercise informed consent and appoint a health care agent by executing a valid health care proxy while he or she is competent. Moreover, a principal may revoke a health care proxy at any time by any act evidencing a specific intent to revoke the proxy.

We believe Chapter 201D, in all significant respects, establishes standards that are consistent with the Rogers requirements for both informed consent by the patient and for substitution of judgment by the health care agent. As set forth in Rogers, the factors to be considered by a judge in determining whether a judicial "substituted judgment" decision is required include: (1) the patient's expressed preferences regarding treatment; (2) the strength of the patient's religious convictions; (3) the impact of the decision on the patient's family; (4) the probability of adverse side effects; (5) the patient's prognosis without treatment; (6) the patient's prognosis with treatment; and (7) any other factors which appear relevant to the determination. 390 Mass. at 505-506. These factors coincide with the requirements that a health care proxy agent must consider in making health care decisions for a principal pursuant to the Health Care

Alex Moschella
Page Three
July 24, 1997

Proxy Act. M.G.L. c. 201D, §§ 5 and 6. Because a decision made by an authorized health care agent provides the patient with the same type of protection a *Rogers* hearing is designed to provide, we conclude that an authorized health care agent may consent on behalf of an incompetent patient to the administration of antipsychotic medication without a Rogers hearing.

We note that, in the Attorney General's view, a consent to antipsychotic drugs on behalf of an incompetent patient made by an authorized health care agent will only eliminate the need for a *Rogers* hearing if the patient does not in any way indicate a contrary decision. When a patient refuses or objects to the administration of antipsychotic medications, we believe that a court-ordered substituted judgment is required, whether or not the patient has a valid health care proxy. M.G.L. c. 201D, § 7, permits the principal to revoke his or her proxy "by notifying the agent or a health care provider orally or in writing or by any other act evidencing a specific intent to revoke the proxy." Refusal to accept medication may be deemed a revocation of the proxy and would, therefore, void any consent previously given by the agent. Moreover, an incompetent patient *without* a health care proxy always requires a *Rogers* hearing, regardless of whether the patient will accept the proffered medication, because he or she is incapable of giving consent and has not previously designated a proxy to do so on his or her behalf.

I hope that this letter offers some assistance in your work. The intent of the Attorney General's long term care regulations is to protect patients covered by *Rogers*. However, we see no benefit to patients in interpreting the regulations in a way that both effectively deprives an incompetent patient of his or her right to have an authorized health agent chosen by the patient make decisions on the patient's behalf and imposes delay and expense on an incompetent patient without adding any protection to the patient's interests.

In light of this letter, the Attorney General would be very interested in working further with the private bar to (1) encourage the use of health care proxies, especially prior to nursing home admissions; (2) educate the general public about the specific

Alex Moschella
Page Four
ly 24, 1997

issues raised by <u>Rogers</u> and the use of antipsychotic drugs; and (3) ensure compliance with the long term care facility regulations. Please do not hesitate to contact me at the number below if you wish to discuss this matter further. Thank you.

Sincerely,

Barbara Anthony
Assistant Attorney General
Chief, Public Protection Bureau

cc: Kenneth A. Behar, Esq., Behar & Kalman
Robert D. Fleischner, Esq., Center for Public Representation
John J. Ford, Esq., Neighborhood Legal Services
Wynn Gerhard, Esq., Greater Boston Legal Services
Stanley Goldman, Esq., Committee for Public Counsel Services
Alan S. Goldberg, Esq., Goulston & Storrs
Mary McKenna, Executive Office of Elder Affairs
Gwen O'Sullivan, Esq., Department of Public Health
Scott Plumb, Massachusetts Extended Care Federation
Deborah Thomson, Alzheimer's Association