UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOROTHY STANLEY, as Executrix of the
ESTATE of HELEN RUNGE,

     *Plaintiff,*

*v.*

WALTER J. KELLEY; KERRY L.
BLOOMINGDALE, M.D.; and
SUNBRIDGE NURSING AND
REHABILITATION CENTER,

     *Defendants.*

Civil Action No. 05-10849-RGS

---

## PROPOSED JURY INSTRUCTIONS OF DEFENDANT SUNBRIDGE

Pursuant to this Courts Orders of October 12, 2007 (Docket entry # 112) and May 13, 2008 and pursuant to Rule 51 of the Federal Rules of Civil Procedure, Defendant Mediplex of Massachusetts, Inc. d/b/a SunBridge Care and Rehabilitation for Randolph, requests that the Court instruct the jury as follows at the conclusion of evidence and arguments.

Respectfully submitted,

**Mediplex of Massachusetts, Inc. d/b/a
SunBridge Care and Rehabilitation for
Randolph**

by its attorneys,

    /s/ Michael Williams
K. Scott Griggs    (BBO# 555988)
Michael Williams (BBO# 634062)
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210-1736
Telephone: (617) 439-4990
Facsimile: (617) 439-3987
MWilliams@Lawson-Weitzen.com

**CERTIFICATE OF SERVICE**

I hereby certify that this Document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 16, 2008.

    /s/ Michael Williams

## NEGLIGENCE

The Plaintiff in a products liability action must show that the defect, which caused the injury, is attributable to the defendant's negligence.[1]

Negligence generally is the failure to exercise that degree of care, which a reasonable person would exercise in the circumstances.[2] Negligence in its ordinary sense is the failure of a responsible person, either by omission or by action, to exercise that degree of care, vigilance and forethought which, in the discharge of the duty then resting on them, a person of ordinary caution and prudence ought to exercise under the particular circumstances.[3] In this case, you are asked to consider whether SunBridge Care and Rehabilitation exercised that degree of care, which an ordinary, reasonably prudent operator of a Nursing Home[4] would have exercised in like circumstances.[5]

---

[1] *Coyne v. John S. Tilley Co.*, 368 Mass. 230, 234, 331 N.E.2d 541 (1975); *Carney v. Bereault*, 348 Mass. 502, 506, 204 N.E.2d 448 (1965).

[2] Hon. Patrick F. Brady, MA SUPERIOR COURT CIVIL JURY INSTRUCTIONS, §11.2, citing, *Morgan v. Lalumiere*, 22 Mass.App.Ct. 262, 267, 493 N.E.2d 206, 210, *further app. rev. denied*, 398 Mass. 1103, 497 N.E.2d 1096 (1986) ("Without at least some minimal reference to the reasonable person standard and to the attendant circumstances, however, an instruction does not adequately convey the meaning of negligence." (citations omitted)).

[3] Hon. Patrick F. Brady, MA SUPERIOR COURT CIVIL JURY INSTRUCTIONS, §11.2, citing *Beaver v. Costin*, 352 Mass. 624, 626, 227 N.E.2d 344, 345–46 (1967) (citing *Altman v. Aronson*, 231 Mass. 588, 591, 121 N.E.2d 505, 506 (1919)).

[4] Hon. Patrick F. Brady, MA SUPERIOR COURT CIVIL JURY INSTRUCTIONS, §11.2, citing Products liability for negligence may extend to dealers, sellers, lessors, suppliers, repairers and others. *See, e.g., Fernandes v. Union Bookbinding Co., Inc.*, 400 Mass. 27, 507 N.E.2d 728 (1987) (supplier's liability); Restatement (Third) of Torts: Products Liability §§ 1, 20 (1998); *Kyte v. Philip Morris, Inc.*, 408 Mass. 162, 556 N.E.2d 1025 (1990) (supplier may be liable for knowingly placing property into hands of incompetent person); *Mello v. K-Mart Corp.*, 604 F.Supp. 769 (D.Mass. 1985) *aff'd*, 792 F.2d 1228 (1st Cir. 1986); Restatement (Third) of Torts: Products Liability § 20(b) (1998).

[5] Hon. Patrick F. Brady, MA SUPERIOR COURT CIVIL JURY INSTRUCTIONS, §11.2, citing *Back v. Wickes Corp.*, 375 Mass. 633, 643, 378 N.E.2d 964, 971 (1978).

**PROOF OF NEGLIGENCE**

The mere happening of an accident is not proof of negligence.[1] Where the cause of injury is purely a matter of speculation, you should find for defendant SunBridge.[2]

---

[1] Hon. Patrick F. Brady, MA SUPERIOR COURT CIVIL JURY INSTRUCTIONS, §2.1.2, *citing, Rizzittelli v. Vestine,* 246 Mass. 391, 392 (1923).

[2] Arlington Realty Corp. v. Bradley, 37 Mass. App. Dec. 36, 38 (1967).

**NEGLIGENCE—ELEMENTS**

In order to recover for negligence against SunBridge Care and Rehabilitation, Ms. Stanley must prove by a preponderance of the evidence four essential elements:

1.    That SunBridge Care and Rehabilitation owed a duty to Helen Runge;

2.    That SunBridge Care and Rehabilitation breached that duty;

3.    That Ms. Runge suffered an injury or damage; and

4.    That SunBridge's breach of its duty was a cause of Ms. Runge's injury or damage.[1]

---

[1] Hon. Patrick F. Brady, MA SUPERIOR COURT CIVIL JURY INSTRUCTIONS, §11.2.1, citing *Scott v. Thompson*, 5 Mass.App.Ct. 372, 374, 363 N.E.2d 295, 296 (1977); *Beaver v. Costin*, 352 Mass. 624, 626, 227 N.E.2d 344 (1967). Where economic loss is the only damage claimed, recovery is not allowed under a theory of negligence. *See Bay State-Spray & Provincetown Steamship, Inc. v. Caterpillar Tractor Co.*, 404 Mass. 103, 107, 533 N.E.2d 1350, 1353 (1989); *see also Marcil v. John Deere Indus. Equip. Co.*, 9 Mass.App.Ct. 625, 629–31, 403 N.E.2d 430, 433–35 (1980).

**BURDEN OF PROOF**

In a civil action such as this, the plaintiff bears the burden of proving every essential element of her claim by a fair preponderance of the credible evidence.

Whether the plaintiff has established the essential elements of her case by a fair preponderance of the credible evidence is determined by the quality of the evidence: its credibility, believability, trustworthiness and accuracy. To prove something by a preponderance of the evidence, the plaintiff must prove that thing to be more likely or more probably true than not true.[1]

Simply stated, if the evidence should fail to establish any one of the aforementioned elements of Ms. Stanley's negligence claim, then you must find for SunBridge Care and Rehabilitation

---

[1] Hon. Patrick F. Brady, MA SUPERIOR COURT CIVIL JURY INSTRUCTIONS, §1.19, citing, Sa*rgent v. Massachusetts Accident Co.,* 307 Mass. 246, 250, 29 N.E.2d 825, 827 (1940). *See also Lisbon v. Contributory Ret. App.Bd.*, 41 Mass.App.Ct. 246, 670 N.E.2d 392 (1996).

**BREACH**

Since there is a duty to exercise reasonable care, the plaintiff must prove by a preponderance of the evidence that the defendant failed to exercise the required amount of care.[1]

---

[1] Hon. Patrick F. Brady, MA Superior Court Civil Jury Instructions, §11.2.6, citing, *Brown v. Kendall*, 60 Mass. (6 Cush.) 292 (1850), *Perry v. Medeiros*, 369 Mass. 836, 343 N.E.2d 859 (1976).

## CAUSATION

If you decide that SunBridge Care and Rehabilitation was negligent, you must then consider whether defendant's negligent conduct caused[1] Ms. Runge's injuries. Even if you find that SunBridge Care and Rehabilitation was negligent, SunBridge Healthcare Corp is not liable to Ms. Stanley unless its negligence caused Ms. Runge's harm.[2] To meet her burden, Ms. Stanley need only show that there was greater likelihood or probability that the harm complained of was due to causes for which SunBridge Care and Rehabilitation was responsible than from any other cause.[3]

SunBridge Care and Rehabilitation's conduct was the legal cause of Ms. Runge's injury if it was a substantial factor in bringing it about (and without which the harm would not have occurred. In other words, if the harm would have occurred anyway, SunBridge Care and Rehabilitation is not liable).[4]

It does not matter whether other concurrent causes contributed to Ms. Runge's injuries, so long as you find that SunBridge Care and Rehabilitation's conduct was a substantial factor.[5] "Substantial" is used here in its ordinary sense, which requires no further elaboration.

---

[1] Hon. Patrick F. Brady, MA SUPERIOR COURT CIVIL JURY INSTRUCTIONS, §11.2.9, citing, *Simmons v. Monarch Mach. Tool Co.*, 413 Mass. 205, 212, 596 N.E.2d 318, 322–23 (1992) (liability attaches where defect enhances the injuries a person sustains in an otherwise foreseeable accident).

[2] Hon. Patrick F. Brady, MA SUPERIOR COURT CIVIL JURY INSTRUCTIONS, §11.2.9, citing, Restatement (Second) of Torts § 430 (1965).

[3] Hon. Patrick F. Brady, MA SUPERIOR COURT CIVIL JURY INSTRUCTIONS, §11.2.9, citing, *Mullins v. Pine Manor Coll.*, 389 Mass. 47, 58, 449 N.E.2d 331, 338–39 (1983) (citing *McLaughlin v. Bernstein*, 356 Mass. 219, 226, 249 N.E.2d 17, 22 (1969)).

[4] Hon. Patrick F. Brady, MA SUPERIOR COURT CIVIL JURY INSTRUCTIONS, §11.2.9, citing, The bracketed portions are applicable only in cases of "but for" causation. "But for" causation does not apply in cases of concurrent causes, each of which is sufficient to bring about a harm to the plaintiff. Restatement (Second) of Torts § 432 (1965). For example, two fires merge and the combined fire destroys the plaintiff's property, although either fire would have done so alone. In concurrent cause cases, regardless of whether the concurring acts of others were negligent, the "substantial factor" test must be used.

[5] Hon. Patrick F. Brady, MA SUPERIOR COURT CIVIL JURY INSTRUCTIONS, §11.2.9, citing, *O'Connor v. Raymark Indus., Inc.*, 401 Mass. 586, 591, 518 N.E.2d 510, 512–13 (1988); *Welch v. Keene Corp.*, 31 Mass.App.Ct. 157, 162, 575 N.E.2d 766, 769 (1991) (The plaintiff "is not required to prove that 'but for' the particular product of each manufacturer, he would not have been harmed; rather, he need only show 'that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the harm.'" (citations omitted)).

## SUBSTANTIAL FACTOR—ELABORATION

Ms. Stanley also has the burden of proving by the preponderance of the evidence that SunBridge Care and Rehabilitation's negligence substantially contributed to causing Ms. Runge's injury. Ms. Stanley does not have to prove that SunBridge Care and Rehabilitation's negligence was the only or predominant cause of the injury. There may be more than one cause of an injury. If two or more causes operating together contributed to Ms. Runge's injury so that, in effect, the damages suffered were inseparable, then it is enough for the Ms. Stanley to prove that SunBridge Care and Rehabilitation's negligence was a substantial contributing factor in causing the injury.

By "substantial," I mean that SunBridge Care and Rehabilitation's contribution to the harmful result, i.e., SunBridge Care and Rehabilitation's negligence, was not an insignificant factor.  SunBridge Care and Rehabilitation's negligence must contribute significantly to the result; it must be a material and important ingredient in causing the harm. If the SunBridge Care and Rehabilitation's negligence was a substantial factor, then it is considered a legal cause of Ms. Runge's injury, and Ms. Stanley is entitled to recover. If it was not a substantial factor, if the negligence was only slight, insignificant or tangential to causing the harm, then even though you may have found SunBridge Care and Rehabilitation negligent, it cannot be held liable to pay damages to Ms. Stanley on this claim.[1]

---

[1] Hon. Patrick F. Brady, MA SUPERIOR COURT CIVIL JURY INSTRUCTIONS, §11.2.9, citing, *See O'Connor v. Raymark Indus., Inc*., 401 Mass. 586, 591–92, 518 N.E.2d 510, 512–13 (1988) (asbestos case).

**EXPERT TESTIMONY**

Expert testimony is appropriate where the subject matter at issue is beyond the knowledge of the ordinary juror.[1] The precise nature of the alleged failure of SunBridge Care and Rehabilitation to comply with the standard of care for a licensed skilled nursing facility must be established by expert testimony.[2]

---

[1] Jackson v. Anthony, 282 Mass. 540, 544, 185 N.E. 389, 390-91 (1933).

[2] *See Goffredo v. Mercedes-Benz Truck Co.*, 402 Mass. 97, 520 N.E.2d 1315 (1988).

## DAMAGES

The fourth element Ms. Stanley must prove is damages. You will only reach the issue of damages if you find that the defendant was negligent and that the defendant's negligence caused injury to Ms. Runge.

As with all the other elements, the plaintiff bears the burden of proving her damages by a fair preponderance of the evidence.[1]

The purpose of the law in awarding damages is to compensate an injured person for the losses incurred because of another person's negligent conduct.[2]

The object is to try to restore the person to the position she would have been in had the wrong not occurred. The purpose is not to reward the plaintiff and not to punish the defendants. Damages are to be awarded to the plaintiff as a fair and reasonable compensation for the legal wrong done to her by the defendants.

You must put aside your personal feelings during your deliberations and decide this case as the evidence and law dictate.[3]

There is no special formula under the law to assess damage. It is your obligation to assess what is fair, adequate, and just. You must use your wisdom and judgment and your sense of basic justice to translate into dollars the amount which will fairly and reasonably compensate Ms. Stanley for injuries to Ms. Runge. You must be guided by your common sense and your conscience.

In determining the amount of damages which the plaintiff is entitled to recover, there are certain areas which you should take into consideration.

---

1 W. P. Keeton, *Prosser and Keeton on Torts* § 54, at 359–67 (5th ed. 1984).

2 *Sullivan v. Old Colony St. Ry.*, 200 Mass. 303, 308, 86 N.E. 511, 511 (1908).

3 *Roy v. Volkswagen of Am., Inc*., 896 F.2d 1174 (9th Cir. 1990); *see also Edwards v. Sears, Roebuck & Co.,* 512 F.2d 276 (5th Cir. 1975).

## ASSAULT AND BATTERY

An assault is an intentional threat or attempt, accompanied by overt acts, to inflict present harm upon the person of another by violence, as a result of which the other is put in fear of bodily harm.[1] The tort of assault, unlike the crime of assault, requires proof that the victim was put in fear of apprehension.[2] A battery is the intentional, offensive, unprivileged touching of the person of another. To constitute a battery it is not necessary that actual blows be struck, or that the touching of the person be in anger.[3] A principal may be liable for a battery committed to a third person by the principal's agent if the battery is committed by the agent in the course of carrying on the principal's business, and for the purpose of accomplishing it.[4]  To determine whether an intentional tort or an employee occurred within the scope of employment, it must be shown that the employee's assault was in response to the plaintiff's conduct which was presently interfering with the employee's ability to perform his or her duties successfully.[5]

---

1 See Belger v. Arnot, 344 Mass. 679, 183 N.E.2d 866 (1962); Ross v. Michael, 246 Mass. 126, 130, 140 N.E. 292 (1923). See Com. v. Slaney, 345 Mass. 135, 185 N.E.2d 919 (1962).

2 Com. v Slaney, supra.

3 Grenier v. O'Gara, 219 Mass. 15, 17, 106 N.E. 563 (1914).

4 Rego v. Thomas Bros. Corp., 340 Mass. 334, 164 N.E.2d 144 (1960). See Fanciullo v. B.G. & S. Theatre Corp., 297 Mass. 44, 8 N.E.2d 174 (1937); Levi v. Brooks, 121 Mass. 501, 1877 WL 10052 (1877); Hobart v. Cavanaugh, 353 Mass. 51, 228 N.E.2d 439 (1967) (trucker liable for battery upon evidence that his driver assaulted garage operator because truck was not ready for use); Suckney v. Bert P. Williams, Inc., 355 Mass. 62, 242 N.E.2d 416 (1968) (principal liable upon evidence that employee committed assault on plaintiff outside place where delivery of merchandise was being attempted during course of labor dispute).

5 Com. v. Jerez, 390 Mass. 456, 457 N.E.2d 1105 (1983).

## FALSE IMPRISONMENT

False imprisonment is the intentional and unlawful confinement of a person, directly or indirectly, of which the person confined is conscious or by which the person is harmed.[1]

The tort of false imprisonment is a species of trespass to the person of another. It consists of the (1) intentional and (2) unjustified (3) confinement of a person, (4) directly or indirectly (5) which the person confined is conscious or is harmed by such confinement.[2]

---

1 *Noel v. Town of Plymouth,* 895 F.Supp. 346, 354 (D.Mass. 1995); *see Sarvis v. Boston Safe Deposit and Trust*, 47 Mass.App.Ct. 86, 97-98, 711 N.E.2d 911, 919, *further app. rev. denied*, 430 Mass. 1106, 717 N.E.2d 1015 (1999).

2 Wood v. Cummings, 197 Mass. 80, 85, 83 N.E. 318, 319 (1908).

## FALSE IMPRISONMENT – INTENT

False imprisonment is an intentional tort and, hence, the defendant is liable only if he intentionally imposes a restraint on Ms. Runge. The SunBridge Care and Rehabilitation must intend to imprison or to impose a general restraint on Ms. Runge.[1] A mere negligent imprisonment is not within the thrust of the tort of false imprisonment, though the defendant may be liable for damages for negligence if all such elements are present. [2]

---

1 *Wood v. Cummings*, 197 Mass. 80, 85, 83 N.E. 318, 319 (1908).

2 Restatement, Second, Torts§ 44. Malice If an act which causes another's confinement is done with the intention of causing the confinement, the actor is subject to liability although his act is not inspired by personal hostility or desire to offend.  See Restatement, Second, Torts § 35(2).

## FALSE IMPRISONMENT – UNJUSTIFIED

The most common cause of actions for false imprisonment is the detention imposed to determine whether one has been guilty of shoplifting.

Medical doctors who cause a person to be committed to mental hospitals and hospital personnel are justified if the person committed is dangerous to himself or to others and if they act in good faith.[1]

---

1 M.G.L.A. c. 123, § 12 provides:§ 12. Emergency restraint of dangerous persons; application for hospitalization; examination

(a) Any physician who is licensed pursuant to section two of chapter one hundred and twelve or a qualified psychologist licensed pursuant to sections one hundred and eighteen to one hundred and twenty-nine, inclusive of said chapter one hundred and twelve, who after examining a person has reason to believe that failure to hospitalize such person would create a likelihood of serious harm by reason of mental illness may restrain or authorize the restraint of such person and apply for the hospitalization of such person for a ten day period at a public facility or at a private facility authorized for such purposes by the department. If an examination is not possible because of the emergency nature of the case and because of the refusal of the person to consent to such examination, the physician or qualified psychologist on the basis of the facts and circumstances may determine that hospitalization is necessary and may apply therefore. In an emergency situation, if a physician or qualified psychologist is not available, a police officer, who believes that failure to hospitalize a person would create a likelihood of serious harm by reason of mental illness may restrain such person and apply for the hospitalization of such person for a ten day period at a public facility or a private facility authorized for such purpose by the department. An application for hospitalization shall state the reasons for the restraint of such person and any other relevant information which may assist the admitting physician or physicians. Whenever practicable, prior to transporting such person, the applicant shall telephone or otherwise communicate with a facility to describe the circumstances and known clinical history and to determine whether the facility is the proper facility to receive such person and also to give notice of any restraint to be used and to determine whether such restraint is necessary.

(b) Only if the application for hospitalization under the provisions of this section is made by a physician specifically designated to have the authority to admit to a facility in accordance with the regulations of the department, shall such person be admitted to the facility immediately after his reception. If the application is made by someone other than a designated physician, such person shall be given a psychiatric examination by a designated physician immediately after his reception at such facility. If the physician determines that failure to hospitalize such person would create a likelihood of serious harm by reason of mental illness he may admit such person to the facility for care and treatment.

(c) No person shall be admitted to a facility under the provisions of this section unless he, or his parent or legal guardian in his behalf, is given an opportunity to apply for voluntary admission under the provisions of paragraph (a) of section ten and unless he, or such parent or legal guardian has been informed (1) that he has a right to such voluntary admission, and (2) that the period of hospitalization under the provisions of this section cannot exceed ten days. At any time during such period of hospitalization, the superintendent may discharge such person if he determines that such person is not in need of care and treatment.

(d) A person shall be discharged at the end of the ten-day period unless the superintendent applies for a commitment under the provisions of sections seven and eight of this chapter or the person remains on a voluntary status.

(e) Any person may make application to a district court justice for a ten-day commitment to a facility of a mentally ill person, whom the failure to confine would cause a likelihood of serious harm. After hearing such evidence as he may consider sufficient, a district court justice may issue a warrant for the apprehension and appearance before him of the alleged mentally ill person, if in his judgment the condition or conduct of such person makes such action necessary or proper. Following apprehension, the court shall have the person examined by a physician designated to have the authority to admit to a facility in accordance with the regulations of the department. If said physician reports that failure to hospitalize the person would create a likelihood of serious harm by reason of mental illness, the court may order the person committed to a facility for a period not to exceed ten days, but the superintendent may discharge him at any time within the ten day period.

It is essential that the restraint be against Ms. Runge's will.[2] Consent freely given, as for example, by one who chooses to remain in the store to clear himself of any suspicion of shoplifting, renders his confinement voluntary and, hence, there is no tortious restraint.[3]

---

See also Beaumont v. Segal, 362 Mass. 30, 33–34, 283 N.E.2d 858, 861 (1972) (decided under earlier statute, M.G.L.A. c. 123, §§ 77, 79, which have been repealed); Belger v. Arnot, 344 Mass. 679, 684–686, 183 N.E.2d 866, 869–870 (1962); Look v. Dean, 108 Mass. 116, 120–121 (1871); Karjavainen v. Buswell, 289 Mass. 419, 425–427, 194 N.E. 295, 298–299 (1935).

2 [FN20] Williams v. Powell, 101 Mass. 467, 469 (1869).

3 [FN21] Prosser and Keeton on Torts § 11 (5th ed.).

## FALSE IMPRISONMENT – CONFINEMENT

The element of confinement is commonly described as a general restraint on the plaintiff's freedom of movement.[1] Physical contact is not required.[2] Confinement may be accomplished by threats of physical force[3] or by actual or apparent physical barriers,[4] or by physical force.[5] A person may be tortiously confined by submission to duress other than threats of physical force to him.

---

1 Wax v. McGrath, 255 Mass. 340, 342, 151 N.E. 317, 318 (1926).

2 Restatement, Second, Torts:§ 36. What Constitutes Confinement (1) To make the actor liable for false imprisonment, the other's confinement within the boundaries fixed by the actor must be complete. (2) The confinement is complete although there is a reasonable means of escape, unless the other knows of it. (3) The actor does not become liable for false imprisonment by intentionally preventing another from going in a particular direction in which he has a right or privilege to go.

3 Restatement, Second, Torts § 40. Confinement by Threats of Physical Force The confinement may be by submission to a threat to apply physical force to the other's person immediately upon the other's going or attempting to go beyond the area in which the actor intends to confine him.

4 Restatement, Second, Torts § 38. Confinement by Physical Barriers The confinement may be by actual or apparent physical barriers.

5 Restatement, Second, Torts § 39. Confinement by Physical Force The confinement may be by overpowering physical force, or by submission to physical force.

## FALSE IMPRISONMENT – CONSCIOUSNESS OF CONFINEMENT

One is not tortiously restrained if she is unaware of her confinement unless she is harmed. Such harm must be more than the indignity of having been confined without her knowledge. However, though unconscious of his restraint, she may be actionably harmed if she suffers neglect or hunger during her confinement.[1]

---

1 Restatement, Second, Torts§ 42. Knowledge of Confinement Under the rule stated in § 35, there is no liability for intentionally confining another unless the person physically restrained knows of the confinement or is harmed by it.

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

In this case, Ms. Stanley is claiming that the SunBridge intentionally or recklessly caused infliction of emotional distress on Ms. Runge when, by its actions or actions of its agents servants or employees.

In order to recover, the plaintiff must prove by a preponderance of the evidence that:

1. SunBridge intended to inflict emotional distress or that SunBridge, knew or should have known that emotional distress was likely to result from its conduct;

2. SunBridge's conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community;

3. SunBridge's conduct caused emotional distress to Ms. Runge, and

4. the emotional distress suffered was severe and of a nature that no reasonable person could be expected to endure it.[1]

---

1 *Tetrault v. Mahoney, Hawkes & Goldings*, 425 Mass. 456, 465-66, 681 N.E.2d 1189, 1196-97 (1997); *Foley v. Polaroid Corp.*, 400 Mass. 82, 99-100, 508 N.E.2d 72, 82 (1987); *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45, 355 N.E.2d 315, 318-19 (1976); *Cady v. Marcella*, 49 Mass.App.Ct. 334, 340-41, 729 N.E.2d 1125, 1131 (2000); *Brown v. Nutter, McClennen & Fish*, 45 Mass.App.Ct. 212, 218, 696 N.E.2d 953, 957 (1998); *Conway v. Smerling*, 37 Mass.App.Ct. 1, 8, 635 N.E.2d 268, 273 (1994).

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – EXTREME AND OUTRAGEOUS CONDUCT

"Extreme and outrageous" conduct is more than just workaday insults, hurt feelings from bad manners, annoyances, or petty oppressions. "Outrageousness" means a high order of recklessness, ruthlessness or deliberate malevolence.[1]

What is extreme and outrageous is for you to consider, given all the facts. For instance, outrageous behavior may be found by a repeated series of incidents, even if those incidents, when taken individually, might not be sufficiently extreme. Also, conduct otherwise reasonable may give rise to liability when it is directed at a person known to the defendant to be particularly susceptible to emotional distress because of some physical or emotional vulnerability.[2]

---

1 *Tetrault v. Mahoney, Hawkes & Goldings*, 425 Mass. 456, 465-66, 681 N.E.2d 1189, 1196-97 (1997); *Foley v. Polaroid Corp.*, 400 Mass. 82, 99-100, 508 N.E.2d 72, 82 (1987); *Boyle v. Wenk*, 378 Mass. 592, 595, 392 N.E.2d 1053, 1055-56 (1979); *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45, 355 N.E.2d 315, 319 (1976); *Korper v. Weinstein*, 57 Mass.App.Ct. 433, 439 (2003) ("a consensual sexual relationship in this Commonwealth will not support a claim for intentional infliction of emotional distress"); *Quinn v. Walsh*, 49 Mass.App.Ct. 696, 707-08 (2000) (openly conducting adulterous affair was not sufficiently outrageous conduct to support claim); *Cady v. Marcella*, 49 Mass.App.Ct. 334, 341 (2000) (creditor's act of physically seizing half of a modular home for twelve days in the middle of winter was extreme and outrageous); *Conway v. Smerling*, 37 Mass.App.Ct. 1, 8-9, 635 N.E.2d 268, 273 (1994).

2 *Bresnahan v. McAuliffe*, 47 Mass.App.Ct. 278, 282-83, 712 N.E.2d 1173, 1176-77 (1999) (parents had a reasonable expectation of proving at trial that the funeral home's communications and conduct in providing funeral services for their stillborn child were extreme and outrageous); *Brown v. Nutter, McClennen & Fish*, 45 Mass.App.Ct. 212, 218-19, 696 N.E.2d 953, 957-58 (1998) (legal secretary's allegations that her longtime supervisor had caused her to engage in illegal conduct for his own benefit and had continued to contact her despite her requests that he stop created a triable issue); *Boyle v. Wenk*, 378 Mass. 592, 595-96, 392 N.E.2d 1053, 1055-56 (1979); *George v. Jordan Marsh Co.*, 359 Mass. 244, 254-55, 268 N.E.2d 915, 921 (1971); *see also Simon v. Solomon*, 385 Mass. 91, 96-97, 431 N.E.2d 556, 561-62 (1982).

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

To recover for negligent infliction of emotional distress, it is necessary that the defendant be found to have been negligent.[1] Thus, where the defendant owed no duty of care to the plaintiff, there can be no negligence and no negligent infliction of emotional distress.[2]

---

1 Urman v. South Boston Sav. Bank, 424 Mass. 165, 674 N.E.2d 1078 (1997).

2 Urman v. South Boston Sav. Bank, 424 Mass. 165, 674 N.E.2d 1078 (1997).  No duty of care between persons in a romantic relationship where plaintiff desired to have children and defendant informed her after they had become intimate that he had had a vasectomy; hence no liability for negligent infliction of emotional distress. Conley v. Romeri, 60 Mass. App. Ct. 799, 806 N.E.2d 933 (2004).

**BREACH OF CONTRACT**

A contract is a promise, or set of promises, between two or more persons to do or not do a certain thing.

Ordinarily, for there to be a contract, the parties must by their words or conduct express their mutual assent—that is, their agreement—to exchange promises. For example, in a contract for the purchase and sale of a house, the buyer promises to pay a certain amount of money to the seller on a certain date, and the seller promises to deliver to the buyer on that date a deed to the seller's house. Each party has agreed to exchange a promise for a promise by the other party.

Sometimes, the agreement is to exchange one party's promise for the other's performing, or refraining from performing, a particular action. For example, a homeowner promises a neighbor $20 if he will mow her lawn, and he does so. They have agreed to exchange the homeowner's promise to pay for the neighbor's action of mowing the lawn.

## FORMATION AND MUTUAL ASSENT[1]

The plaintiff must first prove that there is a binding contractual relationship between the parties.

A contract exists when the parties agree to terms and conditions of mutual promises. A contract may be based upon oral or written promises. This is often referred to as a "meeting of the minds." "Mutuality" means that the parties communicated their agreement to the terms and conditions in the same sense and at the time of the alleged contract. There is no contract formed if only one party intends to be bound, or if the parties intend to be bound only at a later time.

Agreement can be shown by written or spoken words, or by some act or omission which is intended to communicate agreement, and which indicates to the other party (or parties) that it is intended to communicate agreement. The law presumes that a person intends the natural and probable consequences of his/her acts. An unexpressed intent to be bound to a contract does not create a binding contract.

In order to determine whether a binding contract existed in this case, you must decide whether the parties intended to agree to the contract's terms as of the time of the contract.[2]

---

11 Adapted from 3 Devitt, Blackmar & Wolff, *Federal Jury Practice and Instructions*, § 87.01 at 378 (4th ed. 1987).

2 *Canney v. New England Tel. & Tel. Co.,* 353 Mass. 158, 164, 228 N.E.2d 723, 727 (1967); *Guarino v. Zyfers*, 9 Mass.App.Ct. 874, 401 N.E.2d 857 (1980); *David J. Tierney, Jr., Inc. v. T. Wellington Carpets, Inc.*, 8 Mass.App.Ct. 237, 241, 392 N.E.2d 1066, 1069–70 (1979); Restatement (Second) of Contracts §§ 1–5.

**TERMS OF CONTRACT**

If you determine that a binding contract was formed, you must determine the terms of the contract. The terms of the agreement are those terms to which the parties mutually assented with reasonable certainty.[1]

---

1 *Kravetz v. Merchants Distrib., Inc.,* 387 Mass. 457, 460, 440 N.E.2d 1278, 1280 (1982); *Rosenfield v. United States Trust Co.,* 290 Mass. 210, 195 N.E.2d 323 (1935).

**BREACH OF CONTRACT**

A breach of contract is a failure to comply with one or more terms of the contract. In order to recover for breach of contract, the nonbreaching party must have completely performed his or her obligations. Where one party to a contract has failed to perform her obligations, then as a matter of law the other party is thereafter excused from performing his contractual obligations.

In order to prevail on a breach of contract claim, a party must prove the following four elements by a preponderance of the evidence:

1. that there is a contract,

2. that the party performed its obligations under the contract (or is excused from performance),

3. that the other party breached the contract, and

4. that the nonbreaching party suffered damages as a result of the breach of contract.

**BREACH OF FIDUCIARY DUTY**

The elements of breach of fiduciary duty are:

    (1)      existence of a duty that is fiduciary in nature based upon the relationship of the parties,

    (2)      breach of that duty,

    (3)      damages, and

    (4)      a causal connection between breach of the duty and the damages.[1]

---

1 *Hanover Ins. Company v. Sutton,* 46 Mass.App.Ct. 153, 164 (1999).

## EXISTENCE OF FIDUCIARY RELATIONSHIP

One standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation.  In order for a party to be a fiduciary, there must be mutual consent.[1]

---

1 See Kirkpatrick v. Boston Mutual Life Ins. Co., 393 Mass. at 645; Theos & Sons Inc. v. Mack Trucks, Inc., 431 Mass. 736, 742 (2000).