**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **DOROTHY STANLEY, AS EXECUTRIX OF** | : | |
| **THE ESTATE OF HELEN A. RUNGE,** | : | |
| **Plaintiff** | : | |
| | : | **No. 05-10849-RGS** |
| **v.** | : | **(Judge Stearns)** |
| | : | |
| **WALTER J. KELLY, et al.,** | : | **CIVIL ACTION** |
| **Defendants** | : | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT
WALTER J. KELLY'S MOTION *IN LIMINE* TO PRECLUDE CERTAIN
OUT OF COURT STATEMENTS OF HELEN RUNGE**

Plaintiff, Dorothy Stanley, Executrix of the Estate of Helen A. Runge (hereinafter the "Plaintiff"), by and through her counsel, respectfully submits this Memorandum in Opposition to Defendant Walter J. Kelly's (hereinafter "Defendant Kelly" or "Kelly") Motion *in Limine* to Preclude Certain Out of Court Statements of Helen Runge.

In support thereof, Plaintiff states as follows:

**I.    BACKGROUND**

Prior to Helen A. Runge's (hereinafter "Ms. Runge") decision to file this action, she drafted and signed a Written Statement dated May 12, 2003, expressing her feelings and dissatisfaction with the actions of Defendants Sunbridge and Kelly.  Defendant Kelly's Exhibit D.  Ms. Runge thereafter signed, under the pains and penalties of perjury, an affidavit dated July 27, 2003, regarding the facts of the matter.  Defendant Kelly's Exhibit C.  On January 16, 2004, Ms. Runge gave a recorded statement of her

recollections of the facts and circumstances underlying this matter. Defendant's Exhibit B. Finally, during the pendency of this proceeding, Ms. Runge gave Interrogatory Testimony, signed under the pains and penalties of perjury.

Ms. Runge is unavailable to testify at trial as a result of her death on January 15, 2007. Plaintiff seeks to offer into evidence both the Affidavit of Helen A. Runge dated July 27, 2003, and all or portions of the Transcription of Videotaped Statement and Videotaped Statement of Helen A. Runge from January 16, 2004. Plaintiff similarly intends to offer into evidence Ms. Runge's May 2003 Written Statement, together with her Answers to Interrogatories from this action as well as out-of-court statements of Ms. Runge concerning the underlying facts and circumstances of this matter. Plaintiff contends that each of the statements are admissible evidence for the reasons set forth below.

## II.     ARGUMENT

Defendant Kelly seeks to preclude five statements of Ms. Runge that Plaintiff identifies as Trial Exhibits. These statements are: (1) a videotaped Deposition dated January 16, 2004; (2) an Affidavit dated July 2003; (3) Ms. Runge's Interrogatory Answers in this action; (4) a written statement of Ms. Runge dated May 12, 2003; and, (5) testimony from witness(es) based upon out-of-court statements of Helen Runge. In support, Kelly argues that the Massachusetts Dead Man's Statute is inapplicable, citing *Donovan v. Sears Roebuck & Co.*, 849 F.Supp. 86 (D. Mass. 1994). Defendant's Memorandum at 1-2. Kelly further argues that none of the statements fall within any of the exceptions to the hearsay requirements set forth in Federal Rules of Evidence

(sometimes referred to herein as the "Rule" or the "Rules") 803 and 804.  Kelly finally argues that none of Runge's statements satisfy the requirements of the residuary exception contained in Rule 807.  As will be discussed below, each of the proposed statements are in fact admissible into evidence and as such this Court should deny Defendant Kelly's Motion in its entirety.

**A.  This Court should not preclude testimony concerning Ms. Runge's Out-Of-Court Statements because they are admissible under the Massachusetts Dead Man's Statute.**

1.  The Massachusetts Dead Man's Statute is applicable in this proceeding.

As Defendant Kelly aptly points out, this action is maintained in Federal Court and as such, Federal procedural rules govern procedural questions.  The Federal Rules of Evidence set forth the general rule for competency as follows:

> Every person is competent to be a witness except as otherwise provided in these rules.  However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law.

Fed. R. Evid. 601.  The comments to the rule address the applicability of state Dead Man's statutes.  The comments to the rule enactment in 1974 state that "[W]here such statutes have been enacted they represent state policy which should not be overturned in the absence of a compelling federal interest."

The Massachusetts legislature enacted a Dead Man's statute which states, in pertinent part:

> In any action or other civil judicial proceeding, a declaration of a deceased person shall not be inadmissible in evidence as hearsay or as private conversation between husband and wife, as the case may be, if the court finds

that it was made in good faith and upon the personal knowledge of the declarant.

M.G.L. c. 233, § 65 (2008) ("Section 65").

Kelly cites to *Donovan*, *supra*, for the proposition that the Massachusetts Dead Man's statute is inapplicable in Massachusetts Federal courts. Defendant's Memorandum at 2. The *Donovan* case, decided in 1994, is at odds not only with the Reporter's Notes to the Federal Rules of Evidence, but also later decisional law of this Court. For example, five (5) years after the Donovan decision, this Court allowed the plaintiff to introduce statements of a decedent in support of his breach of contract claim based upon the application of the Massachusetts Dead Man's statute. *Swartz v. Schering-Plough Corp.*, 53 F.Supp.2d 95, 103 (D. Mass. 1999).

In *Swartz*, the plaintiff, who was an inventor, sued several companies in federal court alleging a variety of state and federal claims. One of the state claims was a breach of contract action. In support of his case, the plaintiff sought to introduce statements made by the president of one of the defendant companies, who had since died. The defendants filed a 12(b)(6) motion to dismiss the contract claim, arguing that the plaintiff could not rely on any statements made by the president because the conditions set forth in Section 65 had not been met. This Court found that the plaintiff could in fact rely on statements made by the president to other witnesses, which finding was sufficient to allow the plaintiff to survive the 12(b)(6) motion. *See also*, *Amell v. Kucewicz*, 53 F.Supp.2d 145, 146 (D. Mass. 1999) (this Court applied Vermont Dead Man's Statute

in determining the competency of witnesses to testify as to out-of-court statements of a deceased party).

2. Runge's Out-Of-Court Statements satisfy the requirements of the Dead Man's Statute.

The case law regarding the admissibility of a statement or declaration of a decedent is well-settled in Massachusetts. Section 65 is designed to mitigate the hardship resulting from the loss of evidence by reason of death. *Berwin v. Levenson*, 311 Mass. 239, 242, 42 N.E.2d 568, 570 (1942). Section 65 is liberally construed to permit the admission of a decedent's hearsay statements that would normally have been admitted had the decedent been alive at the time of trial. *Samuel Cohen Shoe Co. v. Cohen*, 329 Mass. 281, 284, 107 N.E.2d 817, 818 (1952). In accordance with the terms of Section 65, the Court must conduct a preliminary assessment into the admissibility of a decedent's statement and make a finding that the statement is within the decedent's personal knowledge as well as made in good faith.

The personal knowledge requirement in Section 65 is satisfied if the declarations are statements of relevant facts and not mere expressions of opinions or inference. *Kulchinsky v. Segal*, 307 Mass. 571, 572, 30 N.E.2d 830, 830-31 (1941). Declarations must be derived from the exercise of the declarant's own senses as distinguished from the opinions based upon data observed by him or furnished by others. *Id.* In this case, the affidavit and statement are in regard to Ms. Runge's personal recollection of the facts and circumstances regarding the actions of Defendants. The affidavit and statement cover topics such as her execution of the documents giving Kelly power over her

finances and healthcare decisions, her admission to and subsequent detention at Sunbridge, the administration of unwanted and unnecessary medications and her repeatedly ignored requests to cease the unwanted medication and to be transferred to a different facility. As such, the contents of the affidavit and statement are within the personal knowledge of the decedent.

The requirement that the deceased person's declarations be made in good faith relates to the person's state of mind, seriousness and sincerity at the time of the statement. For example, in the case of *Shine v. Vega*, 429 Mass. 456, 709 N.E.2d 58 (1999), the court evaluated the context in which the statement was made in order to determine whether it was made in good faith. In that case, the court found that a person consulting her attorney would have a most compelling reason to be honest, *i.e.* to permit an informal assessment of the strength of her possible legal claim. *Shine*, 429 Mass. at 469, 709 N.E.2d at 66.

In this case, Ms. Runge made the affidavit less than three months after departing from Sunbridge. Ms. Runge gave her sworn statement at the initial in-person consultation between her counsel and herself, which statement was taken under oath on January 16, 2004. The litigation was not commenced until more than a year and a quarter later, on April 27, 2005. The sworn statement was taken as part of the process to investigate whether any actionable conduct had occurred, as well as to identify who may have engaged in such conduct. At the time Ms. Runge gave her statement, subsequent to the affidavit, no decision had been made to proceed with this litigation, nor had sufficient facts been adduced to make a determination as to whether a basis

existed to file suit against Defendants.  Accordingly, the affidavit and sworn statement were primarily investigative in nature and not taken specifically in preparation of litigation.

Here, Ms. Runge had an incentive to accurately recount what had happened to her in order to determine, in conjunction with her attorney, whether a case could be brought and, if so, against whom an action could be initiated.  She did not anticipate that she might die and that her affidavit and statement would then be used as a substitute for her testimony in future litigation.  In light of these circumstances, it would be unfair to exclude the affidavit and statement, while allowing Defendants to offer their version of events.   Ms. Runge's various Out-Of-Court Statements should be admitted so that the jury can hear her first-hand account of the injuries she suffered as a result of Defendant Kelly's actions.  *See also*, *Harrison v. Loyal Protective Life Insurance Company*, 379 Mass. 212, 219, 396 N.E.2d 987, 991 (Mass. 1979) (statements of deceased plaintiff concerning emotional distress are admissible); *Johnson v. Petruitis*, 1997 Mass.App.Div. 17, 1997 WL 71656 (1997) (deceased statement to insurer about automobile accident admissible where not written in contemplation of own death).  To find otherwise would effectively punish Plaintiff for Ms. Runge's death despite the fact that her claims survive her death pursuant to Massachusetts law.

B. **Ms. Runge's statements satisfy exceptions under the Federal Rules of Evidence 803 and 804.**

Kelly's second argument is that since the Rules control the admissibility of Ms. Runge's statements, Plaintiff must lay a proper foundation under Rules 803 and 804. Kelly summarily concludes that none of the statements at issue fall within any of Rules 803 and 804's exceptions. In fact, all of Runge's statements Kelly seeks to preclude fall within several exceptions under both Rules 803 and 804.

    1. <u>Ms. Runge's Out-Of-Court Statements satisfy an exception contained within Rule 804</u>.

Federal Rule of Evidence 804 contains exceptions to the hearsay rule. Whether the requirements of a hearsay exception contained in Rule 804 have been satisfied is to be determined by the Court. Fed.R.Evid. 104(a). To satisfy the requirement of Rule 804, must show that the witness is unavailable as defined in Rule 804(a) and the statements fall within one of the permissible exceptions set forth within 804(b).

One of the explicit categories of unavailability contained within Rule 804 is the death of a witness. Fed.R.Evid. 804(a)(4). Ms. Runge died in January 2007, during the pendency of this proceeding. Plaintiff therefore satisfies the first requirement of Rule 804.

Rule 804(b)(1) states that "Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taking in compliance with law in the course of the same or another proceeding …" is not excluded by the hearsay rule. Rule 804(b)(1) is satisfied if the testimony is offered against the same party and there was a similar motive to develop the testimony by direct, cross or re-direct examination.

Fed.R.Evid. 804(b)(1).   Ms. Runge's Interrogatory Answers, Affidavit and Deposition satisfy the identity of party test, as they are being offered against Defendant Kelly in the same.   As Ms. Runge is unavailable, the Rules provide Plaintiff with the right to introduce the former testimony.

To avoid this conclusion, Defendant Kelly argues that Runge's Affidavit and Deposition were taken as part of the matter styled as *In re guardianship of Helen Runge*. Defendant's Memorandum at 3.[1]   Defendant Kelly argues that this does not satisfy the requirements of Rule 804(b)(1).   Defendant Kelly then argues that none of the defendants were aware of the prior deposition.   Defendant Kelly's argument is misleading on two grounds.

First, Rule 804(b)(1) requires that the proceedings in which the testimony was given pertain to "the party against whom the testimony is now offered."   Defendant's Memorandum at 3 (citing Rule 804(b)(1)).   Clearly this requirement is satisfied, as Defendant Kelly is a party to this action as well as a party to the Guardianship proceedings he references.   The issues presented were of a similar character and

---

[1]   Defendant briefly argues that Runge's Deposition is also inadmissible under Fed.R.Civ.P. 27. Defendant Memorandum, at Note 2.   In this matter, the Deposition was not taken with the specific purpose of perpetuating the testimony or making is available for use at trial  The Deposition was taken ancillary to the investigation of what had occurred to Ms. Runge and what she had been through.   Her death was not imminent and she was in otherwise good health.   More than a year and a quarter passed between the time the statement was taken and the time the action was commenced.   Defendant's furthermore had an opportunity to take Ms. Runge's deposition and develop her testimony through their own examination.   Fed.R.Civ.P. 27 is not implicated here.   To this end, *Shine v. Vega*, *supra*, is controlling. The court in *Shine* held that a writing or statement made in anticipation of litigation does not necessarily mean that it was not made in good faith.   *Id*. at 66.   The Dead Man's statute was amended to permit the admission of statements by deceased persons made after the commencement of an action.   *Id*.   The *Shine* court reasoned that if statements made after the commencement of litigation are admissible, it cannot be true that a statement made in anticipation of litigation is inherently not made in good faith.   *Id*.

Defendant Kelly had a similar motive to develop the testimony by direct, cross or re-direct examination.

Second, Defendant Kelly states that none of the Defendants were aware of the Affidavit and Deposition until the transcript was produced during discovery.  Yet Defendant Kelly admits the Affidavit was used in a prior proceeding to which he was a party.  Defendant's Memorandum at 4.  Ms. Runge also produced the statements in her initial disclosure, not during discovery.[2]  Defendant Kelly was thereafter afforded an opportunity to draft and serve Interrogatories, to which Ms. Runge provided Answers. Defendant Kelly also took Ms. Runge's deposition for the express purpose of developing the former testimony by direct and/or cross-examination, a transcript Defendant Kelly now proposes to read to the jury.  See Exhibit A, Defendant Kelly's Designation of Depositions to be Read to the Jury.

Plaintiff has satisfied the requirements for admission of the testimony under Rules 804(b)(1).[3]  The statements at issue involve the same underlying factual circumstances.  It would be patently unfair to prevent Plaintiff from introducing testimonial evidence of Ms. Runge simply because she died during the pendency of this proceeding when all of her claims against Defendant Kelly survived Ms. Runge's death.

---

[2]  Ms. Runge filed this action in 2005 and provided her initial disclosures shortly thereafter.  Defendant Kelly made a strategic litigation decision not to conduct Plaintiff's deposition for several years after filing, despite the fact that her mental condition was placed into doubt in his initial pleadings and filings in this case and the Guardianship proceedings he references.

[3]  Furthermore, Rule 804(b)(4) allows statements of personal or family history as an exception to the hearsay rule.  At issue in this case is Ms. Runge's family history with her daughter, the Plaintiff.  To the extent her Affidavit, Answers to Interrogatories, or deposition transcript concern this relationship then they are admissible as evidence.

124228                                             10

2.  <u>Ms. Runge's Out-Of-Court Statements satisfy an exception contained within Federal Rule of Evidence 803.</u>

Rule 803 covers exceptions to the hearsay rule regardless of the declarant's availability.  In the event that this Court determines that Ms. Runge's statements do not fall within one of Rule 804's exceptions, Plaintiff should be permitted to introduce the statements to show Ms. Runge's then existing mental, emotional, or physical condition or as a statement of proof of a fact remembered or believed.  Fed.R.Evid. 803(3).  In this instance, one of the critical issues in this case is Ms. Runge's then existing mental state, both during her stay at Sunbridge as well as thereafter while she resided in North Carolina with Plaintiff.  For example, while Defendant Kelly proposes to exclude Plaintiff's statements, he proposes to include her various medical records and other documents from this very same time period.  See generally, Defendant Kelly's Proposed Exhibits starting at Exhibit DD, filed as part of the Parties' Proposed Exhibit List, attached hereto as Exhibit B.  The various statements of Ms. Runge are material as to this issue and admissible under the exception to the hearsay rule covering mental state.

C.  **The Statements fall within the Residual Exception contained in Rule 807.**

Fed.R.Evid. 807 provides a residuary exception for certain statements that do not fall within the ambit of Rules 803 and 804.  To meet the Rule 807 exception, Plaintiff must satisfy five (5) elements: (1) equivalent trustworthiness; (2) necessity; (3) that the statement concerns a material fact; (4) satisfaction of purpose and rules; and, (5) notice.  Without any support, Defendant Kelly merely states Plaintiff does not meet these requirements.  Defendant Memorandum at 4.  Despite Defendant Kelly's unsupported

conclusion, to the extent the statements do not fall within an exception set forth in Rules 803 and 804, the statements do in fact meet the requirements for admissibility under Rule 807.

First, the statements at issue meet the requirement of equivalent trustworthiness, as they were given under oath based upon Ms. Runge's personal knowledge and Defendant Kelly was afforded an opportunity to cross-examine her at a later point through both Interrogatories as well as a deposition which Kelly intends to read to the jury. See, e.g., *United States v. Sanchez-Lima*, 161 F.3d 545, 547-48 (9th Cir. 1998). Second, the statements are more probative on the point than any other evidence, as Ms. Runge is the only person, other than the Defendants, with personal knowledge of the facts and circumstances underlying this dispute. Third, the statements are all probative on material matters at issue in this litigation, as they concern Ms. Runge's recollection of the facts and circumstances underlying the dispute with Defendant Kelly and are of substantial importance in determining the outcome of the litigation. *United States v. Sposito*, 106 F.3d 1042 (1st Cir. 1997). Fourth, the general purposes of these rules and the interests of justice are best served by allowing the trier of fact to consider the decedent's statements and make a determination of the issues presented based upon all the evidence in the record. Finally, Defendant Kelly was advised of Plaintiff's intention to use these statements months in advance of trial, was afforded the opportunity to develop his defenses to the statement and did in fact develop his defenses throughout discovery.

While the exception under Rule 807 is to be used only in exceptional circumstances, the present case presents these circumstances. Ms. Runge, the percipient witness, died during the pendency of the proceedings. To disallow admission of these statements unnecessarily penalizes Plaintiff for Ms. Runge's death, despite the fact that her claims expressly survive.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court deny Defendant Walter J. Kelly's Motion *in Limine* in its entirety.


Respectfully submitted,

LATSHA DAVIS YOHE & MCKENNA, P.C.


Dated: June 18, 2008            By___/s/ Glenn R. Davis
                                    Glenn R. Davis
                                    1700 Bent Creek Boulevard, Suite 140
                                    Mechanicsburg, PA 17050
                                    (717) 620-2424
                                    gdavis@ldylaw.com
                                    *Pro Hac Vice*

                                    Blake J. Godbout, BBO #196380
                                    BLAKE J. GODBOUT & ASSOCIATES
                                    33 Broad Street, 11th Floor
                                    Boston, MA 02109
                                    (617) 523-6677
                                    blake@bjalaw.com

                                    Attorneys for Plaintiff, Dorothy Stanley, Executrix of
                                    the Estate of Helen A. Runge

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served upon the

attorney of record for each party by First Class Mail, postage pre-paid.

> Michele Carlucci
> George S. Rockas
> Wilson Elser Moskowitz Edelman & Dicker LLP
> 155 Federal Street
> Boston, MA 02110
> michele.carlucci@wilsonelser.com
> george.rockas@wilsonelser.com
>
> Michael Williams
> Lawson & Weitzen, LLP
> 88 Black Falcon Avenue, Suite 145
> Boston, MA 02210-1736
> mwilliams@lawson-weitzen.com

Dated:  June18, 2008            By /s/ Blake J. Godbout, Esq.
                                    Blake J. Godbout

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

EASTERN DIVISION

No. 05-10849-RGS

| |
|---|
| HELEN RUNGE, |
| Plaintiff |
| |
| v. |
| |
| WALTER J. KELLY, |
| Defendant |

## DEPOSITION TESTIMONY OF GILBERT STANLEY AND HELEN RUNGE TO BE READ TO JURY BY DEFENDANT, WALTER KELLY

**Gilbert Stanley**

Page 4, Lines 2-25

Page 5, Lines 1-23

Page 6, Lines 6-25

Page 7, Lines 1-25

Page 8, Lines 1-8 and 12-25

Page 9, Lines 1-25

Page 10, Lines 1-25

Page 11, Lines 1-25

Page 12, Lines 1-4 and 8-25

Page 13, Lines 1-25

Page 14, Lines 1-8

Page 15, Lines 10-18 and 21-24

Page 26, Lines 20-25

Page 27, Lines 1-25

Page 28, Lines 1-21

Page 29, Lines 2-25

Page 30, Lines 2-3 and 13-25

Page 31, Lines 1-3 and 22-25

Page 32, Lines 1-25

Page 33, Lines 1-22

Page 37, Lines 5-25

Page 38, Lines 1-12

Page 40, Lines 4-19

Page 41, Lines 3-22

Page 42, Lines 2-4

Page 44, Line 25

Page 45, Lines 1-25

Page 46, Line 1

Page 49, Lines 1-25

Page 50, Lines 1-3

Page 51, Lines 24-25

Page 52, Lines 1-25

Page 53, Lines 1-8

Page 54, Lines 22-25

Page 55, Lines 1-23

Page 57, Lines 9-25

121620.1

Page 58, Lines 1-25

Page 59, Lines 1-9 and 19-25

Page 60, Lines 1-15

Page 61, Lines 17-25

Page 62, Lines 1-12

Page 63, Lines 11-21

Page 64, Lines 24-25

Page 65, Lines 1-25

Page 67, Lines 3-7

Page71, Lines 18-24

Page 80, Line 25

Page 81, Lines 1-3

Page 91, Lines 21-23

Page 92, Lines 20-25

Page 93, Lines 1-25

Page 94, Lines 2-25

Page 95, Lines 1-19

Page 96, Lines 17-25

Page 97, Lines 1-7 and 13-18

Page 115, Lines 8-25

Page 116, Lines 1-25

Page 117, Lines 1-2 and 7-25

Page 118, Lines 1-7 and 18-20

121620.1

Page 119, Lines 1-3

Page 122, Lines 24-25

Page 123, Lines 1-3

Page 136, Lines 23-25

Page 137, Lines 1-17

Page 139, Lines 2-25

Page 149, Lines 21-25

Page 150, Lines 1-16

Page 151, Lines 2-25

Page 152, Line 1

Page 171, Lines 3-25

Page 172, Lines 1-25

Page 173, Lines 1-10

**Helen Runge (November 15, 2006 Deposition)**

4:2 – 4:18

4:22 – 4:24

5:3 – 5:7

5:17 – 8:9

8:20 – 9:9

121620.1

Respectfully submitted,

The Defendant, Walter J. Kelly,

By his attorneys,


_____ s/ Michele Carlucci _____
George C. Rockas, BBO #544009
Michele Carlucci, BBO #655211
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER  LLP
260 Franklin Street
Boston, MA 02110
(617) 422-5300


## CERTIFICATE OF SERVICE

I, Michele Carlucci, certify that on June 16, 2008, I have served a copy of the foregoing by electronic filing.

/s/ Michele Carlucci

121620.1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DOROTHY STANLEY, AS EXECUTRIX OF | : | |
| THE ESTATE OF HELEN A. RUNGE, | : | |
| Plaintiff | : | |
| | : | |
| | : | No. 05-10849-RGS |
| v. | : | (Judge Stearns) |
| | : | |
| WALTER J. KELLY, et al., | : | CIVIL ACTION |
| Defendants | : | JURY TRIAL DEMANDED |

## LIST OF EXHIBITS TO BE OFFERED AT TRIAL

A.      Letter of Helen Runge to "To Whom It May Concern," April 30, 2003

B.      Letter of Helen Runge to Sunbridge, May 12, 2003

C.      Notes of Walter Kelly, 3 pages

D.      Sunbridge Healthcare Health and Medical Condition, Informing Residents of,
        Policy, June 2002

E.      Sunbridge Healthcare Psychoactive Medications Policy, June 2002

F.      Sunbridge Healthcare Refusal of Treatment Policy, June 2002

G.      Deposition of Sandra M. Porazzo-Perry, March 28, 2007.

H.      Note of Helen Runge, January 17, 2003

I.      Letter of Helen Runge to Walter Kelly, March 12, 2003

J.      Letter of Helen Runge to Dorothy Stanley, March 2003

K.      Letter of Robert M. Palmer, M.D., to Dorothy Stanley, May 12, 2003

L.      Note of B. Rhett Myers, M.D., May 30, 2003

124342

M.      Letter of Robert M. Palmer, M.D., to Dorothy Stanley, July 25, 2003

N.      Letter of Phillip R. Feagan to Michael J. McCann and Thomas Schiavoni, June 2, 2003

O.      Packet: Invoices of Walter J. Kelly dated June 3, 2003 and August 8, 2003; Walter J. Kelly check dated June 4, 2003 ($7,500); Pre-Bill of Walter J. Kelly dated September 25, 2003; MembersPlus check dated May 20, 2003 ($25,000); MembersPlus check dated August 7, 2003 ($6,500); Invoice of McGee & Schiavoni dated May 16, 2003; Walter J. Kelly check dated May 23, 2003 ($4,227.50); Invoice of McGee & Schiavoni dated August 7, 2003; Walter J. Kelly check dated August 7, 2003 ($6,150); Sunbridge Charges dated May 2, 2003; Walter J. Kelly check dated May 23, 2003 ($9,475.31); Walter J. Kelly check dated June 4, 2003 ($702.10); Statement of Account dated May 15, 2003; Invoice of Katherine F. Eddy dated May 2, 2003; Walter J. Kelly check dated May 23, 2003 ($540); Letter of Walter J. Kelly to Michael McCann dated June 4, 2003; Walter J. Kelly check dated June 4, 2003 ($1,900).

P.      Deposition of Farrah Seidler, May 8, 2007

Q.      Affidavit of Helen A. Runge, July 27, 2003

R.      Transcription of Videotaped Statement and Videotaped Statement of Helen A. Runge, January 16, 2004

S.      Helen Runge's Answer to Kelly's Interrogatories, October 12, 2006, and Answer to Bloomingdale's Interrogatories, October 12, 2006

T.      Affidavit of Walter J. Kelly in Support of Motion for Award of Costs in guardianship proceeding

U.      July 13, 2006, Chapter 93A demand letter

V.      August 10, 2006, response to Chapter 93A demand letter

W.      Helen Runge's medical records from Sunbridge (00001 – 00485)

X.      Photographs of Helen Runge

Y.      Massachusetts Resident Admission Agreement

124342

Z.      2003 Invoices of Lawrence Hale regarding defense of guardianship proceeding

AA.     October 15, 2004, January 11, 2005 and September 20, 2005 Invoices of Blake J. Godbout & Associates

BB.     March 15, 2004 Invoice of Latsha, Davis, Yohe & McKenna, P.C.

CC.     Deposition of Walter Kelly, December 1 and 14, 2006

DD.     1992 Last Will and Testament of Helen Runge

EE.     1994 Codicil to Last Will and Testament

FF.     1998 Last Will and Testament of Helen Runge

GG.     3/5/98 Durable Power of Attorney of Debra Gaughan

HH.     02/29/00 Discharge Summary – Jewish Memorial

II.     Geraghty Associates, Inc. (Landlord) documents

JJ.     10/04/00 Letter from Runge to Kelly

KK.     10/4/00 Runge's Appt of Kelly as Rep. for MassPRO correspondence

LL.     10/4/00 Letter from Runge to Kelly re MassPRO

MM.     10/11/00 Letter from MassPRO to Helen Runge

NN.     10/11/01 to 11/15/02 Nurse's Notes from Marian Manor

OO.     10/11/01 to 11/30/02 Social Worker notes from Marian Manor

PP.     10/25/01 Marian Manor Resident Care Plan

QQ.     11/1/00 Letter from MassPRO to Kelly, November 1, 2000

RR.     11/1/00 Letter from MassPRO to Helen Runge

SS.     11/08/01 Letter from Runge appointing Kelly as Durable Power of Attorney

TT.     11/26/01 Letter from Helen Runge to Kelly

124342

UU.     04/26/02 Nova Psychiatric Services Notes

VV.     08/21/02 Marian Manor team meeting notes

WW.     11/15/02 to 01/07/03 BayView Nurse's Notes

XX.     01/09/03 Application Pursuant to M.G.L. c. 123 s. 12(a) for Involuntary
        Hospitalization

YY.     01/11/03 Carney Hospital Emergency Dept. Assessment Flow Sheet

ZZ.     01/11/03 Carney Hospital Emergency Dept. Physician Record

AAA.    01/12/03 Application for and Authorization of Temporary Involuntary
        Hospitalization

BBB.    01/14/03 Application for Care and Treatment on a Conditional Voluntary
        Basis

CCC.    01/15/03 Carney Hospital: Medication Administration Record

DDD.    01/16/03 SunBridge pre-admission assessment

EEE.    01/22/03 Carney Hospital: Psychiatric Discharge Summary

FFF.    01/22/03 Consent for Medical and Health Care Services

GGG.    01/23/03 Inventory List

HHH.    01/29/03 Carney hospital bill

III.    02/??/03 Valentine's day card from Dorothy to Helen

JJJ.    2/4/03 – 5/6/03 Kelly Invoice

KKK.    3/12/03 Letter from Helen Runge to Walter Kelly

LLL.    03/24/03 Letter from Helen Runge to Dorothy Stanley

MMM.    03/31/03 Meridian Health Associates – Dental care notes

NNN.    3/31/0? SB Antipsychotic Medication Informed Consent

124342

OOO.    3/31/03 Meridian Health Associates Invoice for Oral Exam

PPP.    4/24/03- 2/23/04 McGee & Schiavoni Invoices

QQQ.    4/29/03 Notice to Healthcare Provider

RRR.    05/01/03 Motion for Appointment of Guardian ad Litem

SSS.    05/01/03 Motion for appointment of temporary guardian

TTT.    05/01/03 Motion for Release of Bank Funds

UUU.    05/02/03 Probate Court's Findings of Fact

VVV.    05/02/03 Bond of Temporary Guardian

WWW.    05/02/03 Affidavit of Walter Kelly in Support of Motion for Temp. Guardian

XXX.    5/5/03 Durable Power of Attorney for Financial Management

YYY.    5/6/03 Letter from Schiavoni to Helen Runge

ZZZ.    5/23/03 Check from Kelly Client's Fund to Meridian Health Associates

AAAA.    6/4/03 Check from Client Fund Account to Sunbridge

BBBB.    7/1 /03-9/2/03 Kelly Bill Worksheet

CCCC.    7/25/03 Transfer Under the NC Uniform Custodial Act

DDDD.    7/25/03 Declaration of Trust under the NC Uniform Custodial Trust Act

EEEE.    7/28/03 Motion to Extend Temporary Guardianship

FFFF.    8/1/03 Letter from Schiavoni to Hale

GGGG.    8/29/03 Inventory

HHHH.    9/7/03 Kelly Client Fund Check to Schiavoni

IIII.    10/08/03 Psychosocial Assessment – St Luke's Hospital

JJJJ.       10/09/03 Psychiatric Assessment – St. Luke's Hospital

KKKK.     11/07/03 Discharge Summary – St. Luke's Hospital

LLLL.       04/02/04 Nursing Admissions Assessment

MMMM. 04/06/04 Progress Notes (White Oaks – Benson Hall Assisted Living)

NNNN.    04/07/04 to 12/29/04 White Oaks – Benson Hall As sited Living Nurse's
            Notes

OOOO.    11/5/04 Affidavit of Walter Kelly in Support of Motion for Award of Costs

PPPP.      12/31/04 History & Physical – St. Luke's Hospital

QQQQ.    01/01/05 St. Luke's Hospital History & Physical

RRRR.     01/06/05 to 03/24/05 White Oaks – Benson Hall As sited Living Nurse's
            Notes

SSSS.      1/20/05 Gilbert Stanley Sworn Statement, Jan. 20, 2005

TTTT.      9/26/05 Medical Progress Note - Black Mountain Center

UUUU.     Undated Letter from Dr. George Kim

VVVV.     12/07/01 Durable Power of Attorney dated 12/7/01

WWWW. 01/??/03 Admissions Assessment

XXXX.     01/22/03 to 04/30/03 Physician's Order Sheets

YYYY.      01/22/03 SB-Randolph Dental Records

ZZZZ.     01/22/03 Carney Hospital: Discharge Instructions and Referral Form

AAAAA.  01/23/03 to 05/13/03 Social Progress notes

BBBBB.   01/23/03 to 04/02/03 Vital Signs and Weight Chart

CCCCC.  01/27/03 to 06/04/03 Physician's Progress Notes

DDDDD. 02/05/03 Authorization for Services: Meridian Health Associates

124342

EEEEE.  02/10/03 New England Geriatrics Registration Form

FFFFF.  02/10/03 New England Geriatrics Assessment

GGGGG. 02/13/03 to 04/24/03 Nutritional Progress Notes

HHHHH. 02/14/03 Antipsychotic Medication Informed Consent form

IIIII.  02/25/03 Meridian Health Associates – Optometry consult

JJJJJ.  02/27/03 Antipsychotic Medication Informed Consent form

KKKKK.  03/04/03 New England Geriatrics Diagnostic/Treatment Evaluation

LLLLL.  03/13/03 New England Geriatrics Treatment Plan

MMMMM.  03/13/03 New England Geriatrics Diagnostic/Treatment Evaluation

NNNNN.  1/22/03 to 04/30/03 SunBridge Nurse's Notes

OOOOO.  03/29/03 Meridian Health Associates – Podiatry notes

PPPPP.  03/31/03 New England Geriatrics Diagnostic/Treatment Evaluation

QQQQQ. 04/01/03 New England Geriatrics Diagnostic/Treatment Evaluation

RRRRR.  04/21/03 New England Geriatrics Diagnostic/Treatment Evaluation

SSSSS.  04/22/03 New England Geriatrics Progress Notes

TTTTT.  04/23/03 Activities Progress Notes

UUUUU. 04/29/03 New England Geriatrics Diagnostic/Treatment Evaluation

VVVVV.  05/02/03 Temporary Decree of Guardianship

WWWWW.  05/21/03 Department of Public Health Report

XXXXX.  9/30/03 Letter from Schiavoni to Hale with attachments

124342

Respectfully submitted by,

The Plaintiff,
DOROTHY STANLEY, EXECUTRIX OF THE
ESTATE OF HELEN RUNGE,
By her attorneys,


By /s/ Glenn R. Davis
Glenn R. Davis
1700 Bent Creek Boulevard, Suite 140
Mechanicsburg, PA 17050
(717) 620-2424
gdavis@ldylaw.com
*Pro Hac Vice*

Blake J. Godbout, BBO #196380
BLAKE J. GODBOUT & ASSOCIATES
33 Broad Street, 11th Floor
Boston, MA  02109
(617) 523-6677

The Defendant,
SUNBRIDGE NURSING HOME AND
REHABILITATION CENTER,
By its attorney,


/s/ Michael Williams
Michael Williams, Esq.
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210-2414

The Defendant,
WALTER J. KELLY,
By his attorneys,


/s/ Michele Carlucci
George C. Rockas, BBO #544009
Michele Carlucci, BBO #655211

124342

WILSON ELSER MOSKOWITZ EDELMAN &
DICKER  LLP
260 Franklin Street
Boston, MA 02110
(617) 422-5300

124342