**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

EASTERN DIVISION

No. 05-10849RGS

| |
|---|
| DOROTHY STANLEY, EXECUTRIX OF THE ESTATE OF HELEN A. RUNGE, <br>                              Plaintiff <br><br> v. <br><br> WALTER J. KELLY, <br> KERRY L. BLOOMINGDALE, M.D., and <br> SUNBRIDGE NURSING AND <br> REHABILITATION CENTER, <br>                              Defendants |

### *RENEWED* MOTION IN LIMINE TO PRECLUDE THE TESTIMONY OF ARNOLD ROSENFELD, ESQ. AND MOTION TO DISMISS FOR LACK OF EXPERT TESTIMONY

NOW COMES the Defendant, Walter J. Kelly, and moves this honorable Court to preclude the purported expert testimony of Arnold Rosenfeld, Esq. and to dismiss all claims against Defendant Kelly. In support of this motion, the Defendant states that the expected expert testimony is insufficient as a matter of law. In further support, Defendant incorporates this memorandum and states as follows:

### BACKGROUND

**A.     Plaintiff's Complaint and Allegations**

Plaintiff, Helen A. Runge ('Runge"), filed this lawsuit on April 27, 2005 against Walter J. Kelly ("Kelly"), Kerry L. Bloomingdale, M.D. ("Bloomingdale") and Sunbridge Nursing and Rehabilitation Center ("Sunbridge").[1]  When Plaintiff filed her

---

[1] The plaintiff, Helen Runge passed away on January 15, 2007 during this litigation, and the Executrix of her estate, Dorothy Stanley, was substituted as the Plaintiff. To avoid confusion, we refer to Runge as the "Plaintiff" in this motion.

Complaint in this matter, she was a ninety-one (91) year-old woman, who had been a resident of Sunbridge Nursing and Rehabilitation Center ("Sunbridge") up until April 29, 2003. [See Second Amended Complaint, hereinafter "Complaint", ¶ 1,6]. Upon her own volition, Plaintiff first entered into assisted living at Marion Manor in 2001, at the age of eighty-five. [Complaint, ¶13-14]. In 2001, Plaintiff contacted Defendant Kelly to provide her with legal assistance as a result of her decision to and in preparation of entering into Marion Manor. [Complaint, ¶ 13]. Plaintiff alleges that at about this time, Defendant Kelly drafted paperwork that would make himself her power of attorney and her medical power of attorney, either unknown to Runge or without her fully understanding his actions. [Complaint, ¶ 16].

After living at Marion Manor for some months, Plaintiff decided to move to Bayview Assisted Living in November of 2002, so that she could have a private room. [Complaint, ¶ 19]. Plaintiff claims that while at Bayview, her prescription drug card was either stolen or misused by employees, and management was slow in addressing or failed to address her concerns. [Complaint, ¶20]. She also alleges that Defendant Kelly knew of these facts, but failed to act on behalf of the Plaintiff. [Complaint, ¶ 20]. In January of 2003, Plaintiff accused staff of rummaging through her belongings allegedly with the intent to steal, and contacted the police. [Complaint, ¶21]. Plaintiff alleges that Bayview then contacted Defendant Kelly, who directed that Plaintiff be taken to Carney Hospital for psychiatric evaluation. [Complaint, ¶22]. Plaintiff also alleges that upon her discharge from Carney Hospital, she was admitted to Defendant Sunbridge's skilled care facility. [Complaint, ¶24].

122862.1

Plaintiff also claims that at Sunbridge she was unnecessarily medicated to impair her cognitive abilities and to keep her in a state of diminished capacity. [Complaint, ¶28]. She claims that she "was held captive and against her will at that facility." [Id.]. Plaintiff alleges Sunbridge took no action to have her moved to another facility because keeping her there was financially lucrative. [Id.].

She alleges Defendant Sunbridge and Kelly directed Defendant Dr. Bloomingdale to examine the Plaintiff and render an opinion that the Plaintiff was mentally incompetent. [Complaint, ¶36-38]. Plaintiff alleges that Defendant Kelly enlisted the aid of Defendant Bloomingdale and Defendant Sunbridge in presenting his petition to the court to have himself appointed guardian of the Plaintiff after she was taken to North Carolina by her daughter and son-in-law. [Complaint, ¶ 47]

Plaintiff asserts various counts against Defendant Kelly, including negligence (Count III), abuse of process (Count XIV), false imprisonment (Count IX), intentional infliction of emotional distress (Count X), negligent infliction of emotional distress (Count XI), breach of contract (Count XII), breach of fiduciary duty (Count XIII), and violation of M.G.L. c. 93A (Count XVI). Plaintiff relies upon the same set of facts as set forth above for all counts. As to the Negligence and Breach of Contract counts, she alleges that Defendant Kelly's conduct "deviates from the standard of care owed by him to Runge" and Defendant Kelly breached his contract with Runge to provide professional services. [Complaint, ¶57, 98]. As to the False Imprisonment, Plaintiff simply alleges that Defendant Kelly "did unlawfully confine Plaintiff." [Complaint, ¶83]. As to the Intentional and Negligence Infliction of Emotional Distress claims, Plaintiff simply pleads Defendant Kelly's intentional and negligent actions caused Plaintiff emotional

3

distress. [Complaint, ¶87, 92]. Plaintiff further alleges that Kelly breached his fiduciary duty to her as her attorney, Power of Attorney, Health Care Proxy and Guardian. [Complaint, ¶102-105]. Plaintiff also alleges that Defendant Kelly abused process through the filing of the Guardianship petition to gain control of and deplete Plaintiff's assets. [Complaint, ¶107-108]. Finally, Plaintiff alleges that Defendant Kelly's actions were in violation of M.G.L. c. 93A. [Complaint, ¶114].

**B.      Plaintiff's Expert Disclosure**

Plaintiff has disclosed Arnold Rosenfeld, Esq. as an expert whom plaintiff expects to testify at the trial of this matter. [See Plaintiff's Expert Disclosure and Resume, attached as Exhibit A]. According to the disclosure, Attorney Rosenfeld is only expected to testify that it is his opinion that Defendant Kelly violated Rules 1.14 and 1.7(b) of the Rules of Professional Conduct.

### ARGUMENT

**A.      Expert Testimony Concerning the Fact of an Ethical Violation is not Admissible.**

Attorney Rosenfeld's proffered testimony solely concerns his opinion that Defendant violated Rules 1.14 and 1.7(b) of the Rules of Professional Conduct. However, "[e]xpert testimony concerning the fact of an ethical violation is not appropriate…a judge can instruct the jury (or himself) concerning the requirements of ethical rules. The jurors need no expert on legal ethics to assess whether a disciplinary rule was violated. A jury would not be aided, and their function could be impinged upon, by expert testimony in such a circumstance." Fishman v. Brooks, 396 Mass. 643, 650

(1986). Federal Rule of Evidence 702 permits expert testimony "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Attorney Rosenfeld's testimony that Defendant Kelly violated Rules of Professional Conduct would not assist the trier of fact to understand the evidence or determine a fact in issue, rather it is a conclusion of law and abdicates the role of the trier of fact.[2] Therefore, the proffered testimony is not admissible under Rule 702.

Moreover, the purported expert testimony would be a waste of time and should be precluded pursuant to Rule 403, because it would confuse and mislead the jury and unfairly prejudice the defendant. See Fed. R. Evid. Rule 403 ("…evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time…"). A plaintiff in a legal malpractice action must establish the standard of professional skill or care through expert testimony. See Brown v. Gerstein, 17 Mass. App. Ct. 558. 566 (1984). Plaintiff's expert fails to address the applicable standard of care and whether or not Defendant Kelly breached that standard. Instead, the Plaintiff's expert is expected to testify that Defendant breached Rules of Professional Conduct. However, a violation of the Rules of Professional Conduct does not give rise to

---

[2] In re McKesson HBOC, Inc. Sec. Litig., 126 F. Supp. 2d 1239, 1246 (N.D. Ca. 2000) (striking from the record "three declarations from law professors opining on the ethical propriety of the various solicitation tactics that the firm employed, a purely legal question"); GST Telecomm., Inc. v. Irwin, 192 F.R.D. 109, 111 (S.D.N.Y. 2000) (stating that "testimony of legal experts on ethics in the profession is hardly an occasion for which credible experts supply legal opinions") (Pollack, J.) (citation and quotation marks omitted); Commonwealth v. Lambert, 1998 WL 558749, at *10 n.34 (Pa. Com. Pl. Aug. 24, 1998) (excluding Professor Wolfram's testimony on ethical propriety of lawyers' conduct and stating: "The interpretation of the Rules of Professional Conduct and the Rules of Criminal Procedure is a legal issue to be decided by a court, for which use of an expert would be wholly inappropriate. A court may not abdicate its role to determine the ultimate issue by allowing expert testimony.").

122862.1

a cause of action against an attorney.  See Doe v. Nutter, McClennen & Fish, 41 Mass. App. Ct. 137, 141, 668 N.E.2d 1329, 1333 (1996)(assuming that defendant attorney's conduct violated a rule, "the violation would not give rise to a cause of action"); Fishman v. Brooks, 396 Mass. 643, 649, 487 N.E.2d 1377 (1986)(The disciplinary rules provide standards of professional conduct of attorneys and do not in and of themselves create independent causes of action).  Therefore, there is a high likelihood that the jury will be mislead into thinking that a violation of a professional rule is a breach of the applicable standard of care, and the testimony should not be allowed.

B.  **The Expert is Not Qualified to Opine on the Standard of Care of the Average Qualified Elder Law Attorney.**

Attorney Rosenfeld is not qualified to opine on the standard of care of the average qualified elder law attorney. [See Attorney Rosenfeld's resume from his lawfirm's website, attached as Exhibit A].   He does not have any knowledge of or experience in the elder law field, and therefore his testimony is not permissible pursuant to Fed. R. Evid. 702.  Rule 702 allows an expert witness to testify "if (1) the testimony is based upon sufficient facts or. data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."   Fed. R. Evid. 702.  "[T]he trial court must first perform a gatekeeping function to determine whether the expert is qualified and whether the expert's testimony is sufficiently reliable and 'relevant to the task at hand'." In re Pharm. Indus. Average Wholesale Price Litig., 491 F. Supp. 2d 20, 85 (D. Mass. 2007), *quoting* Daubert v. Merrell Dow Pharms., 509 U.S. 579, 597, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). The gatekeeping determination must be made for all proffered expert testimony that reflects "specialized knowledge," whether "scientific" or not. See Kumho Tire Co. v. Carmichael,

6

122862.1

526 U.S. 137, 147-48, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) (citing Fed. R. Evid. 702). "The critical inquiry is whether the expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.' In re Pharm. Indus. Average Wholesale Price Litig., 491 F. Supp. 2d 20, 85 (D. Mass. 2007), *quoting* Kumho, 526 U.S. at 152.  In this case, the relevant field is elder law, in which Attorney Rosenfeld has no experience, let alone expertise.

Rosenfeld is Of Counsel at the law firm of Kirkpatrick & Lockhart Preston Gates Ellis LLP, where his practice includes civil and criminal litigation, representing lawyers and law firms on professional responsibility matters, including acting as an expert witness in legal malpractice cases. Prior to joining Kirkpatrick & Lockhart, he was Chief Bar Counsel of the Board of Bar Oversees.  He has teaching experience in Professional Responsibility.  Attorney Rosenfeld has never practiced in the elder law field and has likely never dealt with a guardianship petition or health care proxy issues, and therefore is not qualified to testify on the applicable standard of care.

C.  **The Expert's Opinion is Insufficient to Satisfy the Plaintiff's Burden of Proof and Should be Excluded and the Claims Against Defendant Kelly Should be Dismissed.**

While violation of the rules can be some evidence of negligence, this alone does not fulfill the plaintiff's burden of proof against a defendant attorney, and therefore, Attorney Rosenfeld should be precluded from testifying at the trial of this matter.  See Fishman, 396 Mass. at 646; See Nutter, McClennen & Fish, 668 N.E.2d at 1333 (assuming that defendant attorney's conduct violated a rule, "the violation would not give rise to a cause of action");  See also McElroy v. Robinson & Cole, LLP, 2001 Mass.

122862.1

Super. LEXIS 455 (October 25, 2001). A Massachusetts Court has already found Attorney Rosenfeld's opinion that a defendant attorney violated the professional rules insufficient in a legal malpractice action. In McElroy, the same expert at issue in this case, Attorney Rosenfeld, offered a similar expert opinion that the defendants' conduct was in violation of the Massachusetts Rules of Professional Responsibility. The court noted that Massachusetts law bars such opinion testimony, but held that even if such testimony were admissible to prove the asserted violation, "it would not suffice to meet the plaintiff's burden of proof." McElroy, 2001 Mass. Super. LEXIS 455, *27.[3] The Court stated: "Having offered no evidence to show the applicable standard of care under the circumstances, any breach of that standard, or any injury resulting from any such breach, the plaintiff has failed to demonstrate any reasonable expectation that he would be able to meet his burden of proof at trial on the elements of the claim of legal malpractice." Id. at *28. The Court did not rule on defendants' motion to strike Attorney Rosenfeld's opinion, because it found the evidence was insufficient to meet the plaintiff's burden of proof and that defendants were entitled to judgment as a matter of law. Id. at *42.

As in McElroy, Attorney Rosenfeld's opinion is insufficient to meet the plaintiff's burden. The plaintiff has the burden of introducing expert testimony that Defendant Kelly did not exercise the degree of learning and skill ordinarily possessed by attorneys in similar circumstances. If the plaintiff has failed to present credible expert testimony

---

[3] While the Court applied Connecticut law, it cited both Connecticut and Massachusetts law for the holding that "…a plaintiff in a legal malpractice action must establish the standard of professional skill or care through expert testimony…", and "…evidence of a violation of the Rules of Professional Conduct does not meet this burden...". McElroy, 2001 Mass. Super. LEXIS at *27-28, citing Vanacore v. Kennedy, 86 F. Supp. 2d 42, 48 (D. Conn. 1998); Standish v. Sotavento Corp., 58 Conn. App. 789, 796, 755 A.2d 910 (2000); Fishman v. Brooks, 396 Mass. 643, 646, 487 N.E.2d 1377 (1986).

8

122862.1

that the defendant attorney breached the applicable standard of care, then the plaintiff cannot prove her case.  See Brown v. Gerstein, 17 Mass. App. Ct. 558, 566 (1984).  Assuming for argument's sake that it is admissible, as a matter of law, plaintiffs will be unable to meet their burden of proof as Attorney Rosenfeld's opinion fails to address whether defendant Kelly breached the applicable standard of care.  Therefore, whether or not this Court allows Attorney Rosenfeld's testimony, the claims against Defendant Kelly must be dismissed as a matter of law.

While Plaintiff has asserted various counts against Defendant Kelly, including negligence (Count III), abuse of process (Count XIV), false imprisonment (Count IX), intentional infliction of emotional distress (Count X), negligent infliction of emotional distress (Count XI), breach of contract (Count XII), breach of fiduciary duty (Count XIII), and violation of M.G.L. c. 93A (Count XVI), all of those claims are based upon the same factual allegations and are dependent upon whether or not what Attorney Kelly did concerning his client, Helen Runge, complied with the applicable standard of care.  Therefore, all plaintiffs' claims against Defendant Kelly must be dismissed.

In particular, the negligence (Count III), breach of fiduciary duty (Count XIII) and breach of contract counts (Count XII) are all essentially a claim for legal malpractice, and should be dismissed.  See Fall River Savings Bank v. Callahan, 18 Mass. App. Ct. 776, 81-82, 463 N.E.2d 555 (1984); Callahan v. Foley, 2007 Mass. Super. LEXIS 432 (Sept. 26, 2007)(dismissing the plaintiff's negligence, breach of fiduciary duty and breach of contract counts for lack of a legal malpractice expert because the facts giving rise to these claims were the same).  Similarly, because the M.G.L. c. 93A claims is dependent on the attorney-client relationship, it also must be dismissed.

9

Likewise, the facts upon which these malpractice claims are based in this matter, are the same facts upon which plaintiff bases the remaining claims of abuse of process, false imprisonment, negligent and intentional infliction of emotional distress and violation of M.G.L. c. 93A. Because plaintiff cannot establish that Defendant Kelly was negligent, she will be unable to satisfy her burden of proof on the negligent infliction of emotional distress claim. If Defendant Kelly did not breach the standard of case, then he did not negligently inflict emotional distress. Here, the Plaintiff cannot prove the standard of care was breached, because the expert testimony is defective and should be excluded. Therefore, Plaintiff cannot prove negligent infliction of emotional distress. Likewise, without expert testimony to establish that Defendant Kelly's conduct was below the standard of care to the extent that it was extreme and outrageous and beyond all possible bounds of decency and was utterly intolerable in a civilized community, plaintiff will be unable to establish her burden on the intentional infliction of emotional distress count. See Caputo v. Boston Edison Co., 924 F.2d 11 (1st Cir. 1991).

Plaintiff's abuse of process and false imprisonment counts are based on the factual allegations that Defendant Kelly kept the Plaintiff at Sunbridge and petitioned the court for guardianship of the plaintiff. Expert testimony is required to establish whether Defendant Kelly's actions in this regard was not what an average qualified elder care attorney would have done under the circumstances of this case, and therefore the counts should be dismissed for lack of expert testimony. As to the abuse of process claim, Plaintiff claims that Defendant's filing of the guardianship petition was done with the improper purpose of gaining control of her assets so that he could pay himself fees. The Plaintiff would need expert testimony to establish that the fees paid to Defendant Kelly

under the Guardianship were unreasonable or otherwise inappropriate. No such expert testimony has been offered. As to the False Imprisonment claim, based on Plaintiff's bare allegation that she was "unlawfully confined" it is difficult to determine what the Plaintiff alleges was confinement and where she was confined, but presumably Plaintiff bases that count on Defendant Kelly's actions while she was a resident in the various facilities and he acted as her attorney. In any event, Plaintiff would need an expert to establish that Defendant Kelly's actions under the circumstances were outside the standard of care, and thus lead to an *unlawful* confinement of the Plaintiff. Therefore, all counts against Defendant Kelly should be dismissed based on the lack of expert testimony.

## CONCLUSION

WHEREFORE, Defendant respectfully requests that this Honorable Court preclude Arnold Rosenfeld from testifying at trial of this matter and dismiss all claims against Defendant Kelly.

Respectfully submitted,

The Defendant, Walter J. Kelly,

By his attorneys,

*s/ Michele Carlucci*
George C. Rockas, BBO #544009
Michele Carlucci, BBO #655211
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER  LLP
260 Franklin Street
Boston, MA 02110
(617) 422-5300

11

122862.1

**CERTIFICATE OF SERVICE**

I, Michele Carlucci, certify that on June 22, 2008 I have served a copy of the foregoing by electronic filing.

                                                                         */s/ Michele Carlucci*
                                                                         Michele Carlucci

**K&L|GATES**

Kirkpatrick & Lockhart Preston Gates Ellis LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950

T 617.261.3100    www.klgates.com

January 16, 2007

Arnold R. Rosenfeld
D 617.951.9125
F 617.261.3175
arnie.rosenfeld@klgates.com

Glenn R. Davis, Esq.
Latsha Davis Yohe & McKenna, P.C.
1700 Bent Creek Boulevard, Suite 140
Mechanicsburg, PA 17050

Re:  Runge v. Kelly, et al
     U.S. District Court C.A. No. 05-cv-10849-RGS

Dear Attorney Davis:

You have requested that I provide you with an opinion as to whether Walter J. Kelly, who was acting as the attorney for your client, Helen Runge, acted in compliance with the Massachusetts Rules of Professional Conduct in his representation of her and in particular, with regard to whether his petitioning the Probate Court to become the guardian of Helen Runge, his appointment as guardian, and the payment of his and his attorney's legal bills was appropriate ethical conduct.

Let me first describe some of my relevant background to offer this opinion. I am Of Counsel in the Boston Office of the international law firm of Kirkpatrick & Lockhart Preston Gates Ellis LLP (K&L Gates), where my practice includes, besides civil and criminal litigation, representing law and law firms on professional responsibility matters, including acting as an expert witness in legal malpractice cases where there are questions regarding a lawyer's responsibilities pursuant to the Rules of Professional Conduct. Prior to joining K & L Gates, I was the Chief Bar Counsel of the Board of Bar Overseers of the Supreme Judicial Court in Massachusetts for eight years. I also am a Visiting Professor of Law at Boston University Law School where I have taught Professional Responsibility for seventeen years and an Adjunct Professor of Law at Northeastern University Law School where I have taught Professional Responsibility for ten years. I am an appointed member of the American Bar Association Committee on Lawyer Discipline and the Massachusetts Supreme Judicial Court's Standing Advisory Committee on the Rules of Professional Conduct.

I have reviewed the Second Amended Complaint, in Runge v. Kelly, and the two days of Deposition of Walter J. Kelly, as well as other exhibits, in preparation of this opinion.

In my opinion, by seeking to have him self appointed the guardian of Helen Runge, considering the circumstances of this case, Kelly violated the Massachusetts Rules of

K&L|GATES

Glenn R. Davis, Esq.
January 16, 2007
Page 2

Professional Conduct. In his deposition, Kelly cited Mass. R. Prof. C. 1.14 as authority for his actions. In fact, if he had analyzed Rule 1.14 prior to filing a petition for appointing himself the guardian or temporary guardian of Helen Runge, in my opinion, he would have acted differently. Rule 1.14 offers guidance to lawyers whose clients are impaired to the point where they are unable to make adequately considered decisions regarding their own health and welfare. In such cases where the normal attorney-client relationship cannot be maintained, <u>the lawyer may consult family members, adult protective agencies, or other individuals or entities that have authority to protect the client, and, if it reasonably appears necessary, the lawyer may seek the appointment of a guardian ad litem, conservator, or a guardian, as the case may be</u>. In my opinion, seeking the appointment of oneself as the guardian ad litem, or guardian, without first having sought the views of the client's daughter, who specifically had not only been in communication with her mother, but also had expressed an interest in her mother's welfare, is not an appropriate option particularly where the lawyer has been charging the client fees for services which have not yet been paid and where he may have a conflict between the client's interests and his own interests. In such instances, the lawyer should be aware of Mass. R. Prof. C. 1.7(b), the rule governing conflicts of interest, which states: <u>(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests</u> (unless the client consents after consultation). Here, there clearly is a conflict with the lawyer's own interests since the lawyer was seeking the guardianship not just to assist the client in her health care decisions, but also for the purpose of paying his own fees and the fees of the lawyer he hired to assist him in seeking the guardianship.

Based upon my analysis as set out above, it is my opinion that Kelly either misunderstood, misread, or negligently failed to comply with his responsibilities pursuant to the Massachusetts Rules of Professional Conduct 1.14 in seeking to have himself appointed the guardian for Helen Runge without consulting with her daughter, Dorothy Stanley, and was also in violation of Mass. R. Prof. C. 1.7(b) in paying his legal fees and those of Attorney Schiavone as the guardian of Helen Runge.

Sincerely,

*[signature]*

Arnold R. Rosenfeld

ARR:

## Professionals

Printable Version

**Arnold R. Rosenfeld**  Of Counsel
Boston  +1.617.951.9125  Fax +1.617.261.3175
arnie.rosenfeld@klgates.com  Add to Outlook Contacts

Areas of Practice • Professional Background • Professional/Civic Activities • Court Admissions • Bar Admissions • Education • Additional Information



### Areas of Practice

Mr. Rosenfeld has had a distinguished legal career in both the public and private sectors. He presently focuses his practice on both civil and criminal trial and appellate work, and giving sound legal advice to a wide variety of clients, with particular emphasis on legal ethical and constitutional law issues. He is a nationally recognized expert and lecturer in the field of legal ethics, frequently advising lawyers and law firms in the interpretation of the professional responsibility duties of lawyers and representing lawyers in bar disciplinary matters. He represents corporate clients in civil litigation, individuals charged in criminal matters, and organizations in constitutional law based litigation. Mr. Rosenfeld also has wide-ranging experience in advising professionals in confidential matters.

**PRACTICES & INDUSTRIES**
APPELLATE, CONSTITUTIONAL
AND GOVERNMENTAL LITIGATION
COMMERCIAL LITIGATION
INTERNAL INVESTIGATIONS
PRIVACY, DATA PROTECTION AND
INFORMATION MANAGEMENT
PROFESSIONAL LIABILITY
WHITE COLLAR CRIME/CRIMINAL
DEFENSE
**NEWSSTAND**

### Professional Background

Mr. Rosenfeld has extensive experience as a criminal and civil trial and appellate lawyer in both the state and federal courts. He has represented and advised lawyers and law firms in a wide variety of professionally related matters, with particular emphasis on lawyer-client confidentiality, attorney-client privilege and work product immunity, as well as motions to disqualify, legal malpractice, bar discipline, conflicts of interest, fees, and joint or common defense agreements. He has been lead trial counsel in many high profile criminal cases and also has been lead trial and appellate counsel in several significant First, Fourth, Fifth, and Sixth Amendment cases. He has served as an expert witness on behalf of lawyers on professional responsibility issues, has represented physicians in professional matters, and both undergraduate and graduate students with university disciplinary problems, including plagiarism. He has written briefs for, and argued, more than 30 cases before state and federal appellate courts in both civil and criminal matters.

Prior to joining K&L Gates, Mr. Rosenfeld served for eight years as the chief bar counsel of the Massachusetts Board of Bar Overseers, managing the investigation and prosecution of lawyers for the Massachusetts Supreme Judicial Court and the United States District Court in Massachusetts. Previous to that, Mr. Rosenfeld was the chief counsel of the Committee for Public Counsel Services, the state public defender in Massachusetts. While in both positions, Mr. Rosenfeld, in addition to his supervisory responsibilities, distinguished himself as an active trial and appellate lawyer. He has been selected by his peers for inclusion in The Best Lawyers in America both for 2006 and 2007.

In addition to his practice at K&L Gates, Mr. Rosenfeld is a visiting professor of law at Boston University Law School, where he teaches professional responsibility as well as a seminar in attorney-client Privilege, and is an adjunct professor of law at Northeastern University Law School, where he teaches professional responsibility. Mr. Rosenfeld is a frequent lecturer at both Massachusetts and American Bar Association sponsored continuing legal education programs and writes a column, "Rosenfeld on Ethics," for the *Massachusetts Lawyers Weekly* . He is the author of numerous law review and other articles on the subject of professional ethics, attorney-client privilege and criminal defense.

### Professional/Civic Activities

Mr. Rosenfeld is a member of the American Law Institute, the American Bar Association Center on Professional Responsibility, the Association of

Professional Responsibility Lawyers, and the American, Massachusetts, and Boston Bar Associations. He is an appointed member of the American Bar Association Committee on Professional Discipline. He served as a member of the Standing Advisory Committee on the Rules of Professional Conduct of the Massachusetts Supreme Judicial Court for nine years. In 2006, he was appointed by the Massachusetts Supreme Judicial Court, as a member of the Board of the Committee for Public Counsel Services. He accepts assignments pursuant to the Criminal Justice Act list in the United States District Court, District of Massachusetts. He has served as an elected member of the Alumni Council at Boston College Law School and on the Board of Directors of Neurofibromatosis of New England.

### Awards and Honors

In 1997, Mr. Rosenfeld was selected as the Wasserstein Public Service Fellow in Residence at Harvard Law School. In 2001, he was the recipient of Boston College Law School's prestigious St. Thomas More Award. In 2005, he was selected as an Inaugural Fellow of the National Institute of Teaching Ethics and Professionalism.

### Court Admissions

- United States Supreme Court
- United States Court of Appeals, First Circuit
- United States Court of Appeals, Eleventh Circuit
- United States District Court, District of Massachusetts

### Bar Admissions

- Bar of Massachusetts

### Education

- J.D., Boston College Law School (1967)
- A.B., Bowdoin College (1962) (*cum laude*)

### Additional Information

**Military Service**
Honorably Discharged as a Captain, U.S. Army (Infantry), 1965