UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOROTHY STANLEY, as Executrix of the
ESTATE of HELEN RUNGE,

    *Plaintiff*,

v.

WALTER J. KELLEY; KERRY L.
BLOOMINGDALE, M.D.; and
SUNBRIDGE NURSING AND
REHABILITATION CENTER,

    *Defendants.*

Civil Action No. 05-10849-RGS

**DEFENDANT KELLY'S MOTION FOR RECONSIDERATION AND CLARIFICATION
ON THE COURT'S ORDER ON DEFENDANT'S MOTION IN LIMINE TO EXCLUDE
THE AFFIDAVIT OF HELEN RUNGE**

    The Court has indicated that it is inclined to admit into evidence the affidavit of Helen Runge dated July 27, 2003. Defendant seeks reconsideration and clarification of the Court's decision as to the admissibility of the Affidavit of Helen Runge.

    Judge Stearns indicated that he was inclined to admit the Affidavit of Helen Runge based upon Plaintiff's representation that the Defendant intended to offer an Affidavit of Walter Kelly submitted in the Probate Court Proceeding. However, prior to the commencement of trial, the Affidavit of Walter Kelly was removed from the list of exhibits to be offered at trial. [See Amended List of Exhibits to be Offered at Trial, filed on June 21, 2008, attached as Exhibit A]. Because Defendant does not seek to admit the affidavit of Walter Kelly, Helen Runge's affidavit should not be admissible.

    To the extent that Court is inclined to admit the affidavit of Helen Runge based upon the Plaintiff's representation that the Affidavit was filed in the Probate Court Proceeding, such is not

123047.1

the case. The Affidavit of Helen Runge was <u>not</u> filed in the Probate Court Proceeding. Defendant submits the accompanying Offer of Proof that the Affidavit was not filed in the Probate Court Proceeding, which includes an affidavit of a paralegal, Giana Festa, who reviewed all of the filings in the Probate Court Docket and found no Affidavit of Helen Runge, and a certified copy of the Docket listing all documents filed which does not include the Affidavit. Moreover, Gilbert Stanley's testimony makes clear that the affidavit was self serving and prepared in anticipation of litigation, but was not filed in either this matter or the underlying Probate Court proceeding. Gilbert Stanely states in pertinent part:

> Q. So you were thinking that this document, this affidavit, might prove useful in the Probate Court case?
>
> A. Would help –yeah, would help Attorney Hale in preparing for what he thought he may to do.

[Deposition of Gilbert Stanley, Page 156, lines 17-22, attached as Exhibit B]

> Q. So at the time this affidavit of July 27 was signed by Ms. Runge, she had already expressed to you her desire to Mr. Kelly?
>
> A. She actually wanted – yes. Yes.
>
> Q. You certainly thought that this affidavit might be somehow useful in that suit, assuming such a suit was filed; true?
>
> A. I wasn't thinking of a suit. Really what I wanted to do is to get documents what my wife knew and what she knew and what I knew, and there's – that's – you know, I was trying to get this stuff on paper while it was fresh in our minds.

[Exhibit B, Page 157, Lines 13-21.]

Given that the document was prepared for purposes of litigation, it even fails 807's residual exception because it lacks the guaranties of trustworthiness equivalent to those provided for in 803 or 804.

To the extent that the Court is inclined to admit the Affidavit of Helen Runge based upon Plaintiff's assertion that Defendants seeks to use out-of-court statements of Helen Runge as well,

there is no legal justification for this. The out-of-court statements of Helen Runge are not considered hearsay when they are offered by Defendant, because they are statements of a party opponent pursuant to Fed. R. Evid. 801(d)(2)(A). However, they are inadmissible hearsay when offered by the Plaintiff. "To be admissible under this rule, the party's statements must be offered against that party. A party cannot use this provision to offer his or her own statements into evidence." 5-801 Weinstein's Federal Evidence § 801.30. See also United States v. Rivera-Hernandez, 497 F.3d 71, 82-83 (1st Cir. 2007) (in money laundering prosecution, exculpatory statement made by defendant to his father, an alleged co-conspirator, was inadmissible under Rule 801(d)(2)(E), because it was not offered "against" defendant's position at trial); Farrington v. Bath Iron Works Corp., 2003 U.S. Dist. LEXIS 1938 (D. Me. Feb. 7, 2003)( "While hearsay admissions are admissible if offered against the maker of the statements in question, they are not admissible if offered by the maker."), citing Fed. R. Evid. 801(d)(2); 30B Michael H. Graham, Federal Practice & Procedure § 7015, at 172 n.2 (2000)("Obviously, a prior statement of a party offered by that party is not an admission of a party-opponent."). Therefore, statements of the Plaintiff offered by the Plaintiff do not fall under Rule 801(d)(2)(A) and thus are inadmissible hearsay. There is no other exception to the exclusionary hearsay rule by which the Affidavit of Helen Runge would be admissible.

  WHEREFORE, the Defendant seeks reconsideration and clarification of the Court's order regarding the admittance of the Affidavit of Helen Runge.

The Defendant,

Walter J. Kelly,

By his attorneys,

*s/ Michele Carlucci*
George C. Rockas, BBO #544009
Michele Carlucci, BBO #655211
WILSON ELSER, LLP
260 Franklin Street,
Boston, MA 02110

(617) 422-5300

**CERTIFICATE OF SERVICE**

I, Michele Carlucci, certify that on June 23, 2008, I have served a copy of the foregoing by hand and electronic filing.

*/s/ Michele Carlucci*
Michele Carlucci

123047.1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOROTHY STANLEY, AS EXECUTRIX OF :
THE ESTATE OF HELEN A. RUNGE, :
    Plaintiff :
 :
 :   No. 05-10849-RGS
v.  :   (Judge Stearns)
 :
WALTER J. KELLY, et al.,  :   CIVIL ACTION
    Defendants  :   JURY TRIAL DEMANDED

### AMENDED LIST OF EXHIBITS TO BE OFFERED AT TRIAL

A.   Letter of Helen Runge to "To Whom It May Concern," April 30, 2003

B.   Letter of Helen Runge to Sunbridge, May 12, 2003

C.   Notes of Walter Kelly, 3 pages

D.   Sunbridge Healthcare Health and Medical Condition, Informing Residents of, Policy, June 2002

E.   Sunbridge Healthcare Psychoactive Medications Policy, June 2002

F.   Sunbridge Healthcare Refusal of Treatment Policy, June 2002

G.   Deposition of Sandra M. Porazzo-Perry, March 28, 2007.

H.   Note of Helen Runge, January 17, 2003

I.   Letter of Helen Runge to Walter Kelly, March 12, 2003

J.   Letter of Helen Runge to Dorothy Stanley, March 2003

K.   Letter of Robert M. Palmer, M.D., to Dorothy Stanley, May 12, 2003

L.   Note of B. Rhett Myers, M.D., May 30, 2003

124342
122451.2

M.  Letter of Robert M. Palmer, M.D., to Dorothy Stanley, July 25, 2003

N.  Letter of Phillip R. Feagan to Michael J. McCann and Thomas Schiavoni, June 2, 2003

O.  Packet: Invoices of Walter J. Kelly dated March 10, 2000, May 12, 2000, September 8, 2000, November 3, 2000, January 9, 2001, March 9, 2001, September 7, 2001, November 20, 2001, January 11, 2002, April 19, 2002, June 4, 2002, August 20, 2002, February 4, 2003, April 13, 2003, June 3, 2003, August 8, 2003, October 3, 2003, December 9, 2003, February 6, 2004, April 16, 2004, July 6, 2004, September 10, 2004, November 16, 2004, January 11, 2005, March 29, 2005 and May 6, 2005; Walter J. Kelly check dated June 4, 2003 ($7,500); Pre-Bill of Walter J. Kelly dated September 25, 2003; MembersPlus check dated May 20, 2003 ($25,000); MembersPlus check dated August 7, 2003 ($6,500); Invoice of McGee & Schiavoni dated May 16, 2003; Walter J. Kelly check dated May 23, 2003 ($4,227.50); Invoice of McGee & Schiavoni dated August 7, 2003; Walter J. Kelly check dated August 7, 2003 ($6,150); Sunbridge Charges dated May 2, 2003; Walter J. Kelly check dated May 23, 2003 ($9,475.31); Walter J. Kelly check dated June 4, 2003 ($702.10); Statement of Account dated May 15, 2003; Invoice of Katherine F. Eddy dated May 2, 2003; Walter J. Kelly check dated May 23, 2003 ($540); Letter of Walter J. Kelly to Michael McCann dated June 4, 2003; Walter J. Kelly check dated June 4, 2003 ($1,900).

P.  Deposition of Farrah Seidler, May 8, 2007

Q.  Affidavit of Helen A. Runge, July 27, 2003

R.  Transcription of Videotaped Statement and Videotaped Statement of Helen A. Runge, January 16, 2004

S.  Helen Runge's Answer to Kelly's Interrogatories, October 12, 2006, and Answer to Bloomingdale's Interrogatories, October 12, 2006

T.  Affidavit of Walter J. Kelly in Support of Motion for Award of Costs in guardianship proceeding

U.  July 13, 2006, Chapter 93A demand letter

V.  August 10, 2006, response to Chapter 93A demand letter

W.  Helen Runge's medical records from Sunbridge (00001 – 00485)

124342
122451.2

X.    Photographs of Helen Runge

Y.    Massachusetts Resident Admission Agreement

Z.    2003 Invoices of Lawrence Hale regarding defense of guardianship proceeding

AA.    October 15, 2004, January 11, 2005 and September 20, 2005 Invoices of Blake J. Godbout & Associates

BB.    March 15, 2004 Invoice of Latsha, Davis, Yohe & McKenna, P.C.

CC.    Deposition of Walter Kelly, December 1 and 14, 2006

DD.    1992 Last Will and Testament of Helen Runge

EE.    1994 Codicil to Last Will and Testament

FF.    1998 Last Will and Testament of Helen Runge

GG.    3/5/98 Durable Power of Attorney of Debra Gaughan

HH.    02/29/00 Discharge Summary – Jewish Memorial

II.    Geraghty Associates, Inc. (Landlord) documents

JJ.    7/21/00 MassPro Summary of Concerns

KK.    7/28/00 MassPro Letter to Runge

LL.    8/1/00 Letter from Runge to Kelly

MM.    10/04/00 Letter from Runge to Kelly

NN.    10/4/00 Runge's Appt of Kelly as Rep. for MassPRO correspondence

OO.    10/4/00 Letter from Runge to Kelly re MassPRO

PP.    11/1/00 Letter from MassPRO to Kelly, November 1, 2000

QQ.    11/1/00 Letter from MassPRO to Helen Runge

124342
122451.2

| | |
|---|---|
| RR. | 7/21/01 Runge Letter to MassPro |
| SS. | 10/25/01 Marian Manor Resident Care Plan |
| TT. | 11/08/01 Letter from Runge appointing Kelly as Durable Power of Attorney |
| UU. | 11/27/01 Letter from Kelly to Runge |
| VV. | 12/07/01 Durable Power of Attorney dated 12/7/01 |
| WW. | 12/7/01 Declaration Regarding Medical Procedures |
| XX. | 04/26/02 Nova Psychiatric Services Notes |
| YY. | 11/15/02 to 01/07/03 BayView Nurse's Notes |
| ZZ. | 01/09/03 Application Pursuant to M.G.L. c. 123 s. 12(a) for Involuntary Hospitalization |
| AAA. | 01/11/03 Carney Hospital Emergency Dept. Physician Record |
| BBB. | 01/12/03 Application for and Authorization of Temporary Involuntary Hospitalization |
| CCC. | 1/12/03-1/30/03 Notes of Walter Kelly (Kelly Ex. 25) |
| DDD. | 01/14/03 Application for Care and Treatment on a Conditional Voluntary Basis |
| EEE. | 01/15/03 Carney Hospital: Medication Administration Record |
| FFF. | 01/22/03 SB-Randolph Dental Records |
| GGG. | 01/22/03 Carney Hospital: Discharge Instructions and Referral Form |
| HHH. | 01/22/03 Carney Hospital: Psychiatric Discharge Summary |
| III. | 01/23/03 to 05/13/03 Social Progress notes |
| JJJ. | 01/23/03 to 04/02/03 Vital Signs and Weight Chart |
| KKK. | 2/4/03 – 10/3/03 Kelly Invoices |

124342
122451.2

| | |
|---|---|
| LLL. | 02/05/03 Authorization for Services: Meridian Health Associates |
| MMM. | 02/10/03 New England Geriatrics Registration Form |
| NNN. | 02/10/03 New England Geriatrics Assessment |
| OOO. | 02/14/03 Antipsychotic Medication Informed Consent form |
| PPP. | 02/25/03 Meridian Health Associates – Optometry consult |
| QQQ. | 02/27/03 Antipsychotic Medication Informed Consent form |
| RRR. | 03/04/03 New England Geriatrics Diagnostic/Treatment Evaluation |
| SSS. | 3/12/03 Letter from Helen Runge to Walter Kelly |
| TTT. | 03/13/03 New England Geriatrics Treatment Plan |
| UUU. | 03/13/03 New England Geriatrics Diagnostic/Treatment Evaluation |
| VVV. | 03/29/03 Meridian Health Associates – Podiatry notes |
| WWW. | 03/31/03 New England Geriatrics Diagnostic/Treatment Evaluation |
| XXX. | 03/31/03 Meridian Health Associates – Dental care notes |
| YYY. | 3/31/0? SB Antipsychotic Medication Informed Consent |
| ZZZ. | 04/01/03 New England Geriatrics Diagnostic/Treatment Evaluation |
| AAAA. | 04/21/03 New England Geriatrics Diagnostic/Treatment Evaluation |
| BBBB. | 04/22/03 New England Geriatrics Progress Notes |
| CCCC. | 04/29/03 New England Geriatrics Diagnostic/Treatment Evaluation |
| DDDD. | 4/29/03 Fax from Farrah Seidler to Walter Kelly, with letter from Runge revoking Kelly; Durable Power of Attorney for Healthcare 4/29/03; Durable Power of Attorney for Financial Management 4/29/03; Notices of Revocation of Durable Power of Attorney, Healthcare and Document Directing Healthcare all dated 4/29/03 |

EEEE.   05/02/03 Temporary Decree of Guardianship

FFFF.   05/02/03 Probate Court's Findings of Fact

GGGG.   05/02/03 Bond of Temporary Guardian

HHHH.   5/5/03 Durable Power of Attorney for Financial Management

IIII.   5/6/03 Letter from Schiavoni to Helen Runge

JJJJ.   05/21/03 Department of Public Health Report

KKKK.   5/23/03 Check from Kelly Client's Fund to Meridian Health Associates

LLLL.   8/1/03 Letter from Schiavoni to Hale

MMMM.   8/29/03 Inventory

NNNN.   10/08/03 Psychosocial Assessment – St Luke's Hospital

OOOO.   10/09/03 Psychiatric Assessment – St. Luke's Hospital

PPPP.   11/07/03 Discharge Summary – St. Luke's Hospital


DATED: 6/20/08

                Respectfully submitted by,

                The Plaintiff,
                DOROTHY STANLEY, EXECUTRIX OF THE
                ESTATE OF HELEN RUNGE,
                By her attorneys,


                By /s/ Glenn R. Davis
                Glenn R. Davis
                1700 Bent Creek Boulevard, Suite 140
                Mechanicsburg, PA 17050
                (717) 620-2424
                gdavis@ldylaw.com
                *Pro Hac Vice*

124342
122451.2

Blake J. Godbout, BBO #196380
BLAKE J. GODBOUT & ASSOCIATES
33 Broad Street, 11th Floor
Boston, MA 02109
(617) 523-6677


The Defendant,
WALTER J. KELLY,
    By his attorneys,


    /s/ Michele Carlucci
George C. Rockas, BBO #544009
Michele Carlucci, BBO #655211
WILSON ELSER MOSKOWITZ EDELMAN &
DICKER LLP
260 Franklin Street
Boston, MA 02110
(617) 422-5300

124342
122451.2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
NO.: 05-10849-RGS

HELEN A. RUNGE,
       Plaintiff,
v.

WALTER J. KELLY, et al.,
       Defendants.

DEPOSITION OF

GILBERT STANLEY - DAY 1

COPY

On Tuesday, November 14, 2006, commencing at 4:20 p.m., the deposition of Gilbert Stanley was taken on behalf of the Defendants at Isothermal Community College, Room 118, 1255 West Mills Street, Columbus, North Carolina, and was attended by Counsel as follows:

APPEARANCES:

    GLENN R. DAVIS, ESQ.
    Latsha, Davis, Yohe & McKenna, P.C.
    1700 Bent Creek Boulevard, Suite 140
    Mechanicsburg, Pennsylvania  17050
    on behalf of the Plaintiff

    GEORGE C. ROCKAS, ESQ.
    Wilson, Elser, Moskowitz, Edelman & Dicker, L.L.P.
    155 Federal Street
    Boston, Massachusetts  02110
    on behalf of Walter Kelly

    JAMES S. HAMROCK, JR., ESQ.
    Hamrock & Tocci
    101 Main Street, 18th Floor
    Cambridge, Massachusetts  02142
    on behalf of Dr. Bloomingdale

    MICHAEL WILLIAMS, ESQ.
    Lawson & Weitzen, L.L.P.
    88 Black Falcon Avenue
    Boston, Massachusetts  02210
    on behalf of Sunbridge Nursing Home

Attending:  Dorothy Stanley

REPORTED BY:  Mai-Beth Ketch, CVR
              ASHEVILLE REPORTING SERVICE

155

| | | |
|---|---|---|
| 1 | | him to represent Helen also. |
| 2 | Q | But the fees that were being paid to him at |
| 3 | | the time he was representing just you and your |
| 4 | | wife were coming from Helen's accounts? |
| 5 | A | No. Initially, they were coming from ours, |
| 6 | | but the fees were nothing because -- I mean |
| 7 | | almost nothing, because he wasn't doing |
| 8 | | anything to begin with until he had to get |
| 9 | | involved in trying to -- or getting ready, I |
| 10 | | should say, to go into the hearing to dispute |
| 11 | | the extension and to get her material back or |
| 12 | | her possessions back. He did very little for |
| 13 | | us. In fact, he didn't even charge us to |
| 14 | | begin with for his initial advice. |
| 15 | Q | At the time this affidavit was done, it's fair |
| 16 | | to say you were thinking that this affidavit |
| 17 | | might be used in some type of legal proceeding |
| 18 | | down the road; is that true? |
| 19 | A | Yeah, that's true. |
| 20 | Q | You weren't sure who the legal proceeding |
| 21 | | would be directed at, but you were reasonably |
| 22 | | confident that one of the people it would be |
| 23 | | directed at would be Mr. Kelly; is that true? |
| 24 | A | I'm not sure I even thought about it very much |
| 25 | | at that point in time until August, after |

| | | |
|---|---|---|
| 1 | | August.  I wasn't really -- we really weren't |
| 2 | | worrying about it. |
| 3 | Q | Well, weren't you preparing to go up to |
| 4 | | Massachusetts the end of July to contest this |
| 5 | | extension of the temporary order? |
| 6 | A | Sure. |
| 7 | Q | So clearly, at the time this was signed by Ms. |
| 8 | | Runge on July 27, 2003, you were thinking that |
| 9 | | this document might be of assistance in that |
| 10 | | ongoing Probate Court matter; isn't that |
| 11 | | correct? |
| 12 | A | I'm sorry.  I may have misunderstood your |
| 13 | | question.  Yes.  As far as the Probate was |
| 14 | | concerned, yes, and I look at that as -- and |
| 15 | | it is two separate cases, not the federal |
| 16 | | case. |
| 17 | Q | So you were thinking that this document, this |
| 18 | | affidavit, might prove useful in the Probate |
| 19 | | Court case? |
| 20 | A | Would help -- yeah, would help Attorney Hale |
| 21 | | in preparing for what we thought he may have |
| 22 | | to do. |
| 23 | Q | When did you first talk to Ms. Runge or when |
| 24 | | did she talk to you about an actual lawsuit |
| 25 | | against Mr. Kelly, Dr. Bloomingdale, and |

157

1           Sunbridge?
2     A     She talked to us on the way down, on the trip
3           down. She was hopping mad, as far as that was
4           concerned. She wanted me to get somebody
5           sued. Mr. Kelly was the main culprit, but she
6           wanted somebody sued, and I said, "Just a
7           second. You know, don't do anything yet, and
8           we'll wait and see."
9     Q     So at the time this affidavit of July 27 was
10          signed by Ms. Runge, she had already expressed
11          to you her desire to sue Mr. Kelly?
12    A     She actually wanted -- yes. Yes.
13    Q     You certainly thought that this affidavit
14          might be somehow useful in that suit, assuming
15          such a suit was filed; true?
16    A     I wasn't thinking of a suit. Really what I
17          wanted to do is to get documented what my wife
18          knew and what she knew and what I knew, and
19          there's -- that's -- you know, I was trying to
20          get this stuff on paper while it was fresh in
21          our minds.
22    Q     The telephone conference you had with Mr.
23          Kelly on April 25, you mentioned some things
24          that you and he said. I believe you mentioned
25          some things he said to your wife. Were you on