UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOROTHY STANLEY, as Executrix of the
ESTATE of HELEN RUNGE,

    *Plaintiff,*

v.

WALTER J. KELLY; KERRY L.
BLOOMINGDALE, M.D.; and
SUNBRIDGE NURSING AND
REHABILITATION CENTER,

    *Defendants.*

Civil Action No. 05-10849-RGS

### DEFENDANT KELLY'S MOTION TO PRECLUDE THE OPINION AND TESTIMONY OF DR. DUPEE, PLAINTIFF'S MEDICAL EXPERT

NOW COMES the Defendant Walter Kelly and opposes Plaintiff's Motion to strike the opinion and testimony of Roger Dupee, MD.

Dr. Dupee was disclosed as an expert as to Plaintiff's claims against Dr. Bloomingdale, a previous Defendant in this matter, who was dismissed by the Plaintiff without any settlement payment by Dr. Bloomingdale. [See Dr. Dupee's Expert Disclosure, attached as Exhibit A]. Dr. Dupee's proposed testimony will address the mental status of Helen Runge and specifically Dr. Bloomingdale's medical certificate, as well as prior diagnoses of Helen Runge and the appropriateness of prescriptions which were the basis of Dr. Bloomingdale's opinion.

Plaintiff has indicated that she still intends to call Dr. Dupee. However, this matter is no longer a medical malpractice case, and therefore the testimony is not relevant, will be a waste of time and will only serve to confuse the jurors. This case is a legal malpractice case. Whether or not Dr. Bloomingdale's diagnosis of the plaintiff was correct, and whether or not any of the other doctors who treated Helen Runge were wrong, is not relevant to claims against Defendant Kelly.

123302.1

An issue in this case is whether Defendant Kelly, as an attorney, justifiably relied on Dr. Bloomingdale's medical opinion as well as the opinions of the other nurses and doctors who treated Helen Runge, regardless of whether they were correct. Stated differently, the issue is whether Attorney Kelly complied with the standard of care in relying on the medical certificate and any other opinions. Dr. Dupee cannot testify as to whether that reliance complied with the standard of care of the average qualified elder law attorney because he is not an attorney. Therefore, Dr. Dupee's proposed testimony is not relevant and will only confuse the issues before the jury.

WHEREFORE, this Court should preclude the expert testimony of Dr. Dupee.

Respectfully submitted,
The Defendant, Walter J. Kelly,
By his attorneys,


*s/ Michele Carlucci*
George C. Rockas, BBO #544009
Michele Carlucci, BBO #655211
WILSON ELSER LLP
260 Franklin Street
Boston, MA 02110
(617) 422-5300


**CERTIFICATE OF SERVICE**

I, Michele Carlucci, certify that on June 25, 2008, I have served a copy of the foregoing by electronic filing.

*/s/ Michele Carlucci*
Michele Carlucci

123302.1



# LATSHA DAVIS YOHE
# & McKENNA, P.C.

**ATTORNEYS AT LAW**

PLEASE REPLY TO: Mechanicsburg
WRITER'S E-MAIL: adean@ldylaw.com



June 21, 2007

Michael Williams, Esq.
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 145
Boston, MA  02210-1736

James S. Hamrock, Jr., Esq.
Hamrock & Tocci
101 Main Street, 18th Floor
Cambridge, MA  02142

Michele Carlucci, Esq.
Wilson Elser Moskowitz Edelman & Dicker LLP
155 Federal Street
Boston, MA  02110

    Re: Helen A. Runge v. Walter J. Kelly, et al.
         No. 05-10849-RGS
         Our File No. 812-03

Dear Counsel,

    Please find enclosed Plaintiff's expert report of Dr. Roger Dupee. We have been awaiting Dr. Dupee's Curriculum Vitae before releasing the report. Also enclosed is a Curriculum Vitae submitted as a supplement to Plaintiff's expert report of Linda Fagan previously submitted to counsel. Plaintiff reserves the right to supplement these reports in accordance with the most recent Court Order granting Plaintiff an extension of time to submit expert reports as to Defendant Sunbridge.

                              Sincerely,

                              Andrea E. Dean

Enclosures

cc:    Dorothy Stanley (w/enc.)
        Glenn R. Davis, Esq.



**The MedWest Center For Memory Disorders**
65 Walnut Street
Suite 440
Wellesley Hills, Massachusetts 02451
(781) 235-9089



**Tufts-New England Medical Center**



The principal teaching hospital for
Tufts University School of Medicine

Physicians Serving Physicians

May 16, 2007

Glenn Davis, Esq
Latsha Davis Yohe and McKenna, PC
1700 Bent Creek Boulevard, Suite 140
Mechanicsburg, PA 17050

**Re: Helen Runge V. Kerry Bloomingdale, M.D. et al.**

Dear Mr. Davis:

As you have requested, I am offering an opinion on the decisions surrounding the cognitive status, insight, judgement, and decision-making capacity on the part of Mrs. Helen Runge during the period between 01/22/02 and 04/30/07.

In preparation for this report, and in order to offer a fair and balanced opinion, I have reviewed the following medical records:

1.  SunBridge Health Care 01/22/03 – 04/30/03

2.  Carney Hospital 01/09/03, Carney Hospital 01/11/03 - 01/22/03

3.  Dr. Bloomingdale's notes 03/04/03, 04/01/03, 04/29/03

4.  Investigation report of Department of Public Health for Massachusetts 05/16/03, 05/21/03.

I feel qualified to comment on the care provided to Mrs. Runge based upon 32 years of experience as an internist and geriatrician, providing direct care to patients in an outpatient, hospital, and nursing home setting.

Additionally, I have had several years of experience as a nursing home medical director.

I am currently Chief of the Geriatrics Service at Tufts-New England Medical Center Hospital, where my responsibilities as an academician and associate clinical professor at Tufts University School of Medicine include teaching the principles of geriatric medicine to medical students and residents both in the hospital and outpatient settings.

Re: Helen Runge V. Kerry Bloomingdale, M.D. et al.
May 16, 2007
Page 2

Additionally, I serve as Director of the MedWest Center for Memory Disorders, and have significant experience in diagnosing and treating patients with dementia, delirium, associated behavioral disorders, falls and fall prevention, and stroke, as well as extensive experience in determining decision-making capacity.

I served as editor of the first version of the slide-teaching program in geriatrics published by the American Geriatrics Society, and then stayed on as special advisor. As a result, I feel qualified to comment on the diagnosis, treatment, and prevention of pressure ulcers.

I am thus qualified by experience, education, and training to offer this opinion, and have demonstrated competence with the standards of care for nursing facilities and treating physicians as currently relates to issues of care and treatment of the elderly and disabled.

---

On 01/09/03, Mrs. Runge was transferred from Bayview Assistance Home for the elderly to Carney Hospital for "psychiatric evaluation" under section 12.

It is documented that she had been complaining of worsening depression for about a month, even worse within the past week, and that she did not like where she was living.

It is further documented that she had had difficulty sleeping.

She denied hearing voices.

In addition, it is documented that she felt that the staff was stealing from her.

Prior medical history revealed that she was hypertensive, treated with lisinopril and Norvasc, that she was on iron supplements, and that she was being treated with Paxil, presumably for depression.

In the emergency room at Carney on that day, her speech is documented normal. She was alert and oriented x3.

Her neurological examination was nonfocal.

Re: Helen Runge V. Kerry Bloomingdale, M.D. et al.
May 16, 2007
Page 3

It is further documented that her mental status examination showed no abnormalities in attitude, mood, affects, speech, language, thought process, thought content, perception, cognition, insight, or judgment, and that there was no evidence for neurovegetative signs.

It is documented that her memory and concentration were "fair" and that she was sad and somewhat angry.

The emergency room physician documents the information given to him by Bayview; Mrs. Runge had "paranoid ideation regarding her belongings at the current placement" and that her "insight and judgment were, by history, "fair" and that her impulse control was, by history "poor."

After a thorough examination in the emergency room, it is documented that Mrs. Runge's psychiatric and physical health was "normal", with no documentation of either agitation or paranoia.

It was agreed that Mrs. Runge had mild depression, but did not require hospitalization.

It is further documented that Mrs. Runge was; "reasonable and has warranted concerns about staff at residential housing."

It is further documented that her lawyer (Mr. Kelly) and power of attorney would be contacted to investigate her living situation and consider "changing housing." Dr. Gomes, her primary care physician, was made aware.

It is documented that Mrs. Runge had become increasingly agitated and angry and that she had for several nights made list for alternate nursing homes. It is documented that when she left her room, locked, that she came back and found that the paper that she had filled out regarding alternate nursing homes was not there. She became "angry, yelled, and screamed."

I am very surprised that as a result of this she was sent under a section 12 by Stanley Alexander, Ph.D. from Novo Physiatric Services, as he had not examined her.

Mrs. Runge had been assigned to live with a patient with advanced Alzheimer disease at Maryanne Manor and was having a difficult time with this roommate. She had requested transference.

It is further documented that Mrs. Runge was paying $ 3000 monthly and was "not receiving the services that she needs."

Finally, it is documented that Mrs. Runge did not meet the criterion for HLOC and in fact was not psychotic. Dr. Gomes further agreed that Mrs. Runge was not psychotic and had not been thinking of prescribing antipsychotic medication. He further agreed that arrangements for transference should be undertaken.

Re: Helen Runge V. Kerry Bloomingdale, M.D. et al.
May 16, 2007
Page 4

Mrs. Runge returned to the Carney Emergency Room on 01/12/03. It is documented that she was complaining about "stealing her notes at the place where she lives."

It is further documented that the nursing home reported that Mrs. Runge was "paranoid and unhappy about the place where she is living in."

Mrs. Runge had retired after working 30 years in the computer area of Boston Edison. She had lived alone for 45 to 50 years (she was divorced) and had one daughter, Dorothy Stanley, age 66 years old at this time.

Many of her friends had left the area or had died. Her best friend had moved to Florida, thus she moved into Marianne Manor, an assisted living facility in Dorchester, and had been there for several years before her admission to Carney on 01/09/03.

Mrs. Runge also reported that her room had been ransacked. She admitted she was angry, but not depressed and she denied auditory or visual hallucinations.

Dorothy Stanley was contacted and reported that her mother had been paranoid most of her life, but was never hospitalized for this, although the paranoia had gotten worse since she moved into assisted living. Mrs. Stanley documents that her mother was always very private and secretive.

It is documented in the psychiatric notes at Carney that Mrs. Runge "most trusts Mr. Kelly, who is the patient's health care proxy and has the power of attorney."

The mental status examination documents normalcy in cognition. Mrs. Runge stated correctly the month, day, week, and date. She became increasingly uncooperative with further examination of cognition and walked out from the interview. It is therefore documented that she appeared to have no insight into her paranoia and that her judgment was impaired.

Mrs. Runge was admitted to Carney and started on a small dose of Zyprexa 2.5 mg at bedtime as a higher dose caused too much sedation.

At discharge, she was given an Axis I diagnosis of "rule out paranoid delusional disorder. An Axis II, rule out Alzheimer dementia. She was discharged to SunBridge Nursing Home on low dose Zyprexa.

Her thought process was felt to be generally coherent and organized, although the content preoccupied with "possible paranoid delusions regarding her belongings at her assisted living facility."

Re: Helen Runge V. Kerry Bloomingdale, M.D. et al.
May 16, 2007
Page 5

There is support for her preoccupation with this and I do not believe that this was paranoia, but reality.

On admission to SunBridge on 01/22/03, it is documented that Mrs. Runge suffered from episodes of "paranoid delusions, dementia, and Alzheimer."

There is absolutely no evidence that Mrs. Runge suffered from dementia and certainly did not have Alzheimer disease. Her mental status evaluation at Carney was well within normal limits. Therefore the diagnosis of dementia and Alzheimer is false charting. The Axis II discharge diagnosis at Carney was that of "rule out" Alzheimer disease, and clearly Alzheimer disease had neither been proven nor ruled out.

Informed consent was signed by Walter Kelly, her lawyer. Zyprexa 2.5 mg at night is documented as being given for "paranoia."

The first physician's progress note is dated 01/27/03. Diagnoses include hypertension, anemia, DJD and "STAT."

Again this is incorrect. There is no evidence that Mrs. Runge suffered from severe dementia of the Alzheimer type.

The physician note of 02/12/03 and 02/26/03 documents an impression of "anxiety" with no documentation of a diagnosis of paranoia or dementia. Likewise notes dated 03/03/03 and 03/05/03 document anxiety and then on 03/26/03, 04/10/03, and 04/23/03 the attending physician documents paranoia.

On 04/30/03, the attending physician documents that Mrs. Runge had refused psychiatric intervention. He further documents that Mrs. Runge had been seen by Dr. Bloomingdale and that "she is unable to make informed decisions secondary to paranoia."

The admission assessment carried out on 01/22/03 is documented by the nursing staff. Memory problem" is checked off", without any further information given. Cognitive skills for daily decision-making are documented as "moderately impaired" without any further evidence for this finding.

Mini-Mental Status examination was carried out on 02/10/03, although Mrs. Runge had difficultly with "season," and "hospital" she had no other evidence for difficulties with orientation, registration, attention, and recall, language, reputation, three stage command, reading, writing, or copying and a total score was 28 out of 30. This is basically a normal Mini-Mental Status examination.

Re: Helen Runge V. Kerry Bloomingdale, M.D. et al.
May 16, 2007
Page 6

Therefore this document clarifies Mrs. Runge's cognitive status. There is no evidence for aphasia, apraxia, or amnesia or any evidence whatsoever for dementia.

On 04/20/03, Mrs. Runge is documented as being upset because "someone took my nightgown." Based upon prior presentation, one would suppose that this was her "paranoia." In fact her nightgown was found in the laundry and brought back to Mrs. Runge who was "very happy, no further crying."

The MDS was completed on 01/31/03. Memory and recall ability are all reported as being normal and cognitive skills for daily decision making are reported as modified independent with some difficulty in new situations only. There is no evidence in this document that Mrs. Runge had any deficiency in decision-making capacity.

A RAP key summary for "dementia not Alzheimer" is unnecessary and inappropriate as there is no evidence that Mrs. Runge had Alzheimer. Furthermore, it is documented that she will be monitored for "resolving delirium" and there is no evidence that Mrs. Runge suffered at any time from delirium.

In summary, Mrs. Runge was inappropriately labeled as demented when there is no evidence to support that diagnosis.

In addition, although, Mrs. Runge had a long history for stable, mild paranoia, there is no evidence that she was psychotic to the point where she would have required the use of atypical antipsychotics.

Dr. Bloomingdale documents in a note of 03/04/03 that Mrs. Runge "had a diagnosis of Alzheimer's." This is laughable. There is no evidence that Mrs. Runge ever had any evidence of Alzheimer disease. Furthermore, he documents as an Axis I diagnosis of Alzheimer dementia with delusions. There is no evidence that Mrs. Runge suffered from delusions.

Dr. Bloomingdale documents in a note of 04/29/03 that Mrs. Runge became aggravated with the nursing home with "many paranoid ideas about their treatment." He documents that she was more paranoid, "probably in part because she is not taking her Zyprexa."

It is documented that Mrs. Runge felt too sedated on Zyprexa and did not want to take it.

Furthermore, I see no evidence that it was needed.

Dr. Bloomingdale documents that Mrs. Runge "lacks the ability to make sound decisions about her psychoactive medications and a variety of other personal issues."

Re: Helen Runge V. Kerry Bloomingdale, M.D. et al.
May 16, 2007
Page 7

There was no documentation, however, which questions were asked regarding "personal issues." It is clear that Mrs. Runge did not want to take Zyprexa because it made her feel too sedated.

On 04/29/03, a temporary medical certificate for guardianship is signed by Dr. Bloomingdale. Dr. Bloomingdale documents that Mrs. Runge "suffers from Alzheimer dementia with paranoid delusions."

As stated there is no evidence that Mrs. Runge had Alzheimer disease. This is an incorrect diagnosis.

Dr. Bloomingdale also documents that "because of her paranoia and probably also because of her cognitive limitations, she lacks the ability to make sound decisions about certain personal affairs including whether to take her psychoactive medications."

It is my opinion, within a reasonable degree of medical certainty, that Mrs. Runge was not only mislabeled as having Alzheimer dementia, that the very aggressive over treatment with an atypical antipsychotic, leading to sedation, led to her decision to have it discontinued.

I see no evidence that an adequate examination was carried out to determine her decision-making capacity. Based upon her normal cognitive status, I would argue that there was no justification for guardianship on 04/29/03.

I reserve the right to alter my opinion should further information be made available.

Yours very truly,

Richard M. Dupee, M.D., A.G.S.F., F.A.C.P.


RMD/sss

# CURRICULUM VITAE
## RICHARD M. DUPEE, MD, FACP, AGSF, FRMS
### March, 2007

## CURRENT ADMINISTRATIVE TITLES:

**Chief, Geriatrics Division:** Tufts-New England Medical Center, Boston, Massachusetts
**President and CEO:** Wellesley Medical Associates, Wellesley, Massachusetts
**President and CEO:** MedWest, L.L.C., Wellesley Massachusetts
**Medical Director and Founder:** The Alliance for Quality Care, Wellesley, Massachusetts
**Physician Advisor:** Medicare Review Board, New England Region
**Expert Legal Witness:** MedWest Geriatric Consultants, Wellesley, Massachusetts
**Medical Director:** MedWest Center for Memory Disorders, Wellesley, Massachusetts
**Medical (Geriatrics) Consultant:** NBC News Corp.(NBC, MSNBC, Today Show)
**Medical Director:** Dovetail Health

## CURRENT ACADEMIC TITLE:

**Associate Clinical Professor of Medicine** – Tufts University School of Medicine

## EDUCATION:

| | | |
|---|---|---|
| 1963-1967 | **TUFTS UNIVERSITY** | Medford, Massachusetts |
| | Lambert Kingsley Society, Honorary Society of Tufts College | |
| | Bachelor of Science Degree | |
| **1967-1971** | **TUFTS UNIVERSITY SCHOOL OF MEDICINE** | Boston, Massachusetts |
| | Medical Doctor Degree | |

## POST DOCTORAL TRAINING:

| | | |
|---|---|---|
| 1971-1974 | **NEWTON-WELLESLEY HOSPITAL** and Tufts Associated Hospitals | Newton, Massachusetts |
| 1974 | **NEW ENGLAND DEACONESS HOSPITAL** Fellowship in pulmonary medicine | Boston, Massachusetts |

## LICENSURE:

| | | |
|---|---|---|
| 1971 – PRESENT | MASSACHUSETTS | Certificate Number: 34539 |

## CERTIFICATION:

**AMERICAN BOARD OF INTERNAL MEDICINE:**
June 18, 1975

**AMERICAN BOARD OF INTERNAL MEDICINE:**
April 20, 1990: Special Certification in Geriatrics

**AMERICAN BOARD OF INTERNAL MEDICINE:**
November 2000: Re-certification in Geriatrics

1

## ACADEMIC APPOINTMENTS:

**CHIEF, GERIATRICS SERVICE:** Tufts-New England Medical Center, 1997- Present

**Editorial Advisory Board:** "Annals of Long-Term Care", 2000-present

**Editorial Advisory Board,** "Geriatric Web", Geriatric Resources for the Health Professional

**Special Advisor,** GRS Teaching slides, American Geriatrics Society, 2001-present

**Boston Partnership for Older Adults:**-board member, June, 2005-present

**MEDICAL ADVISORY BOARD,** Partners for Healthy Aging, Merck – Medco, (Now Medco-Health Solutions) 1997 - 2003

**CLINICAL CLERKSHIP DIRECTOR:**
**TUFTS UNIVERSITY SCHOOL OF MEDICINE**
1995-1997

**CHAIRMAN, GERIATRIC ASSESSMENT TEAM**: Newton-Wellesley Hospital
1989-1997

**CHIEF, AMBULATORY SERVICES**: Newton-Wellesley Hospital
1983-1996

**NATIONAL SPEAKER, ELDERCOM FACULTY**, Harvard Medical School, 1995-2000

**MEDICAL DIRECTOR,** Hospice of the Good Shepherd, Newton-Wellesley Hospital, 1977-1983

**QUESTION WRITING COMMITTEE** – Geriatrics Review Syllabus, published by the American Geriatrics Society, 1996 – 1997 (Version 3) and 1998 – 1999 (Version 4)

## FACULTY APPOINTMENTS:

**ELDERCOM:** Sponsored by Pfizer and US Pharmaceuticals as well as the American Geriatrics Society, serving as national speaker on managed care geriatrics, osteoarthritis, and community acquired pneumonia.

**AD SUMMIT:** National speaker on Alzheimer's Disease, Sponsored by SUNY Health Science Center

**SANKYO PHARMACEUTICALS:** Speakers bureau, now national speaker and thought-leader on hypertension

**LILLY PHARMACEUTICALS:** Speakers bureau, and national speaker and thought leader in osteoporosis

**PURDUE-FREDERICKS SPEAKERS BUREAU :** Serving as an expert speaker on pain management in the elderly.

**Pfizer Pharmaceuticals:** Speakers bureau and thought leader on hypercholesterolemia

2

## PRIOR ADMINISTRATIVE TITLES:

**Chief, Geriatrics Division, Waltham Hospital, Waltham Mass.**
2002-2003

**Editor in Chief, Geriatrics Review Syllabus, CD-ROM Teaching Project- American Geriatrics Society**
1999-2002

**Director, Pratt Diagnostic Clinic, New England Medical Center, Boston, Ma**
1997 – 2000

**Associate Medical Director, Tufts Managed-Care Institute**
1999-2002

**President, Newton-Wellesley Hospital IPA – Tufts Health Plan**
1988 – 1997

**Chairman, Utilization Review, Newton –Wellesley IPA**
1988 – 1997

**Physician Advisor, Post-Payment Review Team, Commonwealth of Massachusetts Medicaid Division**
1980 – 1990


## HOSPITAL APPOINTMENTS:

**Executive Committee**, Department of Medicine, Tufts-New England Medical Center: 1998-present

**Executive Committee, New England Quality Care Alliance**, 2005-present

**BOARD OF GOVERNORS**
Newton-Wellesley Hospital: 1990 – 2001

**MEDICAL DIRECTOR, OCCUPATIONAL HEALTH SERVICES,**
Newton-Wellesley Hospital, 1983 – 1993

**MEDICAL DIRECTOR EMPLOYEE HEALTH SERVICES,**
Newton-Wellesley Hospital, December 1983 – 1993

**CHAIRMAN, EXECUTIVE COMMITTEE OF THE MEDICAL STAFF,**
Newton-Wellesley Hospital, December 1984 – December 1985

**CHAIRMAN, MEDICAL RECORDS COMMITTEE,**
Newton-Wellesley Hospital, 1977 – 1994

**CHAIRMAN, AMBULATORY CARE STRATEGY COMMITTEE,**
Newton-Wellesley Hospital, Spring 1983

3

**Nursing Home Medical Directorships:**

> Chetwynde Nursing Home, Newton, Mass.
> West Newton Health and Rehabilitation Center, Newton, Mass.
> Brae Burn Nursing Home, Waban, Mass.
> 1993-1995

## AWARDS AND HONORS:

Voted to "America's Top Physicians", Consumer's Research Council of America, 2003-2005

Physician of the Year, Physician Advisory Board, National Republican Committee, 2003-2005

Fellow, American Geriatrics Society
May 1997

Citation for Teaching Excellence by the Third Year Tufts University School of Medicine Students: July 1995

Fellow, American College of Physicians
July 1992

Fellow, Royal Society of Medicine (United Kingdom)
June 1992

Chairman, Lot B. Page Fund for Education: Newton Wellesley Hospital
July 1991

Proclamation of Appreciation from the Newton-Wellesley Hospital
For Major Role on the Capital Campaign: May 1984

## HOSPITAL COMMITTEE ASSIGNMENTS:

**CHAIRMAN, NEWTON-WELLESLEY HOSPITAL CAPITAL CAMPAIGN**
Physician Section                                    09/1984 - 09/1987

**CO-CHAIRMAN, MEDICAL STAFF CONTRIBUTIONS COMMITTEE**
Newton-Wellesley Hospital                       09/1982 – 09/1987

## PROFESSIONAL SOCIETIES:

American College of Physicians- Fellow
American Geriatrics Society- Fellow
Royal Society of Medicine-Fellow
Association of Directors of Geriatric Academic Programs
American Medical Association-Member
Massachusetts Medical Society & Charles River District Medical Society-Member
American Society of Internal Medicine-Member
Massachusetts Society of Internal Medicine-Member
Massachusetts Geriatrics Society-Member
American Society of Contemporary Medicine and Surgery-Fellow
American College of Physicians Executives-Member
American Society of Ambulatory Care Professionals-Member
National Society of Physicians Who Care-Member

4

International Psychogeriatric Association-Member

## OFFICE AND COMMITTEE ASSIGNMENTS IN PROFESSIONAL SOCIETIES:

PRESIDENT, MASSACHUSETTS GERIATRIC SOCIETY: 1996 - 2002

AMERICAN GERIATRICS SOCIETY:
Public Policy: 2002-2004
Nominations: 1999 – 2002
Education: 1996 – Present
COSAR: 1998 – Present
Membership: 1996 – 1999
CME: 1993 – 2000
CME Officer, New England Regional
AGS - CME Sponsored
Events: 1996 – 2000
Chairman, Special Section on
Community Hospitals: 1993 - 1996

### International Presentations:

"Medicine in Evolution: The Geriatric Imperative"
Organizer and leader of a three-day conference sponsored by Tufts University School of Medicine
March 6-9, 2006
Aramco, Saudi Arabia

## PLANNING COMMITTEE:

"Ethics Committee and the Elderly", Co-Sponsored by The Hastings Center, The Law & Healthcare Program at the University of Maryland School of Law, The Geriatrics and Gerontology Education and Research Program at the University of Maryland at Baltimore, November 11-12, 1994; December 9-10, 1994.

American Geriatrics Society Metropolitan Washington Area Affiliate Educational Program on World Organization for Care in the Home and Hospice: April 20, 1994

Geriatric Update: Selected Topics in Long-Term Care: sponsored by Harvard Medical School Department of Geriatrics and Extended Care, offered twice yearly in October and May, 1994-1998

## EDITORIAL BOARDS AND ACTIVITY:

Special Advisor, Geriatrics Review Syllabus-Slide Presentation Program, 5th edition, 2004-2005, American Geriatrics Society

Manuscript reviewer, Annals of Internal Medicine, Geriatrics, 2003-present

"Medication Guidebook for Healthy Aging", Merck-Medco, July 2001

"Annals of Long-Term Care", American Geriatrics Society: Advisory Board, 2001-present

5

Association of Program Directors in Internal Medicine – Textbook Review Board

Question Writing Committee, " Geriatric Review Syllabus", Sponsored by the AGS, 1994-1998

Abstract reviewer, Journal of the American Geriatrics Society, 1996-2001

Editorial Research Board, "Post-Graduate Medicine", 1997

## BIBLIOGRAPHY:

Dupee, RM. Presentation and Diagnosis of Rapidly Progressing Encephalopathy. *Annals of Long-Term Care* 2006;14(2):25-26.

"Medication Guide Book for Healthy Aging", Editorial Board, Merck – Medco, July 2001

"Core competencies for the Care of Older Patients: Recommendations of the American Geriatrics Society" *Academic Medicine, Vol. 75, No. 3 / March 2000*

"Identifying, Assessing and Managing High-Risk Patients under Medicare Risk Contracts", *Medical Practice Management*, March/April 2000

"Ethical Issues in Medicare Risk Sharing Arrangements", *Clinical* Geriatrics Vol. 4, #4, April 1996

"Hospice. Compassionate, Comprehensive Approach to Terminal Care." *Post-Graduate Medicine, Vol. 72, No. 3, 09/1982*

## MEDIA SEGMENTS:

"Current Sate of Geriatric Care," Harvard Medical School, sponsored by Dovetail Health, May, 2007

Numerous appearances on the "Today Show", discussing various topics for the "Forever Young" series. Appearances have included:

The Pope's Health-May, 2005

Alzheimer's Disease- May, 2004

"Drug Trend"-June, 2003

"Osteoporosis in Men"-January, 2003

"Anti-Aging Medicine. Real or Snake Oil."-January, 2002

"Post-9/11. Boston Hospitals"-September, 2001

"Hypertension"-August, 2001

"Adverse Drug Reactions", representing Merck – Medco and the " Medication Guide Book for Healthy Aging"-July, 2001

### Other Appearances:

Medical consultant, live on MSNBC, during the Pope's illness-May,2005

"Adverse Medical Reactions", CBS Afternoon News, New York City-July, 2001

6

"Adverse Medical Reactions", News Broadcast Network, Satellite Media Tour viewed in 19 cities promoting "Medication Guide Book for Healthy Aging"- July, 2001

## MANAGED CARE:

### HARVARD MEDICAL SCHOOL ANNUAL BOARD REVIEW
- "Case Management in the Office Practice", March 2, 2001
- "Managed Care, A View from the Trenches", February 2000
- "Managed Care, A View from the Trenches", February 1999
- "Managed Care for Seniors, A View from the Trenches", March 1998

### TUFTS MANAGED CARE INSTITUTE
- "Success with Medicare Risk, A View from the Trenches", Primary Care L.L.C., April 13, 1999
- "Success with Managed Care, A View from the Trenches", April 16, 1999 Kennybunk, ME
- "Success in Managed Care, A View from the Trenches", April 16, 1999 Augusta, ME
- "Office Practice in Managed Care for Senior Populations Under Risk Sharing Arrangements", Greensboro, NC, November 1997

### AMERICAN GERIATRIC SOCIETIES ANNUAL MEETINGS
- "Pay for Performance, the East –Coast Perspective," May, 2007
- "Office-Based Geriatric Medicine," May, 2005
- How Physicians Would Revitalize "Medicare Plus", May 2001
- "Cost Management in Medicare: Risk Arrangements for Primary Care Physicians", May 20, 1999
- "Disease State Management" and "Economics in Risk", May 22, 1999
- "Physician Reimbursement and Risk Models", May 6, 1998
- "Capitation in the Office Practice – A View from the Trenches", May 1997
- "Overview of Capitation. Making the Transition from Fee for Service to Medicare Capitation. Practical and Ethical Issues", May 1995

## PAIN MANAGEMENT LECTURES:

- "Optimal Care of Pain and Discomfort in the Hospice and Nursing Home Patient", Wellesley, Ma. June 21, 2001
- "Management of Pain in the Nursing Home Setting", Burlington, Ma. April 2001
- "Chronic Pain and Symptom Management in the Elderly", Boston Veterans Administration Hospital, September 1999
- "Update on Pain Management and Long-Term Care", Massachusetts Chapter of the American Society of Consulting Pharmacists, January 20, 1999
- "Pain Management in the Extended Care Facility", Keynote Speaker on an Educational Conference Sponsored by the Hospice Federation of Massachusetts and the Massachusetts Department of Public Health, April 29, 1999

## HARVARD MEDICAL SCHOOL GERIATRICS UPDATE:

- "Pain Management Techniques for the Nursing Home Setting", October 22, 1997
- "Anticoagulation in the Elderly", May 1997
- "Managed Care in the Long Term Setting", October 1996
- "Oral Antibiotic Treatment of Infections in Nursing Homes", October 1995
- "Atypical Presentation of Infectious Disease in the Elderly", October 1994
- OBRA Regulations and the Nursing Home, "Who's Confused?", Delivered to the Massachusetts Nursing Home Association, May 1993

7

**GERIATRIC LECTURES:**
- Medical Grand Rounds – "Update in Alzheimer's Disease" – Carney Hospital, January, 2004
- Medical Grand Rounds – "Newer techniques in the diagnosis and treatment of Alzheimer's", Tufts-New England Medical Center, February, 2004
- Medical Grand Rounds – "The Hospital is a Dangerous Place" – Tufts-New England Medical Center, February, 2003
- "Health Care for the Elderly-Myths and Reality", Boston Schweitzer Fellows Program, April 1998
- Monthly Geriatric Lectures – New England Medical Center Residents
- Medical Grand Rounds – "Why all Physician's need to be Geriatricians", New England Medical Center, September 1998
- "Medical Technology: Its Role in Today's Health Care Environment", American Medical Association, Medical Student Section, University of Massachusetts Medical School, October 1998
- Medical Grand Rounds. "Why All Physicians Need to be Geriatricians", Faulkner Hospital, December 10, 1998
- "Geriatrics and the Business of Medicine", Lecture to First Year Students at the University of Massachusetts Medical School, May 1998
- "Business of Medicine", Delivered to the Health Care Finance Class at BU School of Management, May 1997
- "Difficult Ethical Issues in Geriatrics"
  Grand Rounds, Newton-Wellesley Hospital, August 1995
- "Hospitalization, Bedrest, and Iatrogenesis.", Grand Rounds Newton-Wellesley Hospital, March 1995
- Teachers Section of the AGS Education Committee on Stimulating Students to Pursue a Career in Geriatrics: A Model Mentoring Program for Medical Students. Presented at the American Geriatrics Society Annual Meeting, May 20, 1995
- Introduction of Geriatrics to the Second Year Medical Students – A Novel Approach, Presented at the American Geriatrics Society Meeting, May 18, 1994
- Poster Presentation: Unusual Presentation of Renal Cell Carcinoma, Annual Meeting of the American Geriatrics Society, May 18 1994
- Chairman, Symposium on Geriatric Education and Community Care Hospitals, Annual Meeting of the American Geriatrics Society, May 18, 1994
- Hospitalization of the Elderly: Help or Hazard
  Grand Rounds, Newton-Wellesley Hospital, March 1994
  Grand Rounds, Glover Hospital Needham, May 1994
- Paper Presentation: Primary Lymphedema in an Octogenarian, Annual Meeting of the American Geriatrics Society, November 1993

**GERIATRIC LECTURES (CONT'D):**
- Back Pain in the Elderly, Grand Rounds, Newton-Wellesley Hospital, October 1993, Beth Israel Hospital-Geriatric Division, November 1993
- Geriatric Vignettes, Grand Rounds, Newton-Wellesley Hospital, November 1992
- Agitation and Delirium in the Elderly: Protocols for Diagnosis and Treatment, Medical Grand Rounds, Newton-Wellesley Hospital, August 1992
- Adverse Drug Reactions in the Elderly, Medical Grand Rounds, Newton-Wellesley Hospital, November 1991
- Medication Management for the Elderly Patient, Tufts University School of Medicine, May, 29 1991
- State of the Art Lecture in Geriatrics at the Newton-Wellesley Hospital, Nursing Grand Rounds, March 1991

**Research History**

- "REACH" registry: Principle investigator, June, 2004-present
- "REALIZE" trial: January, 2004

## Expert Witness and Consultant for Elderly Medical Affairs

- Conn Kavanaugh Peisch & Ford LLC - Boston, Mass.
- The Lakin Law Firm, Wood River, Ill
- Salvi, Schostok & Pritchard, Waukegan, Ill.
- The Rooth Law Firm, Evanston, Ill.
- Abramson, Brown & Dugan, Manchester, NH
- Wilkes & McHugh, Philadelphia, PA
- Mayer, Smith & Roberts, LP, Shreveport, LA
- Leo F. Dunn, Esq. - Boston, Mass.
- Stern, Kelty, & Wall, LLC - Salem, Mass.
- The Reardon Law Firm, New London, Conn.
- Gillis and Bikofsy, PC - Newton, Mass.
- Wood and Gresham, PC-Wrentham, Mass.
- McCumber Inclan_Tampa, Fla.
- Fitzhugh, Parker & Alvaro LLP-Boston, Mass.
- Hall, Render, Killian, Heath & Lyman, PSC-Louisville, Ky.
- Russo and Skolnick, Boston, Mass.
- Pitman, Kyle, & Sicula, Milwaukee, Wisconsin
- Harvit & Schwartz, Charleston, West Virginia

9