UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EASTERN DIVISION

No. 05-10849RGS

DOROTHY STANLEY, EXECUTRIX OF THE
ESTATE OF HELEN A. RUNGE,
                                    Plaintiff

                v.

WALTER J. KELLY,
KERRY L. BLOOMINGDALE, M.D., and
SUNBRIDGE NURSING AND
REHABILITATION CENTER,
                                    Defendants


**DEFENDANT WALTER J. KELLY'S MOTION FOR JUDGMENT AS A
MATTER OF LAW AS TO ALL COUNTS
AT THE CLOSE OF PLAINTIFF'S EVIDENCE**

NOW COMES the Defendant, Walter J. Kelly, ("Kelly"), pursuant to Fed. R. Civ. P. 50(a) and moves this Court for judgment as a matter of law in favor of the Defendant as to all counts of the Plaintiff's Second Amended Complaint. Defendant asserts three (3) distinct grounds, each of which, standing alone, would support judgment as a matter of law in favor of the Defendant on all Counts. The grounds are as follows:

**I.    PLAINTIFF HAS FAILED TO PRESENT ANY EVIDENCE THAT DEFENDANT DID NOT ACT IN THE BEST INTEREST OF HELEN RUNGE**

Plaintiff asserts that Helen Runge was competent at all relevant times and did not require antipsychotic medications. Assuming for argument's sake that this is true, there is no evidence that Helen Runge did not knowingly appoint Walter Kelly as her health care proxy, power of attorney and nominate Walter Kelly to be her guardian if necessary.

1

122898.2

Furthermore there is no evidence that Runge had any complaints as to Walter Kelly's conduct in acting as her power of attorney and health care proxy.

The Complaint asserts various counts against Defendant Kelly, including negligence (Count III), abuse of process (Count XIV), false imprisonment (Count IX), intentional infliction of emotional distress (Count X), negligent infliction of emotional distress (Count XI), breach of contract (Count XII), breach of fiduciary duty (Count XIII), and violation of M.G.L. c. 93A (Count XVI).

As to the Negligence and Breach of Contract counts, the Estate alleges that Defendant Kelly's conduct "deviates from the standard of care owed by him to Runge" and Defendant Kelly breached his contract with Runge to provide professional services. [Complaint, ¶57, 98].  As to the False Imprisonment, Plaintiff simply alleges that Defendant Kelly "did unlawfully confine Plaintiff." [Complaint, ¶83].   As to the Intentional and Negligence Infliction of Emotional Distress claims, Plaintiff simply pleads Defendant Kelly's intentional and negligent actions caused Plaintiff emotional distress. [Complaint, ¶87, 92].  Plaintiff further alleges that Kelly breached his fiduciary duty to Helen Runge as her attorney, Power of Attorney, Health Care Proxy and Guardian. [Complaint, ¶102-105].  Plaintiff also alleges that Defendant Kelly abused process through the filing of the Guardianship petition to gain control of and deplete Helen Runge's assets. [Complaint, ¶107-108].  Finally, Plaintiff alleges that Defendant Kelly's actions were in violation of M.G.L. c. 93A.  [Complaint, ¶114].

In her Complaint, Plaintiff relies upon the following set of facts in support of all counts.  Plaintiff has put forth no evidence to establish any of these allegations, as set forth below:

Plaintiff alleges that Defendant Kelly drafted paperwork that would make himself her power of attorney and her medical power of attorney, either unknown to Runge or without her fully understanding his actions. [Complaint, ¶16]. There has been no evidence to challenge the fact that the power of attorney and healthcare proxy were valid and knowingly executed by Helen Runge.

Plaintiff claims that while Helen Runge was a resident of one nursing facility, Bayview, her prescription drug card was either stolen or misused by employees, and management was slow in addressing or failed to address her concerns. [Complaint, ¶20]. There is no evidence to support these allegations, or that Defendant Kelly knew of these occurrences.

Plaintiff alleges that Bayview then contacted Defendant Kelly, who directed that Plaintiff be taken to Carney Hospital for psychiatric evaluation. [Complaint, ¶22]. There is no evidence that Defendant Kelly directed that Plaintiff be taken to Carney Hospital. In fact, the evidence establishes that he had no part in the decision to admit her. Furthermore, there is no evidence to support a finding that this admission was unlawful.

Plaintiff also claims that at Sunbridge, Helen Runge was unnecessarily medicated to impair her cognitive abilities and to keep her in a state of diminished capacity. [Complaint, ¶28]. She claims that she "was held captive and against her will at that facility." [Id.]. There is no evidence that Plaintiff was unnecessarily medicated. Moreover, as a matter of law, Defendant cannot be liable for a reliance on a physician's diagnosis and prescription.

Plaintiff also alleges that Defendant Kelly directed Defendant Dr. Bloomingdale to examine the Plaintiff and render an opinion that the Plaintiff was mentally

3

incompetent. [Complaint, ¶36-38]. Plaintiff alleges that Defendant Kelly enlisted the aid of Dr. Bloomingdale and Sunbridge in presenting his petition to the court to have himself appointed guardian of the Plaintiff after she was taken to North Carolina by her daughter and son-in-law. [Complaint, ¶ 47] There is no evidence that Kelly directed Dr. Bloomingdale's opinion, or that Dr. Bloomingdale's was wrong. Moreover, there is no evidence to support a finding that the guardianship petition was inappropriate.

Therefore, in sum, Plaintiff has failed to put forth any evidence in support of her allegations against the Defendant, or any evidence that Defendant acted in any manner that was not in the best interest of Helen Runge. Moreover, there is absolutely no evidence on the record to indicate that any of the alleged wrongful conduct caused damage to Helen Runge. As such, Defendant is entitled to judgment as a matter of law as to all counts of the Plaintiff's complaint.

## II.   PLAINTIFF HAS PUT FORTH NO EXPERT TESTIMONY TO SUPPORT HER CLAIMS

A plaintiff in a legal malpractice action must establish the standard of professional skill or care through expert testimony. See Brown v. Gerstein, 17 Mass. App. Ct. 558. 566 (1984). Plaintiff's expert fails to address the applicable standard of care and whether or not Defendant Kelly breached that standard. Instead, Attorney Rosenfeld's testimony solely concerned his opinion that Defendant violated Rules 1.14 and 1.7(b) of the Rules of Professional Conduct. However, a violation of the Rules of Professional Conduct does not give rise to a cause of action against an attorney. See Doe v. Nutter, McClennen & Fish, 41 Mass. App. Ct. 137, 141, 668 N.E.2d 1329, 1333 (1996)(assuming that defendant attorney's conduct violated a rule, "the violation would not give rise to a cause

4

of action"); Fishman v. Brooks, 396 Mass. 643, 649, 487 N.E.2d 1377 (1986)(The disciplinary rules provide standards of professional conduct of attorneys and do not in and of themselves create independent causes of action).

While violation of the rules can be some evidence of negligence, this alone does not fulfill the plaintiff's burden of proof against a defendant attorney. See Fishman, 396 Mass. at 646; See Nutter, McClennen & Fish, 668 N.E.2d at 1333. See also McElroy v. Robinson & Cole, LLP, 2001 Mass. Super. LEXIS 455 (October 25, 2001). A Massachusetts Court has already found Attorney Rosenfeld's opinion that a defendant attorney violated the professional rules insufficient in a legal malpractice action. In McElroy, the same expert at issue in this case, Attorney Rosenfeld, offered a similar expert opinion that the defendants' conduct was in violation of the Massachusetts Rules of Professional Responsibility. The court noted that Massachusetts law bars such opinion testimony, but held that even if such testimony were admissible to prove the asserted violation, "it would not suffice to meet the plaintiff's burden of proof." McElroy, 2001 Mass. Super. LEXIS 455, *27.[1] The Court stated: "Having offered no evidence to show the applicable standard of care under the circumstances, any breach of that standard, or any injury resulting from any such breach, the plaintiff has failed to demonstrate any reasonable expectation that he would be able to meet his burden of proof at trial on the elements of the claim of legal malpractice." Id. at *28. The Court found the evidence

---

[1] While the Court applied Connecticut law, it cited both Connecticut and Massachusetts law for the holding that "…a plaintiff in a legal malpractice action must establish the standard of professional skill or care through expert testimony…", and "…evidence of a violation of the Rules of Professional Conduct does not meet this burden...". McElroy, 2001 Mass. Super. LEXIS at *27-28, citing Vanacore v. Kennedy, 86 F. Supp. 2d 42, 48 (D. Conn. 1998); Standish v. Sotavento Corp., 58 Conn. App. 789, 796, 755 A.2d 910 (2000); Fishman v. Brooks, 396 Mass. 643, 646, 487 N.E.2d 1377 (1986).

5

122898.2

was insufficient to meet the plaintiff's burden of proof and that defendants were entitled to judgment as a matter of law. Id. at *42.

As in McElroy, Attorney Rosenfeld's opinion is insufficient to meet the plaintiff's burden. The plaintiff has the burden of introducing expert testimony that Defendant Kelly did not exercise the degree of learning and skill ordinarily possessed by attorneys in similar circumstances. If the plaintiff has failed to present credible expert testimony that the defendant attorney breached the applicable standard of care, then the plaintiff cannot prove her case. See Brown v. Gerstein, 17 Mass. App. Ct. 558, 566 (1984). Plaintiff has not met her burden of proof as Attorney Rosenfeld's opinion fails to address whether defendant Kelly breached the applicable standard of care.

While Plaintiff has asserted various counts against Defendant Kelly, all of those claims are based upon the same factual allegations and are dependent upon whether or not what Attorney Kelly did concerning his client, Helen Runge, was below the applicable standard of care. Therefore, all plaintiffs' claims against Defendant Kelly must be dismissed.

In particular, the negligence (Count III), breach of fiduciary duty (Count XIII) and breach of contract counts (Count XII) are all essentially a claim for legal malpractice. See Fall River Savings Bank v. Callahan, 18 Mass. App. Ct. 776, 81-82, 463 N.E.2d 555 (1984); Callahan v. Foley, 2007 Mass. Super. LEXIS 432 (Sept. 26, 2007)(dismissing the plaintiff's negligence, breach of fiduciary duty and breach of contract counts for lack of a legal malpractice expert because the facts giving rise to these claims were the same). Similarly, because the M.G.L. c. 93A claims is dependent on the attorney-client relationship.

6

Likewise, the facts upon which these malpractice claims are based in this matter, are the same facts upon which plaintiff bases the remaining claims of abuse of process, false imprisonment, negligent and intentional infliction of emotional distress and violation of M.G.L. c. 93A.  Because plaintiff cannot establish that Defendant Kelly was negligent, she will be unable to satisfy her burden of proof on the negligent infliction of emotional distress claim.  If Defendant Kelly did not breach the standard of case, then he did not negligently inflict emotional distress.  Here, the Plaintiff cannot prove the standard of care was breached, because the expert testimony is insufficient as a matter of law.  Therefore, Plaintiff cannot prove negligent infliction of emotional distress.  Likewise, without expert testimony to establish that Defendant Kelly's conduct was below the standard of care to the extent that it was extreme and outrageous and beyond all possible bounds of decency and was utterly intolerable in a civilized community, plaintiff will be unable to establish her burden on the intentional infliction of emotional distress count.  See Caputo v. Boston Edison Co., 924 F.2d 11 (1st Cir. 1991).

Plaintiff's abuse of process and false imprisonment counts are based on the factual allegations that Defendant Kelly kept Helen Runge at Sunbridge and petitioned the court for guardianship of Runge.  Expert testimony is required to establish whether Defendant Kelly's actions in this regard was not what an average qualified elder care attorney would have done under the circumstances of this case, and therefore the counts should be dismissed for lack of expert testimony.   As to the abuse of process claim, Plaintiff claims that Defendant's filing of the guardianship petition was done with the improper purpose of gaining control of Runge's assets so that he could pay himself fees.  The Plaintiff would need expert testimony to establish that the fees paid to Defendant

7

Kelly under the Guardianship were unreasonable or otherwise inappropriate. No such expert testimony has been offered. As to the False Imprisonment claim, based on Plaintiff's bare allegation that Runge was "unlawfully confined" it is difficult to guess what the Plaintiff alleges was confinement and where she was confined, but presumably Plaintiff bases that count on Defendant Kelly's actions while Runge was a resident in the various facilities and he acted as her attorney. In any event, Plaintiff would need an expert to establish that Defendant Kelly's actions under the circumstances were outside the standard of care, and thus lead to an *unlawful* confinement of the Plaintiff. Therefore, Defendant Kelly is entitled to judgment in his favor on all counts of Plaintiff's complaint based on the lack of expert testimony.

### III.    DEFENDANT IS IMMUNE AS A MATTER OF LAW PURSUANT TO M.G.L. c. 201D § 8

At all relevant times Defendant Kelly was acting pursuant to a valid health care proxy for Helen Runge and made health care decisions in good faith on her behalf, and therefore Defendant Kelly cannot be liable for such acts or decisions. M.G.L. c. 201D § 8. Under the law, a health care agent acting pursuant to a health care proxy may consent on behalf of an incompetent patient to the administration of antipsychotic medication without the need for the court to appoint a guardian. See M.G. L. c. 201D §§ 5 and 6. See also Opinion Letter of the Office of the Attorney General, July 24, 1997, attached as Exhibit A.

If a patient refuses or objects to the administration of anti-psychotic medication, court-ordered substituted judgment is required. This is achieved by the appointment of a guardian after a hearing. See M.G. L. c. 201D §§ 5 and 6  See also Opinion Letter of the Office of the Attorney General, July 24, 1997, Complaint;  Rogers v. Commissioner of

the Department of Mental Health, 390 Mass. 489, 458 N.E.2d 308 (1983). Therefore, in order to find that Helen Runge was improperly administered antipsychotic medications under the law, it must be found that she was administered the drugs despite her refusal and prior to the appointment of Kelly as her Guardian. There is no evidence that Plaintiff was administered drugs after she refused. Therefore, all of Defendant Kelly's actions were proper as matter of law and he is entitled to judgment in his favor as to all counts. As argued above, all of Plaintiff' various counts stem from Defendant's actions as her health care proxy and in his petition for guardianship cannot be separated from his actions as her attorney. Therefore, Defendant is entitled to judgment as to all counts.

WHEREFORE, the Defendant, Walter J. Kelly, requests that this Honorable Court grant his motion for judgment as a matter of law in favor of Defendant on all counts of the Plaintiff's Second Amended Complaint.

Respectfully submitted,

The Defendant,
Walter J. Kelly,
By his attorneys,

*/s/Michele Carlucci* _____
George C. Rockas, BBO #544009
Michele Carlucci, BBO #655211
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER  LLP
260 Franklin Street
Boston, MA 02110
(617) 422-5300

Dated:  June 26, 2008

9

122898.2

## CERTIFICATE OF SERVICE

      I, Michele Carlucci, certify that on June 26, 2008, I have served a copy of the forgoing to all counsel of record by hand and by electronic filing:

Blake J. Godbout, Esq.
Blake J. Godbout & Associates
33 Broad Street, 11th Floor
Boston, MA 02109

Glen R. Davis, Esq.
Latsha Davis Yohe & McKenna, P.C.
1700 Bent Creek Boulevard, Suite 140         _/s/ Michele Carlucci_
Mechanicsburg, PA 17050                        Michele Carlucci

122898.2



*The Commonwealth of Massachusetts*
*Office of the Attorney General*
*One Ashburton Place*
*Boston, MA 02108-1698*

L. HARSHBARGER
ATTORNEY GENERAL
(617) 727-2200

July 24, 1997

Alex L. Moschella, Esq.
Metro Elder and Disability Law Associates
6 Liberty Avenue, Powder House Square
Somerville, MA 02144

Dear Attorney Moschella:

This letter is in response to the question raised at the National Academy of Elder Law Attorneys Massachusetts Chapter program in April regarding whether, under Rogers v. Commissioner of the Department of Mental Health, the caretaker of an incompetent patient is required to obtain a court order prior to administering prescribed antipsychotic medication, even if: (1) the incompetent patient had previously appointed an authorized health care agent pursuant to G. L. c. 201D [The Health Care Proxy Act]; (2) the agent has consented to the medication on the patient's behalf; and (3) the patient has not objected to or refused the medication. It is our understanding that there has been some confusion among the elder law practitioners as to how to interpret the Attorney General's long term care facility regulations, 940 CMR 4.08 (18) and (19), when this issue arises. While this letter does not serve as a formal published opinion of the Attorney General, which may only be issued pursuant to specific statutory authority not applicable here, in the interest of addressing a matter of significant concern to elders and long term health care providers, we offer the following informal clarification.

In Rogers, the Supreme Judicial Court held that before antipsychotic drugs could be administered to an incompetent patient, counsel and a guardian must be appointed for the patient and the court must then determine what the incompetent patient's desires would have been, had he or she been competent to consent on his or her own behalf. If the court determines the patient would have consented to the medication, the court is required to establish a treatment plan and a treatment-monitoring mechanism as well. The underlying purpose of a Rogers hearing is to protect incompetent patients

Alex Muschella
Page Two
July 24, 1997

from forcible treatment in circumstances where the patient would refuse the treatment were he or she competent to do so.

As you know, the Legislature enacted the Health Care Proxy Act seven years after the Rogers decision as a way of providing individuals with the means for maintaining control over medical decision-making in the event that they should become incapacitated. In cases involving a validly executed health care proxy, the person selects a substitute decision maker who is thereby legally authorized to represent the principal's own health care decision-making rights. The statute lays out specific requirements that must be fulfilled before a health care agent can exercise his or her authority on behalf of the patient. Specifically, the law requires that the health care agent must consult with all of the principal's health care providers and must fully consider all acceptable medical alternatives regarding the principal's diagnosis, treatment and side effects. M.G.L. c. 201D, § 5. The law also requires that the agent consider the principal's wishes, if known — including the principal's religious and moral beliefs — or, if the principal's wishes are unknown, in accordance with the agent's assessment of the principal's best interests. Id. Under the law, every person has the right to exercise informed consent and appoint a health care agent by executing a valid health care proxy while he or she is competent. Moreover, a principal may revoke a health care proxy at any time by any act evidencing a specific intent to revoke the proxy.

We believe Chapter 201D, in all significant respects, establishes standards that are consistent with the Rogers requirements for both informed consent by the patient and for substitution of judgment by the health care agent. As set forth in Rogers, the factors to be considered by a judge in determining whether a judicial "substituted judgment" decision is required include: (1) the patient's expressed preferences regarding treatment; (2) the strength of the patient's religious convictions; (3) the impact of the decision on the patient's family; (4) the probability of adverse side effects; (5) the patient's prognosis without treatment; (6) the patient's prognosis with treatment; and (7) any other factors which appear relevant to the determination. 390 Mass. at 505-506. These factors coincide with the requirements that a health care proxy agent must consider in making health care decisions for a principal pursuant to the Health Care

Alex Moschella
Page Three
July 24, 1997

Proxy Act. M.G.L. c. 201D, §§ 5 and 6. Because a decision made by an authorized health care agent provides the patient with the same type of protection a _Rogers_ hearing is designed to provide, we conclude that an authorized health care agent may consent on behalf of an incompetent patient to the administration of antipsychotic medication without a Rogers hearing.

We note that, in the Attorney General's view, a consent to antipsychotic drugs on behalf of an incompetent patient made by an authorized health care agent will only eliminate the need for a _Rogers_ hearing if the patient does not in any way indicate a contrary decision. When a patient refuses or objects to the administration of antipsychotic medications, we believe that a court-ordered substituted judgment is required, whether or not the patient has a valid health care proxy. M.G.L. c. 201D, § 7, permits the principal to revoke his or her proxy "by notifying the agent or a health care provider orally or in writing or by any other act evidencing a specific intent to revoke the proxy." Refusal to accept medication may be deemed a revocation of the proxy and would, therefore, void any consent previously given by the agent. Moreover, an incompetent patient _without_ a health care proxy always requires a _Rogers_ hearing, regardless of whether the patient will accept the proffered medication, because he or she is incapable of giving consent and has not previously designated a proxy to do so on his or her behalf.

I hope that this letter offers some assistance in your work. The intent of the Attorney General's long term care regulations is to protect patients covered by _Rogers_. However, we see no benefit to patients in interpreting the regulations in a way that both effectively deprives an incompetent patient of his or her right to have an authorized health agent chosen by the patient make decisions on the patient's behalf and imposes delay and expense on an incompetent patient without adding any protection to the patient's interests.

In light of this letter, the Attorney General would be very interested in working further with the private bar to (1) encourage the use of health care proxies, especially prior to nursing home admissions; (2) educate the general public about the specific

Alex Moschella
Page Four
ly 24, 1997

issues raised by <u>Rogers</u> and the use of antipsychotic drugs; and (3) ensure compliance with the long term care facility regulations. Please do not hesitate to contact me at the number below if you wish to discuss this matter further. Thank you.

Sincerely,

Barbara Anthony
Assistant Attorney General
Chief, Public Protection Bureau

cc:  Kenneth A. Behar, Esq., Behar & Kalman
     Robert D. Fleischner, Esq., Center for Public Representation
     John J. Ford, Esq., Neighborhood Legal Services
     Wynn Gerhard, Esq., Greater Boston Legal Services
     Stanley Goldman, Esq., Committee for Public Counsel Services
     Alan S. Goldberg, Esq., Goulston & Storrs
     Mary McKenna, Executive Office of Elder Affairs
     Gwen O'Sullivan, Esq., Department of Public Health
     Scott Plumb, Massachusetts Extended Care Federation
     Deborah Thomson, Alzheimer's Association

gordon\c:\pureban\rogers\ltcd-counsel.2.wpd